RECEIPT # _66614_
AMOUNT $ _250_
SUMMONS ISSUED _NA_
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _M_
DATE _9-7-05_

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RHINA ALVARENGA,                        )
                 Plaintiff              )
                                        )
v.                                      )
                                        )
COVERALL OF NORTH AMERICA               )
d/b/a COVERALL CLEANING CONCEPTS        )
AND COVERALL OF BOSTON,                 )
SUNRISE SENIOR LIVING, INC.             )
d/b/a SUNRISE OF ARLINGTON,             )    **05-11819 JLT**
                 Defendants             )
                                             - MAGISTRATE JUDGE _Alexander_

## NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT, 28 U.S.C. 1441(a)

Defendant Sunrise Senior Living, Inc., d/b/a Sunrise of Arlington, pursuant to 28

U.S.C. § 1446 and Local Rule 81.1, hereby files this Notice of Removal to the United

States District Court for the District of Massachusetts of the civil action now pending in

the Superior Court Department of the Trial Court for the Commonwealth of

Massachusetts, Middlesex Superior Court. The defendant states:

1.      Sunrise Senior Living, Inc., d/b/a Sunrise of Arlington is a defendant in a civil

action filed in the Middlesex Superior Court on May 24, 2005, and served on August 11,

2005.

2.      In her complaint, the plaintiff Rhina Alvarenga avers that under the Fair Labor

Standards Act, United States Code, Chapter 29, she is owed compensation for work

performed as a janitor on behalf of defendant Coverall of Boston ("Coverall"), a national

corporation that provides janitors to companies.     Ms. Alvarenga claims she was

persuaded to purchase her own Coverall franchise, and was made certain guarantees for

future business by Coverall and Sunrise.

1

1157784v1

3.      In her amended complaint, Ms. Alvarenga requests that the Court grant payment of unpaid wages found by the Court to be due the employee with interest, plus treble damages, attorney fees and costs as provided by 29 U.S.C. § 216 ("Fair Labor Standards Act").

4.      This case is within the original jurisdiction of this Court and Defendant Sunrise Senior Living, Inc., d/b/a Sunrise of Arlington is entitled to remove this action to this Court pursuant to the provisions of 28 U.S.C. § 1367, which provides:

> …in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5.      Defendant Sunrise Senior Living, Inc., d/b/a Sunrise of Arlington is entitled to remove this action to this Court because the state law claims asserted in the plaintiff's complaint arise from the same set of facts as the federal claims brought under the Fair Labor Standards Act.

6.      This suit is wholly civil in nature brought in a trial court in Middlesex County, Massachusetts, and, accordingly, under 28 U.S.C. §§ 101 and 1441(a), the United States District Court for the District of Massachusetts is the proper forum for removal.

7.      A copy of all process, pleadings and orders provided to the defendant are filed with and attached to this notice. (The Complaint as Exhibit A; The Amended Complaint as Exhibit B, the Statement of Damages as Exhibit C).

2

8. Defendant Sunrise Senior Living, Inc., d/b/a Sunrise of Arlington will give written notice of this filing to all adverse parties by mailing a copy of it to plaintiffs' counsel, as shown on the certificate of service.

9. Defendant Sunrise Senior Living, Inc., d/b/a Sunrise of Arlington will file a copy of this notice with the Clerk of the Middlesex Superior Court by mailing a copy as shown on the certificate of service.

10. This notice is filed within thirty (30) days of notice of the suit, within thirty days of the date this action became removable, and within the time for filing this notice. See 28 U.S.C. §1446.

11. Pursuant to Local Rule 81.1(A), defendants shall request the Clerk of the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts, Middlesex County, certified or attested copies of all records and proceedings in the state court and certified or attested copies of all docket entries therein, and shall file the same with this Court within thirty (30) days after the filing of this Notice of Removal.

WHEREFORE, Defendant Sunrise Senior Living, Inc., d/b/a Sunrise of Arlington prays that the above action now pending in the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts, Middlesex County, be removed from that Court to this United States District Court.

3

THE DEFENDANTS,
SUNRISE SENIOR LIVING, INC.
d/b/a/ SUNRISE OF ARLINGTON
By their attorney,

Joseph M. Desmond, BBO #634883
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
(617) 439-7500

Date: 9-7-05

4

## CERTIFICATE OF SERVICE

I, Joseph M. Desmond, do hereby certify that I have this day served the foregoing **NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT, 28 U.S.C. 1441(a)** to all counsel of record in this action by mailing the same, postage prepaid to:

Jennifer L. Huggins, Esq.
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114
(617) 603-1810
BBO #642252

Daryl J. Lapp, Esq.
Melissa C. Allison, Esq.
Palmer & Dodge, LLP
111 Huntington Avenue at Prudential Center
Boston, MA 02199-7613
(617) 239-0100

Date: 9 - 7 - 05          Attorney: _____

1157784v1

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

Superior Court
CIVIL ACTION NO. **05-1782**

Rhina Alvarenga, )
    Plaintiff )
                      )
v.                     )
                      )
Coverall Cleaning Concepts, )
Coverall of North America; )
Coverall of Boston, )
Joseph J. Falbo, )
Greg Liminelli, )
Sunrise Senior Living, Inc.. )
Sunrise of Arlington, )
Patricia Blackburn )
    Defendants )

CIVIL COMPLAINT



FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

MAY 2 4 2005

CLERK

## INTRODUCTION

Plaintiff, Rhina Alvarenga, brings this action to recover compensation for work performed as a janitor on behalf of defendant Coverall of Boston ("Coverall"), a national corporation that provides janitors to companies. Coverall persuaded Ms Alvarenga, a janitor, to pay its corporation $10,500 for the privilege to work as a janitor. Plaintiff spent over 81 hours a week cleaning Sunrise, an assisted living center for the elderly. Coverall promised to pay her at a rate of $31.81 an hour but in fact she received compensation that was often below the state minimum wage.

## JURISDICTION AND VENUE

1.    Jurisdiction is conferred upon this Court pursuant to the Fair Labor Standards Act, United

1

States Code, Chapter 29, § § 207, and 216; generally at G.L. c. 212,§4; under the

Massachusetts Minimum Fair Wages Laws, G.L. c. 151, sections 1, 19, and 20; and

Massachusetts Weekly Payment of Wages Laws, G.L. c. 149 § 148.

2. Jurisdiction of the subject matter of this action is conferred on this court by chapter G.L.
c. 93A § 9(1) and by G.L. c. 214, § 1 .

3. Venue in this action properly lies in this Court pursuant to G.L. c. 223 § 1.

### PARTIES

4. Plaintiff, RHINA ALVARENGA at all times relevant to this action is and was a resident
of the City of Somerville, Massachusetts, MIDDLESEX COUNTY.

5. Defendant, COVERALL OF NORTH AMERICA, INCORPORATED, and COVERALL
CLEANING CONCEPTS d/b/a COVERALL OF BOSTON (collectively referred to as
"Coverall") is a foreign corporation, whose principal office is located at 3111 Camino
Del Rio, North San Diego, California, 92108, and whose registered agent is CT
Corporation Systems located at 101 Federal Street, Boston MA 02110.

6. COVERALL OF BOSTON is located at 105 Central Street, Suite 110, Stoneham,
Massachusetts 02180.

7. Defendant JOSEPH J. FALBO was at all times relevant an the Regional Director of
Coverall Cleaning Concepts' Boston Support Center located at Coverall of Boston , 105
Central Street, Suite 110, Stoneham, Massachusetts 02180.

8. Defendant GREG LIMINELLI, upon information and belief, was at all times relevant a
Coverall Field Consultant, of Coverall of Boston located at 105 Central Street, Suite 110,

2

Stoneham, Massachusetts 02180.

9.    Defendant Coverall is the owner and franchiser of the registered trademark and trade name Coverall Cleaning Concepts and Coverall of North America. Coverall licenses janitors to use its name and therein, defendant Coverall licenses various persons, in the State of Massachusetts, and elsewhere in the United States, including the plaintiff to perform janitorial services for businesses.

10.    Defendant SUNRISE SENIOR LIVING, INCORPORATED d/b/a SUNRISE OF ARLINGTON ( collectively referred to as "Sunrise") is a foreign corporation which has a principal place of business is located 7902 West Park Drive, McLean, Virginia 22102 whose registered agent is Corporate Creations Network, Incorporated located at 18 Tremont Street, Suite 146 Boston, Massachusetts 02108.

11.    SUNRISE OF ARLINGTON is located at 1395 Massachusetts Avenue, Arlington, Massachusetts 02476.

12.    Upon information and belief, Defendant PATRICIA BLACKBURN is and was at all times relevant the Director of Sunrise of Arlington located at 1395 Massachusetts Avenue, Arlington, Massachusetts 02476.

13.    Upon information and belief, defendant Coverall contracted with defendant Sunrise to be the exclusive supplier of janitorial services at Sunrise of Arlington.

14.    Upon information and belief Defendants Coverall and Sunrise are and were, at all times hereinafter mentioned, engaged in related activities performed through unified operation or common control, engaged in commerce or in the production of goods for commerce and are and at all time hereinafter mentioned were enterprises within the meaning of 29

3

U.S.C. § 203(r).

15.    Defendants Sunrise and Coverall are joint employers and are jointly liable where Coverall acted directly in the interest of Sunrise by having exclusive responsibility for providing janitors to Sunrise, and Sunrise benefitted from Coverall's services.

## STATEMENT OF FACTS

16.    Plaintiff, Rhina Alvarenga worked as a janitor by trade.

17.    Ms. Alvarenga's first language is Spanish and has no undergraduate education.

18.    Plaintiff previously worked at Sunrise from November 2002 until May 2003 under another Coverall franchisee.

19.    On or about May 29, 2003, defendant Coverall persuaded Plaintiff, Rhina Alvarenga to purchase a franchise agreement with defendant Coverall to work for them as a janitor with the privilege of using Coverall's name.

20.    Sunrise is an assisted living complex for elderly adults.

21.    In early May 2003, Sunrise told Plaintiff that they wished to hire her directly but because of an agreement with Coverall, she must pay for a franchise agreement in order to continue to work at Sunrise.

22.    On May 29, 2003, Joseph J. Falbo, the Regional Director of Coverall Cleaning Concepts' Boston Support Center, presented Plaintiff with a pre-printed form franchise agreement in which Coverall promised to offer Plaintiff monthly business at a minimum of $1,500 per month if she paid Coverall $3,800 deposit and agree to a loan from Coverall for $6,700 with 12% rate of interest.

4

23.   On May 29, 2003, Plaintiff first saw the actual franchise agreement and was required to
      sign said agreement on that day.

24.   Plaintiff was never able to review the 24 paged franchise agreement herself before signing
      it and defendant Coverall did not allow her to review the actual franchise agreement or
      advise her to seek counsel before signing the agreement. Instead, Mr. Falbo made oral
      representations as to the content of the agreement and then asked Plaintiff to sign and
      initial numerous documents.

25.   Among the representations made by defendant Coverall through its agent and
      representatives, in its advertising, and brochures, which led to the purchase by plaintiff of
      this franchise, included, were the following:

      a.    That Defendant would offer profitable accounts to the plaintiff and, from the
            knowledge and experience of Defendant, the site would be profitable.

      b.    That Defendant Coverall would provide all of the administrative and managerial
            services represented by Defendant as incumbent upon a franchisor as advertised
            by Defendant.

      c.    That Coverall franchises were profitable and, in reliance thereon, plaintiff could
            anticipate a profitable and successful business career as a Coverall franchisee.

      d.    That Defendant Coverall's exclusive right to bill for the plaintiff's services which
            contemplated a continuing, close relationship between Defendant and its
            franchisees during which Defendant Coverall would make full disclosure to its
            franchisees of all material facts respecting their relationship and franchise
            operations, and franchisees could place trust and confidence in Defendant to deal

5

fairly with and protect the interests of its franchisees.

 e.  That plaintiff would be able negotiate the number of hours and amount of compensation she would receive for her janitorial services.

26. Though Plaintiff had previously worked as a janitor, she had no prior experience in the operation of a janitorial franchise or similar business.

27. Plaintiff had no resources other than those declared to Defendant and, thus, plaintiff had to rely on Defendant's financial and management assistance to insure the profitability of the janitorial agreement.

28. Also, on May 29, 2003, Defendant Coverall offered Plaintiff work as a janitor at Sunrise in Arlington.

29. Mr. Falbo told Plaintiff that in exchange for $1,485/month she was expected to work five (5) days a week, for five (5) hours a day performing janitorial services at Sunrise, which amounted to $13.81 per hour of work.

30. Plaintiff told Mr. Falbo that the work at Sunrise usually took more than 25 hours a week to complete; however, Mr. Falbo assured Plaintiff that Coverall's agreement with Sunrise was only for 25 hour per week of janitorial services.

31. Mr. Falbo also told Plaintiff that she should notify Coverall of any hours of janitorial services she performed over the 25 hours and Coverall would bill Sunrise for the additional hours of service at a rate of $13.81 per hour.

32. On or about June 11, 2003, Greg Liminelli, a Coverall Field Consultant, called Plaintiff and told her she could report for work at Sunrise of Arlington.

33. On or about June 11, 2003, when Plaintiff showed up at Sunrise, Sam Ezra, the Sunrise

6

building supervisor, told Plaintiff that Sunrise's agreement with Coverall provided that Plaintiff clean 12 to 14 rooms plus common areas each day for 7 days a week regardless of the number of hours of work it took to complete them. In addition, Mr. Ezra could assign specific duties for Plaintiff to perform.

34.    Plaintiff immediately called Mr. Liminelli at Coverall to complain about the quantity of work Mr. Ezra assigned to her. Mr. Liminelli told Plaintiff to keep track of any hours over 25 hours a week she performed and Coverall would bill Sunrise accordingly.

35.    Each day Plaintiff arrived at work, Mr. Ezra would supervise her work and give her a list of particular cleaning tasks assigned to her in addition to her daily maintenance assignments.

36.    Plaintiff complained that she alone could not complete all the tasks assigned to her by Sunrise, so Sunrise and Coverall agreed to allow her to ask a friend to assist her in the tasks; however, Plaintiff had to split her pay with the coworker.

37.    Plaintiff was supposed to be paid once a month for all services rendered to Sunrise.

38.    Plaintiff kept track of all the hours she and her friend worked each month and sent copies of her monthly schedule of hours of work to Mr. Liminelli; however, she never received full pay for any of those additional hours of work.

39.    As Coverall failed to pay Plaintiff, she complained to Patricia Blackburn, the Director of Sunrise.

40.    Ms. Blackburn agreed to sign some of her monthly time sheets to confirm that Plaintiff and her co-worker in fact performed the hours of janitorial services at Sunrise.

41.    Plaintiff and her co-worker spent an average of 81 hours each week performing janitorial

7

services at Sunrise on the timesheets.

42. However, Plaintiff received only between $752 and $1,170 per after minus deductions by Coverall for worker's compensation insurance, royalty and management fees, as well as payments towards the $6,700 loan plus the 12% interest. However, Plaintiff was expected to split her pay with her co-worker.

43. In addition, Plaintiff performed "special services" which included carpet cleaning several times at Sunrise and forwarded special invoices to Coverall for this service.

44. Coverall never paid Plaintiff for these special services.

45. Because Plaintiff received so little compensation from Coverall, she often supplemented the payment she received from Coverall with her own money to compensate her co-worker for his hours of labor at Sunrise.

46. About four(4) months after operating under the franchise contract it became apparent to the Plaintiff that Defendant Coverall had made the statements, representations, and promises alleged herein with no intention of ever performing according to representations made.

47. In late September 2003, and within a reasonable time after realizing her situation, Plaintiff notified Defendants Coverall and Sunrise, of her wish to end the franchise agreement and demanded restitution for the amounts paid and losses sustained by plaintiff under the contract and as a result of the acts of Defendants alleged herein. Defendants have failed and refused to make such restitution, and continues to do so.

48. Instead of offering the plaintiff restitution, the following day, plaintiff was told by a Coverall employee that Coverall found her in breach of her franchise agreement because

8

Sunrise had reported that the janitorial services provided by Plaintiff were unsatisfactory and Coverall would apply all future payments by Sunrise for her work to the loan she owed to Coverall.

49. Plaintiff does not know the amount of payment Coverall received from Sunrise for her services.

50. On March 4, 2005, Plaintiff, through her attorney, sent Defendants Coverall and Sunrise a demand letter pursuant to G.L. c. 93A.

51. Defendant Coverall failed to provide a reasonable offer for settlement within 30 days.

52. On May 6, 2005, Defendant Coverall responded to the plaintiff's March 4th demand letter but failed to provide a reasonable offer for settlement.

53. Defendant Sunrise did not respond to Plaintiff's G.L. c. 93A demand.

## COUNT I
### FRAUD AND MISREPRESENTATION
### AGAINST DEFENDANTS COVERALL,
### JOSEPH FALBO AND GREG LIMINELLI

54. Plaintiff realleges the facts set forth in paragraphs 1 through 53 above, and incorporates them by reference as duly set forth herein.

55. Plaintiff, placing reasonable reliance upon the representations of Defendant Coverall, executed a franchise agreement, a true copy of which is attached as Exhibit 1.

56. At all times, plaintiff relied on the representations of Defendant Coverall and, but for those representations, would not have entered into the contract or purchased the franchise to operate a janitorial franchise.

57.    The representations and statements made by Defendant Coverall and its agents and
representatives were false, fraudulent, and misleading in the following respects:

a.    That Plaintiff would receive $1,495 per month and was only required to perform
25 hours per week of janitorial services at Sunrise for this amount.

b.    That Defendant Coverall had the exclusive right to bill Sunrise and would pay
Plaintiff for all janitorial services performed at Sunrise above 25 hours per week.

c.    That Defendant Coverall would pay plaintiff for all "special services" performed
at Sunrise including carpet cleaning.

d.    That Defendant Coverall would timely pay plaintiff regardless of whether
payment for her services was received from the Defendant Sunrise.

e.    That accounts for janitorial services provided by Coverall to the Plaintiff would be
profitable, when in fact, said accounts have a returning far too small a profit to
enable Plaintiff to earn a livelihood therefrom.

f.    That Defendant Coverall would sell Plaintiff's franchise agreement upon notice of
her wish to end this franchise agreement.

g.    That plaintiff would have the rights and control of an independent contractor over
accounts offered to her by Coverall.

h.    That Defendant Sunrise was dissatisfied with the qualify of Plaintiff's janitorial
services such that Defendant Coverall could void the contract and collect the
balance of the franchise fee and withhold further payment for services to the
Plaintiff.

58.    The false, fraudulent, and misleading statements mentioned above were made by

10

Defendant Coverall with knowledge that they were false, fraudulent, and misleading, or
with reckless disregard for their truth or falsity.

59.    In making the false, fraudulent, and misleading statements alleged herein, Defendant
Coverall and its agents and representatives acted willfully and with malice, or with
reckless disregard for the rights of plaintiff.

60.    As a result of the fraudulent statements and misrepresentations of Defendant, plaintiff has
been damaged in the sum of $19,654.11; plaintiff claims the further sum of $39,308.22 as
exemplary damages.

**COUNT II**
**UNCONSCIONABLE CONTRACT AGAINST**
**COVERALL AND JOSEPH FALBO**

61.    Plaintiff realleges the facts set forth in paragraphs 1 through 60 above, and incorporates
them by reference as duly set forth herein.

62.    The "franchise agreement" between Coverall and the Plaintiff was not a bargained for
agreement but the result of gross disparity in bargaining positions and values exchanged.

63.    The "franchise agreement" between Coverall and the Plaintiff is a contract of adhesion.

64.    The "franchise agreement" contained terms unreasonably favorable to Coverall, and
Plaintiff had no meaningful choice or alternative than to sign the agreement if she wanted
to continue to work as a janitor at Sunrise of Arlington.

65.    Plaintiff was unable to receive substantial benefits from the contract and because of her
weaker position, was unable to reasonably protect her interest as she was unable to

11

understand the sophisticated language of the twenty-four (24) paged agreement.

66.   Defendant Coverall through its agent Joseph Falbo did not allow the Plaintiff time to
      review the contract herself and instead made false verbal representations about its terms.

67.   As a result of the unconscionable contract and unconscionable actions of Defendant
      Coverall, Plaintiff suffered oppression and unfair surprise and thus the "franchise
      agreement" is unconscionable.

68.   Plaintiff demands that she be restored to pre-contract position and awarded the reasonable
      value for services provided by her to Sunrise.

## COUNT III
## VIOLATION OF MASSACHUSETTS GENERAL LAWS 93A
## BY ALL NAMED DEFENDANTS

69.   Plaintiff realleges the facts set forth in paragraphs 1 through 68 above, and incorporates
      them by reference as duly set forth herein.

70.   The Defendants' wrongful acts occurred primarily and substantially within the
      Commonwealth, and were conducted knowingly and willfully.

71.   On March 4, 2005, Plaintiff, through counsel, sent Defendant a written demand for relief
      by sending Defendants Coverall and Sunrise a demand letter as required by G.L. c. 93A,
      § 9.

72.   Both Defendants Coverall and Sunrise have failed to respond to Plaintiff's demand letter
      within 30 days with a reasonable offer for settlement.

73.   Defendant Coverall's never responded to Plaintiff's demand letter. This failure to make a
      reasonable offer for settlement was in bad faith and with reason to know that the acts

complained of were in violation of G.L. c. c. 93A.

74.    Defendant Sunrise's failure to make any offer for settlement was in bad faith and with

reason to know that the acts complained of were in violation of G.L. c. 93A.

75.    Plaintiff suffered damages as a result of Defendants' Coverall and Sunrises' use of unfair

an deceptive acts and practices in the agreement for janitorial services with Plaintiff.

76.    Defendant Coverall's misrepresentations to Plaintiff that induced her to sign the contract,

pay a deposit of $3,800, and enter into a loan agreement for $6,700 with a 12% interest

rate was an unfair or deceptive acts and practice declared unlawful by G.L. c. 93A § 2

and the regulations promulgated pursuant to G.L. c. 93A § 2(c).

77.    Defendant Coverall's failure to allow Plaintiff at least 5 days to seek counsel and review

the franchise agreement for janitorial services is an unfair and deceptive act declared

unlawful by G.L. c. 93A § 2 and the regulations promulgated pursuant to G.L. c. 93A §

2(c) and Fair Trade Act pursuant to 16 C.F.R. § 436.1.

78.    Defendant Coverall's and Sunrise's failure to pay Plaintiff for all hours of work performed

at Sunrise was an unfair or deceptive act declared unlawful by G.L. c. 93A § 2 and the

regulations promulgated pursuant to G.L. c. 93A § 2(c).

79.    Defendant Coverall's assertion that Plaintiff failed to perform janitorial services

satisfactorily at Sunrise in violation of the franchise agreement is pretextual and

constitutes an unfair and deceptive act, declared unlawful by G.L. c. 93A §2 and the

regulations promulgated pursuant to G.L. c. 93A § 2(c).

80.    Defendant Sunrise's failure to pay Plaintiff for janitorial services as promised was an

unfair and deceptive act, declared unlawful by G.L. c. 93A § 2 and the regulations

promulgated pursuant to G.L. c. 93A § 2(C)).

81.   As a consequence of the Defendants' wrongful acts and conduct, plaintiff suffered the
      damages while Defendants have been and may continue to be, unjustly enriched.

### COUNT IV
### BREACH OF FIDUCIARY DUTY
### TO PLAINTIFF AGAINST COVERALL

82.   Plaintiff realleges the facts set forth in paragraphs 1 through 81 above, and incorporates
      them by reference as duly set forth herein.

83.   Defendant Coverall at all times had knowledge concerning the matters alleged herein far
      superior to that possessed by plaintiff and acted from a position of greater economic and
      bargaining power. For this reason, Defendant acted, or should be held to have acted, in
      the capacity of a fiduciary, and, as such, was under a duty to make full disclosure of all
      facts concerning the transactions mentioned herein that were necessary to permit plaintiff
      to make intelligent decisions regarding the purchase of the franchise; to make full
      disclosure to plaintiff of all the terms of the franchise contract; the reasons therefor, and
      the probable effect thereof, to permit plaintiff to negotiate respecting any of the terms of
      the contract, and otherwise to exercise the utmost good faith and fairness toward plaintiff
      in the negotiations leading to the execution of the contract, and in the performance
      thereof. This fiduciary duty applies particularly with respect to royalty and management
      fees, and payments for supplies and services, which sums were paid by plaintiff to
      Defendant in its capacity as fiduciary and were received by Defendant in that capacity.

84.   Defendant Coverall negotiated and contracted with Sunrise on behalf of the plaintiff for a

contract for janitorial services.

85.  On good faith belief the Plaintiff alleges that:

 a.  Defendant Coverall breached its fiduciary duty to the plaintiff by agreeing to a
 contract well below the fair value for janitorial services the plaintiff had to
 perform at Sunrise.

 b.  Defendants Coverall and Sunrise conspired to contract for services for which
 plaintiff would not receive the fair value of the amount of work she performed.

 c.  Defendant Coverall, upon notice by the Plaintiff, breached its duty to the plaintiff
 by failing to obtain the fair value of plaintiff's labor performed by the plaintiff
 from Defendant Sunrise.

## COUNT V
## ACTION FOR SERVICES RENDERED
## AGAINST COVERALL AND SUNRISE

86.  Plaintiff realleges the facts set forth in paragraphs 1 through 87 above, and incorporates
 them by reference as duly set forth herein.

87.  Both Defendants Coverall agreed to pay to the plaintiff for the services in the amount of
 $13.81 per hour.

88.  Sunrise assured Plaintiff that they would compensate Plaintiff for all hours worked.

89.  Plaintiff with a coworker performed janitorial and carpet cleaning special services at
 Sunrise that amounted to more than 25 hours per week with the expectation that she
 would be compensated for those additional hours.

90.  Defendants Sunrise and Coverall allowed the plaintiff to so act without objection.

91.   The plaintiff thereafter performed all of her obligations under the agreement but the
      Defendants Coverall and Sunrise have neglected and refused to pay the plaintiff for the
      services.

92.   As a consequence of the Defendants' wrongful acts and conduct, Plaintiff suffered
      damages and Defendants have been and may continue to be unjustly enriched.

### COUNT VI
### ACTION FOR *QUANTUM MERIUT*
### AGAINST COVERALL AND SUNRISE

93.   Plaintiff realleges the facts set forth in paragraphs 1 through 91 above, and incorporates
      them by reference as duly set forth herein.

94.   The plaintiff is entitled to recover for the fair value of the services so rendered to the
      Defendant Sunrise from June 11, 2003 to October 31, 2003.

### COUNT VII
### VIOLATION OF MASSACHUSETTS
### TIMELY PAYMENT OF WAGES STATUTE G.L. c. 149§§ 148 & 150
### AGAINST COVERALL AND SUNRISE

95.   Plaintiff realleges the facts set forth in paragraphs 1 through 94 above, and incorporates
      them by reference as duly set forth herein.

96.   Plaintiff engaged in physical and mental exertion controlled by Defendants Sunrise and
      Coverall and primarily for their benefit.

97.   Defendants Sunrise and Coverall permitted or suffered plaintiff to work as a janitor

16

pursuant to Fair Labor Standards Act. 29 U.S.C. § 203(g).

98.  Defendants Sunrise and Coverall are joint employers of the plaintiff and as such are

jointly and individually liable under the Fair Labor Standards Act 20 U.S.C. § , and 29

C.F.R. § 791.2 and under the Massachusetts Minimum Fair Wage law G.L. c. 151.

99.  On May 23, 2005 plaintiff received a private right of action by the Massachusetts

Attorney General's office  pursuant to G.L. c. 149 § 150.

100.  Defendants repeatedly violated provisions of G.L. c. 149 § 148 by failing to pay the

plaintiff all wages earned within a timely manner. Mass. Gen. Laws ch. 149 § 150.

101.  Defendant is further liable for loss of wages and treble damages, costs and attorneys fees

for violations of G.L. c. 148 and 148A. G.L. c. 149 § 150.

## COUNT VIII
## OVERTIME VIOLATIONS
## UNDER THE FAIR LABOR STANDARDS ACT AND
## MASSACHUSETTS MINIMUM FAIR WAGES ACT
## AGAINST COVERALL AND SUNRISE

102.  Plaintiff realleges the facts set forth in paragraphs 1 through 101 above, and incorporate

them by reference as duly set forth herein.

103.  Plaintiff received no overtime compensation for the hours worked beyond forty hours

each week. G.L. c. 151 § 1A.

104.  Any agreement between the plaintiff and employer to work for less than such overtime

rate of compensation shall be no defense to such action.

105.  Defendants repeatedly violated the provisions the Fair Labor Standards Act, 29 U.S.C. §

17

207 and G.L. c. 151, § § 1A & 1B, by employing the plaintiff for workweeks longer than

forty (40) hours without full compensation for all hours in excess of forty (40) hours in

said workweeks, at rates not less than one and one half times (1 ½) the regular rate at

which they were employed. 29 U.S.C. § 207(a)1 and G.L. c. 151 § 1B.

106.  Defendants are further liable to Plaintiff for an award of actual, triple or double damages

together with costs and reasonable attorneys fee's as specifically authorized by 29 U.S.C.

§ 216 and G.L. c. 151 § 1B.

### COUNT IX
### BREACH OF IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING

107.  Plaintiff realleges the facts set forth in paragraphs 1 through 106 above, and incorporate

them by reference as duly set forth herein.

108.  Defendants are liable to the Plaintiff for terminating Plaintiff with without good cause

and with intent to deprive Plaintiff of benefits she has earned but not received in breach

of the implied covenant of good faith and fair dealing.

### PRAYERS FOR RELIEF

WHEREFORE, cause having been shown, plaintiff demands judgment ordering the following:

1.  Compensation for services rendered an equal amount as liquidated and treble damages,

attorney fees and costs as provided by G.L. c. 93A § 9(4).

2.  Payment of unpaid wages found by the Court to be due the employee an equal amount as

liquidated and treble damages, attorney fees and costs as provided by 29 U.S.C. § 216;

G.L. c. 151 § 1B and G.L. c. 149 § 150.

3.    Entering judgment for double or triple amounts awarded and for reasonable attorney's

    fees pursuant to G.L. c. 93A.

4.    Grant such additional or equitable relief as it may deem just and proper.

Date: _____ (OF FILING)

                              Respectfully submitted
                              Rhina Alvarenga,
                              By her attorney,

                              Jennifer L. Huggins
                              Greater Boston Legal Services
                              197 Friend Street
                              Boston, MA 02114
                              617/ 603-1810
                              BBO#: 642252

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

Superior Court
Civil Action No. MICV2005-01782-A

Rhina Alvarenga,

Plaintiff,

v.

Coverall of North America d/b/a Coverall
Cleaning Concepts and Coverall of Boston,
Sunrise Senior Living, Inc. d/b/a Sunrise of
Arlington,

Defendants.

**AMENDED COMPLAINT**

## INTRODUCTION

Plaintiff, Rhina Alvarenga, is a janitor by trade. From November 2002 until May 2003,

Ms. Alvarenga provided janitorial services to Sunrise of Arlington, an assisted living facility for

elderly adults. In early May 2003, Sunrise told Ms. Alvarenga that if she wished to continue to

work at Sunrise, then she would be required to enter into a franchise agreement with Coverall of

Boston. Coverall subsequently persuaded Ms. Alvarenga to purchase a franchise for the

exorbitant sum of $10,500, most of which was financed by Coverall at a 12% annual interest

rate. In exchange, Ms. Alvarenga received nothing beyond the opportunity to perform the same

work she had always performed at Sunrise. Moreover, Ms. Alvarenga soon discovered that,

contrary to Defendants' representations, she would be paid less than $1,500 per month for work

that would require more than 80 hours a week to perform.

Ms. Alvarenga is an immigrant whose first language is Spanish. She has no advanced

education, and she has no experience with franchise agreements or other business deals.

Coverall well knew, and expected, that Ms. Alvarenga would not understand the terms of the

complicated franchise agreement or the risks associated with that agreement. Coverall, however, failed to advise Ms. Alvarenga to seek legal counsel or other advice before signing the agreement. Instead, Coverall, through its agents and representatives, convinced Ms. Alvarenga to rely on its numerous misrepresentations concerning the purchase of a franchise. Ms. Alvarenga never would have purchased the franchise had she understood that, in fact, she was paying a huge sum of money to Coverall for the "opportunity" to work more than 80 hours per week for less than minimum wage. When Ms. Alvarenga discovered that she had been misled by Coverall and that Coverall had no intention of fully compensating her for her services, she sought to cancel the franchise arrangement and recover her losses. Instead of compensating Ms. Alvarenga for the services she had performed, Coverall suddenly claimed that Ms. Alvarenga was in breach of the franchise agreement because Sunrise had found her performance to be inadequate.

Coverall and Sunrise's conduct violates several provisions of Massachusetts statutory and common law. As a result of Defendants' conduct, Ms. Alvarenga has suffered damages of at least $19,654.11, which are subject to trebling under Massachusetts law. She also is entitled to recover her attorneys fees and costs, and to rescission of the unlawful franchise agreement.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to Massachusetts G.L. c. 212, §§ 1, 4; the Massachusetts Minimum Fair Wages Law, G.L. c. 151 §§ 1, 19, and 20; the Massachusetts Weekly Payment of Wages Law, G.L. c. 149 § 148; and Massachusetts G.L. c. 93A § 9(1).

2.      Venue is proper in this Court pursuant to G.L. c. 223 § 1.

2

## PARTIES

3.    Plaintiff, RHINA ALVARENGA, is and was at all times relevant to this action a resident of the City of Somerville, Massachusetts, Middlesex County.

4.    Defendant, COVERALL OF NORTH AMERICA, INCORPORATED d/b/a COVERALL CLEANING CONCEPTS and COVERALL OF BOSTON is a foreign corporation, whose principal office is located at 500 West Cypress Creek Road, Suite 580, Fort Lauderdale FL 33309, and whose registered agent in Massachusetts is Corporate Creations Network, Inc. located at 18 Tremont Street, Suite 146 Boston, MA 02108. COVERALL OF BOSTON is located at 105 Central Street, Suite 110, Stoneham, Massachusetts 02180. Defendant Coverall of North America, Inc. d/b/a Coverall Cleaning Concepts and Coverall of Boston (collectively, "Coverall") is the owner and franchisor of the registered trademarks and trade names Coverall Cleaning Concepts and Coverall of North America. Coverall licenses various persons in the Commonwealth of Massachusetts and elsewhere in the United States to use its name and to perform commercial janitorial services.

5.    Defendant SUNRISE SENIOR LIVING, INCORPORATED d/b/a SUNRISE OF ARLINGTON ( collectively referred to as "Sunrise") is a foreign corporation whose principal place of business located at 7902 West Park Drive, McLean, Virginia 22102, and whose registered agent in Massachusetts is CT Corporation Systems located at 101 Federal Street, Boston MA 02110. SUNRISE OF ARLINGTON is located at 1395 Massachusetts Avenue, Arlington, Massachusetts 02476. Upon information and belief, defendant Coverall contracted with defendant Sunrise to be the exclusive supplier of janitorial services at Sunrise of Arlington.

3

## STATEMENT OF FACTS

*Defendants Induce Ms. Alvarenga to Purchase a Coverall Franchise*

6.     Ms. Alvarenga worked as a janitor at Sunrise, an assisted living complex for elderly adults, beginning in November 2002. From November 2002 until May 2003, she worked there for another Coverall franchisee.

7.     In early May 2003, Sunrise told Ms. Alvarenga that it wished to hire her directly, but that because of an agreement with Coverall, she must pay for a franchise agreement in order to continue to work at Sunrise. Sunrise encouraged Ms. Alvarenga to speak to Coverall about becoming a franchisee.

8.     On or about May 29, 2003, Coverall persuaded Ms. Alvarenga to purchase a franchise agreement with Coverall in order to work for Coverall as a janitor with the privilege of using Coverall's name.

9.     On May 29, 2003, Joseph J. Falbo, the Regional Director of Coverall Cleaning Concepts' Boston Support Center, presented Ms. Alvarenga with a pre-printed, 24-page form franchise agreement. A true copy of this agreement is attached as Exhibit A and incorporated by reference.

10.     The agreement provided, among other things, that Coverall would offer Ms. Alvarenga custodial jobs with revenues of at least $1,500 per month. To purchase the franchise, Ms. Alvarenga had to pay Coverall $10,500 – $3,800 up front and $6,700 which she was required to borrow from Coverall and repay with a 12% rate of interest.

11.     Ms. Alvarenga first saw the franchise agreement on May 29, 2003. She was required to sign it that day.

4

12.     Ms. Alvarenga's first language is Spanish, and she speaks only simple, conversational English. She has no advanced formal education and no experience with franchise agreements or other business deals.

13.     Coverall did not allow Ms. Alvarenga to review the franchise agreement, or advise her to seek legal or other counsel before signing it. Instead, Mr. Falbo made oral representations as to the content of the agreement and then asked Ms. Alvarenga to sign it along with other documents, including the loan note and documents which purport to confirm receipt of policy manuals, circulars and disclosure statements.

*Coverall's Misrepresentation of the Terms of the Franchise Agreement*

14.     The representations Coverall made through its agents, representatives and brochures, which led the Ms. Alvarenga to purchase this franchise, included, but were not limited to, the following:

(a)     Coverall would offer profitable accounts to Ms. Alvarenga.

(b)     From the knowledge and experience of Coverall, the Sunrise account would be profitable.

(c)     Coverall would provide all of the administrative and managerial services which, according to Coverall, were required of a franchisor.

(d)     Coverall franchises are profitable, and Ms. Alvarenga could anticipate a profitable and successful business career as a Coverall franchisee.

(e)     Coverall maintained the exclusive right to bill for the Ms. Alvarenga's services, which contemplated a continuing and close relationship with its franchisees.

(f)     Coverall would make full disclosure to its franchisees of all material facts with respect to their relationship and franchise operations.

5

(g)     Franchisees could place trust and confidence in Coverall to deal fairly with and protect the interests of its franchisees.

(h)     Ms. Alvarenga would be able negotiate the number of hours and amount of compensation she would receive for her janitorial services.

15.     Though Ms. Alvarenga had previously worked as a janitor, she had no prior experience in the operation of a janitorial franchise or any other business.

16.     Ms. Alvarenga was relying, and Coverall knew she was relying, on Coverall's financial and management assistance to insure the profitability of the janitorial agreement.

*Defendants' Failure to Fully Compensate Ms. Alvarenga for her Work at Sunrise*

17.     After the franchise agreement was signed on May 29, 2003, Coverall offered Ms. Alvarenga work as a janitor at Sunrise of Arlington, the senior living complex where Ms. Alvarenga had been working for the previous six months.

18.     Mr. Falbo told Ms. Alvarenga that she would receive $1,485 per month, and that she was expected to work five (5) days a week for five (5) hours a day performing janitorial services at Sunrise, which amounted to $13.81 per hour of work.

19.     Ms. Alvarenga told Mr. Falbo that the work at Sunrise usually took more than 25 hours a week to complete; however, Mr. Falbo assured Ms. Alvarenga that Coverall's agreement with Sunrise was only for 25 hour per week of janitorial services.

20.     Mr. Falbo also told Ms. Alvarenga that she should notify Coverall of any hours she worked beyond 25 hours per week, in which case Coverall would bill Sunrise for the additional hours of service at a rate of $13.81 per hour, and would pay that amount to her.

21.     On or about June 11, 2003, Greg Liminelli, a Coverall Field Consultant, called Ms. Alvarenga and told her she could report for work at Sunrise of Arlington.

6

22.    On or about June 11, 2003, when Ms. Alvarenga arrived at Sunrise, Sam Ezra, the Sunrise building supervisor, told Ms. Alvarenga that Sunrise's agreement with Coverall required Ms. Alvarenga to clean 12 to 14 rooms plus common areas each day for 7 days a week, regardless of the number of hours this work required. In addition, Mr. Ezra said that the contract allowed him to assign specific additional duties for Ms. Alvarenga to perform, with no additional compensation.

23.    Ms. Alvarenga immediately called Mr. Liminelli at Coverall to complain about the quantity of work Mr. Ezra assigned to her. Mr. Liminelli told Ms. Alvarenga to keep track of any hours she worked over 25 hours per week and that Coverall would bill Sunrise and pay Ms. Alvarenga accordingly.

24.    Each day Ms. Alvarenga arrived at work, Mr. Ezra would supervise her work and give her a list of particular cleaning tasks assigned to her in addition to her regular custodial assignments.

25.    Ms. Alvarenga complained that she alone could not complete all the tasks assigned to her by Sunrise, so Sunrise and Coverall agreed to allow her to ask a friend to assist her in these tasks; however, Ms. Alvarenga had to split her pay with the co-worker.

26.    Ms. Alvarenga was supposed to be paid once a month for all services rendered to Sunrise.

27.    Ms. Alvarenga kept track of all the hours she and her friend worked each month and sent copies of her work schedule to Mr. Liminelli; however, she never was paid for any of the work she performed over and above 25 hours per week.

28.    As Coverall failed to pay Ms. Alvarenga, she complained to Patricia Blackburn, the Director of Sunrise.

7

29. Ms. Blackburn agreed to sign some of Ms. Alvarenga's monthly time sheets to confirm that Ms. Alvarenga and her co-worker in fact performed those hours of janitorial services at Sunrise.

30. The timesheets show that Ms. Alvarenga and her co-worker spent an average of 81 hours each week performing janitorial services at Sunrise.

31. However, Ms. Alvarenga received only between $752 and $1,170 per week after deductions by Coverall for worker's compensation insurance, royalty and management fees, as well as payments towards the $6,700 loan with 12% interest. In addition, Ms. Alvarenga was expected to split this compensation with her co-worker.

32. Ms. Alvarenga also performed "special services" at Sunrise, including carpet cleaning, and she forwarded special invoices to Coverall for these services.

33. Coverall never paid Ms. Alvarenga for these special services.

34. Because Ms. Alvarenga received so little compensation from Coverall, she often supplemented the payment she received from Coverall with her own money to compensate her co-worker for his hours of labor at Sunrise.

35. It became apparent to Ms. Alvarenga that Coverall had made the statements, representations, and promises alleged herein with no intention of ever honoring them.

*Coverall Declares Ms. Alvarenga in Breach of the Franchise Agreement when Ms. Alvarenga Attempts to Recover her Earned Compensation*

36. In late September 2003, Ms. Alvarenga notified Coverall and Sunrise of her wish to end the franchise agreement. She also demanded restitution for the amounts she had paid under the franchise agreement and the wages she lost as a result of the acts of Defendants. Defendants refused.

8

37.     The following day, a Coverall employee told Ms. Alvarenga that Coverall found her in breach of her franchise agreement because Sunrise had reported that the janitorial services she provided were unsatisfactory, and that Coverall would apply all future payments by Sunrise for her work to the loan she owed to Coverall.

38.     On March 4, 2005, Ms. Alvarenga, through her attorney, sent demand letters to Defendants Coverall and Sunrise pursuant to G.L. c. 93A.

39.     Defendant Sunrise did not respond to Ms. Alvarenga's G.L. c. 93A demand.

40.     Coverall failed to respond within 30 days.

41.     On May 6, 2005, Coverall responded to Ms. Alvarenga's demand letter, but failed to make a reasonable offer for settlement.

42.     Coverall's response was made in bad faith, and with knowledge that it had violated G.L. ch. 93A. Coverall has settled several actions similar to this action for amounts substantially exceeding its offer to Ms. Alvarenga. Coverall also has paid a civil penalty of $100,000 pursuant to a Consent Decree in an action brought by the Federal Trade Commission concerning Coverall's franchising practices.

### COUNT I
### (FRAUD AND MISREPRESENTATION
### AGAINST COVERALL)

43.     Plaintiff restates and incorporates by reference paragraphs 1 through 42 above.

44.     The representations and statements made by Coverall and its agents and representatives were false, fraudulent, and misleading in the following respects:

(a)     That Ms. Alvarenga would receive $1,495 per month and was only required to perform 25 hours per week of janitorial services at Sunrise for this amount.

(b)     That Coverall had the exclusive right to bill Sunrise and would pay Ms. Alvarenga for all janitorial services performed at Sunrise above 25 hours per week.

9

(c)    That Coverall would pay Ms. Alvarenga for all "special services" performed at Sunrise, including carpet cleaning.

(d)    That Coverall would timely pay Ms. Alvarenga, regardless of whether payment for her services was received from Sunrise.

(e)    That accounts for janitorial services provided by Coverall to Ms. Alvarenga would be profitable, when Coverall knew such accounts returned far too small a profit to enable Ms. Alvarenga to earn a livelihood therefrom.

(f)    That Defendant Coverall would sell Ms. Alvarenga's franchise agreement upon notice of her wish to end this franchise agreement.

(g)    That Ms. Alvarenga would have the rights and control of an independent contractor over accounts offered to her by Coverall.

(h)    That Sunrise was dissatisfied with the quality of Ms. Alvarenga's janitorial services such that Coverall could void the contract, collect the balance of the franchise fee, and withhold further payment for services from Ms. Alvarenga.

45.    The false, fraudulent, and misleading statements mentioned above were made by Defendant Coverall through its agents and representatives with knowledge that they were false, fraudulent, and misleading, or with reckless disregard for their truth or falsity.

46.    In making the false, fraudulent, and misleading statements alleged herein, Defendant Coverall through its agents and representatives acted willfully and with malice, or with reckless disregard for the rights of Ms. Alvarenga.

47.    In making the false, fraudulent, and misleading statements alleged herein, Defendant Coverall through its agents and representatives intended that Ms. Alvarenga rely on these statements.

48.     Ms. Alvarenga placed reasonable reliance upon the representations of Coverall.

49.     At all times, Ms. Alvarenga relied on the representations of Defendant Coverall

and, but for those representations, would not have entered into the contract or purchased the

janitorial franchise.

50.     As a result of the fraudulent statements and misrepresentations of Defendant, Ms.

Alvarenga suffered damages in the amount of $19,654.11.

## COUNT II
## (VIOLATION OF MASSACHUSETTS GENERAL LAWS 93A
## BY COVERALL)

51.     Plaintiff restates and incorporates by reference paragraphs 1 through 50 above.

52.     Coverall is engaged in the conduct of a trade or business.

53.     Coverall's actions as set forth herein constitute unfair and deceptive acts or

practices declared unlawful by G.L. c. 93A § 2 and the regulations promulgated pursuant to G.L.

c. 93A § 2(c).

54.     Coverall's unfair and deceptive acts occurred primarily and substantially within

the Commonwealth.

55.     Coverall's unfair and deceptive acts were conducted knowingly and willfully.

56.     Ms. Alvarenga suffered damages as a result of Coverall's use of unfair and

deceptive acts or practices in the agreement for janitorial services with Ms. Alvarenga.

57.     On March 4, 2005, Ms. Alvarenga sent a demand letter in accordance with G.L. c.

93A, § 9.

58.     Coverall failed to respond to the demand letter within 30 days. When it did

respond, it failed to make a reasonable offer for settlement.

59.     As a consequence of the Coverall's wrongful acts and conduct, Ms. Alvarenga

suffered damages while Coverall has been and continues to be unjustly enriched.

11

## COUNT III
### (VIOLATION OF MASSACHUSETTS GENERAL LAWS 93A
### BY SUNRISE)

60.    Plaintiff restates and incorporates by reference paragraphs 1 through 59 above.

61.    Sunrise is engaged in the conduct of a trade or business.

62.    Sunrise's actions as set forth herein constitute unfair and deceptive acts or

practices declared unlawful by G.L. c. 93A § 2 and the regulations promulgated pursuant to G.L.

c. 93A § 2(c).

63.    Sunrise's unfair and deceptive acts occurred primarily and substantially within the

Commonwealth.

64.    Sunrise's unfair and deceptive acts were conducted knowingly and willfully.

65.    Ms. Alvarenga suffered damages as a result of Sunrise's use of unfair and

deceptive acts or practices in the agreement for janitorial services with Ms. Alvarenga.

66.    On March 4, 2005, Ms. Alvarenga sent a demand letter in accordance with G.L. c.

93A, § 9.

67.    Sunrise never responded to Ms. Alvarenga's demand letter. This failure to make a

reasonable offer for settlement was in bad faith and with reason to know that the acts complained

of were in violation of G.L. c. 93A.

68.    As a consequence of the Coverall's wrongful acts and conduct, Ms. Alvarenga

suffered damages while Sunrise has been and continues to be unjustly enriched.

## COUNT IV
### (RESCISSION OF FRANCHISE AGREEMENT)

69.    Plaintiff restates and incorporates by reference paragraphs 1 through 68 above.

70.    The "franchise agreement" between Coverall and Ms. Alvarenga was

unconscionable.

71.    Ms. Alvarenga suffered damages as a result of the unconscionable contract.

72.    Plaintiff demands that the contract be rescinded, and that she be restored to her

pre-contract position and awarded the reasonable value for services provided by her to Sunrise.

### COUNT V
### (BREACH OF CONTRACT AGAINST COVERALL)

73.    Plaintiff restates and incorporates by reference paragraphs 1 through 72 above.

74.    Ms. Alvarenga and Coverall entered into a valid and binding agreement.

75.    Coverall breached the terms of that agreement.

76.    Ms. Alvarenga suffered damages as a result of the breach.

### COUNT VI
### (BREACH OF FIDUCIARY DUTY AGAINST COVERALL)

77.    Plaintiff restates and incorporates by reference paragraphs 1 through 76 above.

78.    Defendant Coverall at all times had knowledge concerning the matters alleged

herein far superior to that possessed by Ms. Alvarenga and acted from a position of greater

economic and bargaining power. For this reason, Coverall acted, or should be held to have

acted, in the capacity of a fiduciary.

79.    Coverall was under a duty to exercise the utmost good faith and fairness toward

Ms. Alvarenga in the negotiations leading to the execution of the contract, and in the

performance thereof. This fiduciary duty applies particularly with respect to royalty and

management fees, and payments for supplies and services, which sums were paid by Ms.

Alvarenga to Defendant in its capacity as fiduciary and were received by Defendant in that

capacity.

80.    Coverall breached its fiduciary duties to Ms. Alvarenga, and she suffered

damages as a result.

13

## COUNT VII
### (BREACH OF IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING AGAINST COVERALL)

81.    Plaintiff restates and incorporates by reference paragraphs 1 through 80 above.

82.    Coverall declared Ms. Alvarenga to be in breach of the franchise agreement in

bad faith, without good cause, and with the intent to deprive Ms. Alvarenga of the benefits of

that agreement.

83.    Coverall's actions were in breach of the implied covenant of good faith and fair

dealing.

84.    Ms. Alvarenga has suffered damages as a result of Coverall's actions.

## COUNT VIII
### (VIOLATION OF MASSACHUSETTS
### MINIMUM FAIR WAGE ACT AGAINST COVERALL AND SUNRISE, G.L. c. 151 § 1)

85.    Plaintiff restates and incorporates by reference paragraphs 1 through 84 above.

86.    Ms. Alvarenga performed services for Coverall and Sunrise primarily for their

benefit and subject to their control.

87.    Coverall and Sunrise permitted Ms. Alvarenga to work as a janitor.

88.    Coverall and Sunrise failed to pay Ms. Alvarenga a fair wage in violation of G.L.

c. 151 § 1.

89.    As a result of Coverall and Sunrise's actions, Ms. Alvarenga suffered damages.

90.    On May 23, 2005, Ms. Alvarenga received a private right of action by the

Massachusetts Attorney General's office pursuant to G.L. c. 149 § 150.

91.    Coverall and Sunrise are liable for loss of wages, treble damages, costs and

attorneys fees pursuant to G.L. c. 151 § 1B.

92.    Coverall and Sunrise are joint employers of Ms. Alvarenga and therefore are

jointly and severally liable under the Massachusetts Minimum Fair Wage law, G.L. c. 151.

14

## COUNT IX
## (VIOLATION OF TIMELY PAYMENT OF WAGES STATUTE AGAINST COVERALL AND SUNRISE, G.L. c. 149 § 148)

93.    Plaintiff restates and incorporates by reference paragraphs 1 through 92 above.

94.    Ms. Alvarenga performed services for Coverall and Sunrise primarily for their

benefit and subject to their control.

95.    Coverall and Sunrise permitted Ms. Alvarenga to work as a janitor.

96.    Coverall and Sunrise repeatedly violated G.L. c. 149 § 148 by failing to pay Ms.

Alvarenga all wages she earned in a timely manner.

97.    As a result of Coverall and Sunrise's actions, Ms. Alvarenga suffered damages.

98.    On May 23, 2005, Ms. Alvarenga received a private right of action by the

Massachusetts Attorney General's office pursuant to G.L. c. 149 § 150.

99.    Coverall and Sunrise are liable for loss of wages, treble damages, costs and

attorneys fees pursuant to G.L. c. 149 § 150.

100.    Coverall and Sunrise are joint employers of Ms. Alvarenga and therefore are

jointly and severally liable under the Timely Payment of Wages Act, G.L. c. 149 § 148.

## COUNT X
## OVERTIME VIOLATIONS UNDER THE MASSACHUSETTS MINIMUM FAIR WAGES ACT AGAINST COVERALL AND SUNRISE, G.L. c. 151, §§ 1A & 1B

101.    Plaintiff restates and incorporates by reference paragraphs 1 through 100 above.

102.    Ms. Alvarenga performed services for Coverall and Sunrise primarily for their

benefit and subject to their control.

103.    Coverall and Sunrise permitted Ms. Alvarenga to work as a janitor.

104.    Defendants repeatedly violated G.L. c. 151, §§ 1A & 1B by employing Ms.

Alvarenga for workweeks longer than forty (40) hours without full compensation for all hours in

15

excess of forty (40) hours in said workweeks at rates not less than one and one half times (1 ½)

the regular rate at which they were employed.

105.    Ms. Alvarenga is not an exempt employee pursuant to G.L. c. 151 § 1A.

106.    As a result of Coverall and Sunrise's actions, Ms. Alvarenga suffered damages.

107.    Coverall and Sunrise are liable for an award of actual, double or treble damages,

costs and attorneys' fees as authorized by G.L. c. 151 § 1B.

108.    Coverall and Sunrise are joint employers of Ms. Alvarenga and therefore are

jointly and severally liable under the Minimum Fair Wages Act, G.L. c. 151, §§ 1A & 1B.

**COUNT XI**
**ACTION FOR SERVICES RENDERED**
**AGAINST COVERALL AND SUNRISE**

109.    Plaintiff restates and incorporates by reference paragraphs 1 through 108 above.

110.    Coverall and Sunrise agreed to pay to Ms. Alvarenga for all hours she worked at a

rate of $13.81 per hour.

111.    Ms. Alvarenga thereafter performed all of her obligations under the agreement but

Coverall and Sunrise have refused to pay Ms. Alvarenga for her services.

112.    As a result of Coverall and Sunrise's conduct, Ms. Alvarenga suffered damages

and Defendants have been and continue to be unjustly enriched.

**PRAYERS FOR RELIEF**

WHEREFORE, cause having been shown, the Plaintiff respectfully requests that the

Court grant the following relief:

1.    Award actual damages equal to the amount paid by the Plaintiff for the franchise

and compensation for services rendered with interest, plus treble damages, attorney fees and

costs as provided by G.L. c. 93A § 9(4).

2.    Payment of unpaid wages found by the Court to be due the employee with

interest, plus treble damages, attorney fees and costs as provided by 29 U.S.C. § 216, G.L. c.

151 § 1B, and G.L. c. 149 § 150.

3.    Grant such additional or equitable relief as it may deem just and proper.

The Plaintiff hereby demands a jury trial on all claims so triable.

RHINA ALVARENGA
By her attorneys,

Jennifer L. Huggins (BBO #642252)
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114
617.603.1810

Daryl J. Lapp (BBO #554980)
Melissa C. Allison (BBO #657470)
PALMER & DODGE LLP
111 Huntington Avenue at Prudential Center
Boston, MA 02199-7613
617.239.0100

Dated: August 8, 2005

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

Superior Court
CIVIL ACTION NO. _____

Rhina Alvarenga,          )
    Plaintiff          )
                  )
v.                        )
                  )
Coverall Cleaning Concepts, )
Coverall of North America;  )
Coverall of Boston,       )
Joseph J. Falbo,          )
Greg Liminelli,           )
Sunrise Senior Living, Inc. )
Sunrise of Arlington,     )
Patricia Blackburn        )
    Defendants.          )

PLAINTIFF'S STATEMENT OF DAMAGES

Plaintiff demands relief as follows:

1.  That the Plaintiff be awarded unpaid wages and overtime in the amount of $19, 654.11

2.  That the Plaintiff be awarded an additional amount in liquidated or treble damages.

3.  That Plaintiff be awarded reasonable attorney fees and costs.

4.  That the Court award such other, further or different relief as it determines just.

> Respectfully submitted
> Rhina Alvarenga,
> By her attorney,

20

Jennifer L. Huggins, Esq.
Staff Attorney
Greater Boston Legal Services
197 Friend St.
Boston, MA 02114
617/ 603-1810
BBO#: 642252

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Rhina Alvarenga

**(b)** County of Residence of First Listed Plaintiff    Middlesex, MA
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Jennifer L. Huggins, Esq., Greater Boston Legal Services
197 Friend Street, Boston, MA, 02466

## DEFENDANTS

Coverall of North America d/b/a Coverall Cleaning Concepts and Coverall of Boston, Sunrise Senior Living, Inc, d/b/a Sunrise of Arl.

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

Joseph M. Desmond, Morrison Mahoney, LLP
250 Summer St. Boston, MA 02210

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
      Plaintiff

☒ 3  Federal Question
      (U.S. Government Not a Party)

☐ 2  U.S. Government
      Defendant

☐ 4  Diversity
      (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                              and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☒ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1  Original
      Proceeding

☒ 2  Removed from
      State Court

☐ 3  Remanded from
      Appellate Court

☐ 4  Reinstated or
      Reopened

☐ 5  Transferred from
      another district
      (specify)

☐ 6  Multidistrict
      Litigation

☐ 7  Appeal to District
      Judge from
      Magistrate
      Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing. (Do not cite jurisdictional statutes unless diversity):
Fair Labor Standards Act, United States Code Chapter 29

Brief description of cause:
Recovery of compensation for work performed as a janitoron behalf of defendant corporation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE                    DOCKET NUMBER

DATE
09/07/2005

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only) ___Alvarenga v. Coverall Cleaning Concepts_____

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

|   | | |
|---|---|---|
| ☐ | I. | 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT. |
| ✓ | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. *Also complete AO 120 or AO 121 for patent, trademark or copyright cases |
| ☐ | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891. |
| ☐ | IV. | 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900. |
| ☐ | V. | 150, 152, 153. |

05 - 11819 JLT

3.  Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

_____

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

    YES ☐    NO ✓

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

    YES ☐    NO ✓

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

    YES ☐    NO ☐

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

    YES ☐    NO ✓

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

    YES ✓    NO ☐

    A.    If yes, in which division do all of the non-governmental parties reside?

          Eastern Division ✓        Central Division ☐        Western Division ☐

    B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

          Eastern Division ☐        Central Division ☐        Western Division ☐

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

    YES ☐    NO ✓

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME ___Joseph M. Desmond, Morrison Mahoney, LLP_____

ADDRESS ___250 Summer Street, Boston, MA 02210_____

TELEPHONE NO. ___(617) 439-7500_____

(CategoryForm.wpd - 5/2/05)