COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

Superior Court
CIVIL ACTION NO. **05-1782**

Rhina Alvarenga,                        )
     Plaintiff                        )
                     )
                     )
v.                                      )
                     )
Coverall Cleaning Concepts,  )
Coverall of North America;    )
Coverall of Boston,              )
Joseph J. Falbo,                   )
Greg Liminelli,                    )
Sunrise Senior Living, Inc..   )
Sunrise of Arlington,            )
Patricia Blackburn               )
     Defendants                      )

CIVIL COMPLAINT



FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX
MAY 2 4 2005
CLERK

## INTRODUCTION

Plaintiff, Rhina Alvarenga, brings this action to recover compensation for work
performed as a janitor on behalf of defendant Coverall of Boston ("Coverall"), a national
corporation that provides janitors to companies. Coverall persuaded Ms Alvarenga, a janitor, to
pay its corporation $10,500 for the privilege to work as a janitor. Plaintiff spent over 81 hours a
week cleaning Sunrise, an assisted living center for the elderly. Coverall promised to pay her at a
rate of $31.81 an hour but in fact she received compensation that was often below the state
minimum wage.

## JURISDICTION AND VENUE

1.     Jurisdiction is conferred upon this Court pursuant to the Fair Labor Standards Act, United

States Code, Chapter 29, § § 207, and 216; generally at G.L. c. 212,§4; under the

Massachusetts Minimum Fair Wages Laws, G.L. c. 151, sections 1, 19, and 20; and

Massachusetts Weekly Payment of Wages Laws, G.L. c. 149 § 148.

2.   Jurisdiction of the subject matter of this action is conferred on this court by chapter G.L.

c. 93A § 9(1) and by G.L. c. 214, § 1 .

3.   Venue in this action properly lies in this Court pursuant to G.L. c. 223 § 1.

#### PARTIES

4.   Plaintiff, RHINA ALVARENGA at all times relevant to this action is and was a resident

of the City of Somerville, Massachusetts, MIDDLESEX COUNTY.

5.   Defendant, COVERALL OF NORTH AMERICA, INCORPORATED, and COVERALL

CLEANING CONCEPTS d/b/a COVERALL OF BOSTON (collectively referred to as

"Coverall") is a foreign corporation, whose principal office is located at 3111 Camino

Del Rio, North San Diego, California, 92108, and whose registered agent is CT

Corporation Systems located at 101 Federal Street, Boston MA 02110.

6.   COVERALL OF BOSTON is located at 105 Central Street, Suite 110, Stoneham,

Massachusetts 02180.

7.   Defendant JOSEPH J. FALBO was at all times relevant an the Regional Director of

Coverall Cleaning Concepts' Boston Support Center located at Coverall of Boston , 105

Central Street, Suite 110, Stoneham, Massachusetts 02180.

8.   Defendant GREG LIMINELLI, upon information and belief, was at all times relevant a

Coverall Field Consultant, of Coverall of Boston located at 105 Central Street, Suite 110,

2

Stoneham, Massachusetts 02180.

9.     Defendant Coverall is the owner and franchiser of the registered trademark and trade name Coverall Cleaning Concepts and Coverall of North America. Coverall licenses janitors to use its name and  therein, defendant Coverall licenses various persons, in the State of Massachusetts, and elsewhere in the United States, including the plaintiff to perform janitorial services for businesses.

10.    Defendant SUNRISE SENIOR LIVING, INCORPORATED d/b/a SUNRISE OF ARLINGTON ( collectively referred to as "Sunrise") is a foreign corporation which has a principal place of business is located 7902 West Park Drive, McLean, Virginia 22102 whose registered agent is Corporate Creations Network, Incorporated located at 18 Tremont Street, Suite 146 Boston, Massachusetts 02108.

11.    SUNRISE OF ARLINGTON is located at 1395 Massachusetts Avenue, Arlington, Massachusetts 02476.

12.    Upon information and belief, Defendant PATRICIA BLACKBURN is and was at all times relevant the Director of Sunrise of Arlington located at 1395 Massachusetts Avenue, Arlington, Massachusetts 02476.

13.    Upon information and belief, defendant Coverall contracted with defendant Sunrise to be the exclusive supplier of janitorial services at Sunrise of Arlington.

14.    Upon information and belief Defendants Coverall and Sunrise are and were, at all times hereinafter mentioned, engaged in related activities performed through unified operation or common control, engaged in commerce or in the production of goods for commerce and are and at all time hereinafter mentioned were enterprises within the meaning of 29

3

U.S.C. § 203(r).

15. Defendants Sunrise and Coverall are joint employers and are jointly liable where Coverall acted directly in the interest of Sunrise by having exclusive responsibility for providing janitors to Sunrise, and Sunrise benefitted from Coverall's services.

## STATEMENT OF FACTS

16. Plaintiff, Rhina Alvarenga worked as a janitor by trade.

17. Ms. Alvarenga's first language is Spanish and has no undergraduate education.

18. Plaintiff previously worked at Sunrise from November 2002 until May 2003 under another Coverall franchisee.

19. On or about May 29, 2003, defendant Coverall persuaded Plaintiff, Rhina Alvarenga to purchase a franchise agreement with defendant Coverall to work for them as a janitor with the privilege of using Coverall's name.

20. Sunrise is an assisted living complex for elderly adults.

21. In early May 2003, Sunrise told Plaintiff that they wished to hire her directly but because of an agreement with Coverall, she must pay for a franchise agreement in order to continue to work at Sunrise.

22. On May 29, 2003, Joseph J. Falbo, the Regional Director of Coverall Cleaning Concepts' Boston Support Center, presented Plaintiff with a pre-printed form franchise agreement in which Coverall promised to offer Plaintiff monthly business at a minimum of $1,500 per month if she paid Coverall $3,800 deposit and agree to a loan from Coverall for $6,700 with 12% rate of interest.

4

23.    On May 29, 2003, Plaintiff first saw the actual franchise agreement and was required to
       sign said agreement on that day.

24.    Plaintiff was never able to review the 24 paged franchise agreement herself before signing
       it and defendant Coverall did not allow her to review the actual franchise agreement or
       advise her to seek counsel before signing the agreement. Instead, Mr. Falbo made oral
       representations as to the content of the agreement and then asked Plaintiff to sign and
       initial numerous documents.

25.    Among the representations made by defendant Coverall through its agent and
       representatives, in its advertising, and brochures, which led to the purchase by plaintiff of
       this franchise, included, were the following:

       a.    That Defendant would offer profitable accounts to the plaintiff and, from the
             knowledge and experience of Defendant, the site would be profitable.

       b.    That Defendant Coverall would provide all of the administrative and managerial
             services represented by Defendant as incumbent upon a franchisor as advertised
             by Defendant.

       c.    That Coverall franchises were profitable and, in reliance thereon, plaintiff could
             anticipate a profitable and successful business career as a Coverall franchisee.

       d.    That Defendant Coverall's exclusive right to bill for the plaintiff's services which
             contemplated a continuing, close relationship between Defendant and its
             franchisees during which Defendant Coverall would make full disclosure to its
             franchisees of all material facts respecting their relationship and franchise
             operations, and franchisees could place trust and confidence in Defendant to deal

                                              5

fairly with and protect the interests of its franchisees.

e.  That plaintiff would be able negotiate the number of hours and amount of
compensation she would receive for her janitorial services.

26.  Though Plaintiff had previously worked as a janitor, she had no prior experience in the
operation of a janitorial franchise or similar business.

27.  Plaintiff had no resources other than those declared to Defendant and, thus, plaintiff had
to rely on Defendant's financial and management assistance to insure the profitability of
the janitorial agreement.

28.  Also, on May 29, 2003, Defendant Coverall offered Plaintiff work as a janitor at Sunrise
in Arlington.

29.  Mr. Falbo told Plaintiff that in exchange for $1,485/month she was expected to work five
(5) days a week, for five (5) hours a day performing janitorial services at Sunrise, which
amounted to $13.81 per hour of work.

30.  Plaintiff told Mr. Falbo that the work at Sunrise usually took more than 25 hours a week
to complete; however, Mr. Falbo assured Plaintiff that Coverall's agreement with Sunrise
was only for 25 hour per week of janitorial services.

31.  Mr. Falbo also told Plaintiff that she should notify Coverall of any hours of janitorial
services she performed over the 25 hours and Coverall would bill Sunrise for the
additional hours of service at a rate of $13.81 per hour.

32.  On or about June 11, 2003, Greg Liminelli, a Coverall Field Consultant, called Plaintiff
and told her she could report for work at Sunrise of Arlington.

33.  On or about June 11, 2003, when Plaintiff showed up at Sunrise, Sam Ezra, the Sunrise

6

building supervisor, told Plaintiff that Sunrise's agreement with Coverall provided that Plaintiff clean 12 to 14 rooms plus common areas each day for 7 days a week regardless of the number of hours of work it took to complete them. In addition, Mr. Ezra could assign specific duties for Plaintiff to perform.

34. Plaintiff immediately called Mr. Liminelli at Coverall to complain about the quantity of work Mr. Ezra assigned to her. Mr. Liminelli told Plaintiff to keep track of any hours over 25 hours a week she performed and Coverall would bill Sunrise accordingly.

35. Each day Plaintiff arrived at work, Mr. Ezra would supervise her work and give her a list of particular cleaning tasks assigned to her in addition to her daily maintenance assignments.

36. Plaintiff complained that she alone could not complete all the tasks assigned to her by Sunrise, so Sunrise and Coverall agreed to allow her to ask a friend to assist her in the tasks; however, Plaintiff had to split her pay with the coworker.

37. Plaintiff was supposed to be paid once a month for all services rendered to Sunrise.

38. Plaintiff kept track of all the hours she and her friend worked each month and sent copies of her monthly schedule of hours of work to Mr. Liminelli; however, she never received full pay for any of those additional hours of work.

39. As Coverall failed to pay Plaintiff, she complained to Patricia Blackburn, the Director of Sunrise.

40. Ms. Blackburn agreed to sign some of her monthly time sheets to confirm that Plaintiff and her co-worker in fact performed the hours of janitorial services at Sunrise.

41. Plaintiff and her co-worker spent an average of 81 hours each week performing janitorial

7

services at Sunrise on the timesheets.

42.    However, Plaintiff received only between $752 and $1,170 per after minus deductions by Coverall for worker's compensation insurance, royalty and management fees, as well as payments towards the $6,700 loan plus the 12% interest. However, Plaintiff was expected to split her pay with her co-worker.

43.    In addition, Plaintiff performed "special services" which included carpet cleaning several times at Sunrise and forwarded special invoices to Coverall for this service.

44.    Coverall never paid Plaintiff for these special services.

45.    Because Plaintiff received so little compensation from Coverall, she often supplemented the payment she received from Coverall with her own money to compensate her co-worker for his hours of labor at Sunrise.

46.    About four(4) months after operating under the franchise contract it became apparent to the Plaintiff that Defendant Coverall had made the statements, representations, and promises alleged herein with no intention of ever performing according to representations made.

47.    In late September 2003, and within a reasonable time after realizing her situation, Plaintiff notified Defendants Coverall and Sunrise, of her wish to end the franchise agreement and demanded restitution for the amounts paid and losses sustained by plaintiff under the contract and as a result of the acts of Defendants alleged herein. Defendants have failed and refused to make such restitution, and continues to do so.

48.    Instead of offering the plaintiff restitution, the following day, plaintiff was told by a Coverall employee that Coverall found her in breach of her franchise agreement because

8

Sunrise had reported that the janitorial services provided by Plaintiff were unsatisfactory and Coverall would apply all future payments by Sunrise for her work to the loan she owed to Coverall.

49.  Plaintiff does not know the amount of payment Coverall received from Sunrise for her services.

50.  On March 4, 2005, Plaintiff, through her attorney, sent Defendants Coverall and Sunrise a demand letter pursuant to G.L. c. 93A.

51.  Defendant Coverall failed to provide a reasonable offer for settlement within 30 days.

52.  On May 6, 2005, Defendant Coverall responded to the plaintiff's March 4th demand letter but failed to provide a reasonable offer for settlement.

53.  Defendant Sunrise did not respond to Plaintiff's  G.L. c. 93A demand.

## COUNT I
## FRAUD AND MISREPRESENTATION
## AGAINST DEFENDANTS COVERALL,
## JOSEPH FALBO AND GREG LIMINELLI

54.  Plaintiff realleges the facts set forth in paragraphs 1 through 53 above, and incorporates them by reference as duly set forth herein.

55.  Plaintiff, placing reasonable reliance upon the representations of Defendant Coverall, executed a franchise agreement, a true copy of which is attached as Exhibit 1.

56.  At all times, plaintiff relied on the representations of Defendant Coverall and, but for those representations, would not have entered into the contract or purchased the franchise to operate a janitorial franchise.

9

57.   The representations and statements made by Defendant Coverall and its agents and
       representatives were false, fraudulent, and misleading in the following respects:

   a.   That Plaintiff would receive $1,495 per month and was only required to perform
        25 hours per week of janitorial services at Sunrise for this amount.

   b.   That Defendant Coverall had the exclusive right to bill Sunrise and would pay
        Plaintiff for all janitorial services performed at Sunrise above 25 hours per week.

   c.   That Defendant Coverall would pay plaintiff for all "special services" performed
        at Sunrise including carpet cleaning.

   d.   That Defendant Coverall would timely pay plaintiff regardless of whether
        payment for her services was received from the Defendant Sunrise.

   e.   That accounts for janitorial services provided by Coverall to the Plaintiff would be
        profitable, when in fact, said accounts have a returning far too small a profit to
        enable Plaintiff to earn a livelihood therefrom.

   f.   That Defendant Coverall would sell Plaintiff's franchise agreement upon notice of
        her wish to end this franchise agreement.

   g.   That plaintiff would have the rights and control of an independent contractor over
        accounts offered to her by Coverall.

   h.   That Defendant Sunrise was dissatisfied with the qualify of Plaintiff's janitorial
        services such that Defendant Coverall could void the contract and collect the
        balance of the franchise fee and withhold further payment for services to the
        Plaintiff.

58.   The false, fraudulent, and misleading statements mentioned above were made by

10

Defendant Coverall with knowledge that they were false, fraudulent, and misleading, or with reckless disregard for their truth or falsity.

59.   In making the false, fraudulent, and misleading statements alleged herein, Defendant Coverall and its agents and representatives acted willfully and with malice, or with reckless disregard for the rights of plaintiff.

60.   As a result of the fraudulent statements and misrepresentations of Defendant, plaintiff has been damaged in the sum of $19,654.11; plaintiff claims the further sum of $39,308.22 as exemplary damages.

### COUNT II
### UNCONSCIONABLE CONTRACT AGAINST
### COVERALL AND JOSEPH FALBO

61.   Plaintiff realleges the facts set forth in paragraphs 1 through 60 above, and incorporates them by reference as duly set forth herein.

62.   The "franchise agreement" between Coverall and the Plaintiff was not a bargained for agreement but the result of gross disparity in bargaining positions and values exchanged.

63.   The "franchise agreement" between Coverall and the Plaintiff is a contract of adhesion.

64.   The "franchise agreement" contained terms unreasonably favorable to Coverall, and Plaintiff had no meaningful choice or alternative than to sign the agreement if she wanted to continue to work as a janitor at Sunrise of Arlington.

65.   Plaintiff was unable to receive substantial benefits from the contract and because of her weaker position, was unable to reasonably protect her interest as she was unable to

11

understand the sophisticated language of the twenty-four (24) paged agreement.

66.   Defendant Coverall through its agent Joseph Falbo did not allow the Plaintiff time to
      review the contract herself and instead made false verbal representations about its terms.

67.   As a result of the unconscionable contract and unconscionable actions of Defendant
      Coverall, Plaintiff suffered oppression and unfair surprise and thus the "franchise
      agreement" is unconscionable.

68.   Plaintiff demands that she be restored to pre-contract position and awarded the reasonable
      value for services provided by her to Sunrise.

## COUNT III
## VIOLATION OF MASSACHUSETTS GENERAL LAWS 93A
## BY ALL NAMED DEFENDANTS

69.   Plaintiff realleges the facts set forth in paragraphs 1 through 68 above, and incorporates
      them by reference as duly set forth herein.

70.   The Defendants' wrongful acts occurred primarily and substantially within the
      Commonwealth, and were conducted knowingly and willfully.

71.   On March 4, 2005, Plaintiff, through counsel, sent Defendant a written demand for relief
      by sending Defendants Coverall and Sunrise a demand letter as required by G.L. c. 93A,
      § 9.

72.   Both Defendants Coverall and Sunrise have failed to respond to Plaintiff's demand letter
      within 30 days with a reasonable offer for settlement.

73.   Defendant Coverall's never responded to Plaintiff's demand letter. This failure to make a
      reasonable offer for settlement was in bad faith and with reason to know that the acts

complained of were in violation of G.L. c. c. 93A.

74.   Defendant Sunrise's failure to make any offer for settlement was in bad faith and with
      reason to know that the acts complained of were in violation of G.L. c. 93A.

75.   Plaintiff suffered damages as a result of Defendants' Coverall and Sunrises' use of unfair
      an deceptive acts and practices in the agreement for janitorial services with Plaintiff.

76.   Defendant Coverall's misrepresentations to Plaintiff that induced her to sign the contract,
      pay a deposit of $3,800, and enter into a loan agreement for $6,700 with a 12% interest
      rate was an unfair or deceptive acts and practice declared unlawful by G.L. c. 93A § 2
      and the regulations promulgated pursuant to G.L. c. 93A § 2(c).

77.   Defendant Coverall's failure to allow Plaintiff at least 5 days to seek counsel and review
      the franchise agreement for janitorial services is an unfair and deceptive act declared
      unlawful by G.L. c. 93A § 2 and the regulations promulgated pursuant to G.L. c. 93A §
      2(c) and Fair Trade Act pursuant to 16 C.F.R. § 436.1.

78.   Defendant Coverall's and Sunrise's failure to pay Plaintiff for all hours of work performed
      at Sunrise was an unfair or deceptive act declared unlawful by G.L. c. 93A § 2 and the
      regulations promulgated pursuant to G.L. c. 93A § 2(c).

79.   Defendant Coverall's assertion that Plaintiff failed to perform janitorial services
      satisfactorily at Sunrise in violation of the franchise agreement is pretextual and
      constitutes an unfair and deceptive act, declared unlawful by G.L. c. 93A §2 and the
      regulations promulgated pursuant to G.L. c. 93A § 2(c).

80.   Defendant Sunrise's failure to pay Plaintiff for janitorial services as promised was an
      unfair and deceptive act, declared unlawful by G.L. c. 93A § 2 and the regulations

promulgated pursuant to G.L. c. 93A § 2(C)).

81.   As a consequence of the Defendants' wrongful acts and conduct, plaintiff suffered the
      damages while Defendants have been and may continue to be, unjustly enriched.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY**
**TO PLAINTIFF AGAINST COVERALL**

82.   Plaintiff realleges the facts set forth in paragraphs 1 through 81 above, and incorporates
      them by reference as duly set forth herein.

83.   Defendant Coverall at all times had knowledge concerning the matters alleged herein far
      superior to that possessed by plaintiff and acted from a position of greater economic and
      bargaining power. For this reason, Defendant acted, or should be held to have acted, in
      the capacity of a fiduciary, and, as such, was under a duty to make full disclosure of all
      facts concerning the transactions mentioned herein that were necessary to permit plaintiff
      to make intelligent decisions regarding the purchase of the franchise; to make full
      disclosure to plaintiff of all the terms of the franchise contract; the reasons therefor, and
      the probable effect thereof, to permit plaintiff to negotiate respecting any of the terms of
      the contract, and otherwise to exercise the utmost good faith and fairness toward plaintiff
      in the negotiations leading to the execution of the contract, and in the performance
      thereof. This fiduciary duty applies particularly with respect to royalty and management
      fees, and payments for supplies and services, which sums were paid by plaintiff to
      Defendant in its capacity as fiduciary and were received by Defendant in that capacity.

84.   Defendant Coverall negotiated and contracted with Sunrise on behalf of the plaintiff for a

14

contract for janitorial services.

85.    On good faith belief the Plaintiff alleges that:

    a.    Defendant Coverall breached its fiduciary duty to the plaintiff by agreeing to a

        contract well below the fair value for janitorial services the plaintiff had to

        perform at Sunrise.

    b.    Defendants Coverall and Sunrise conspired to contract for services for which

        plaintiff would not receive the fair value of the amount of work she performed.

    c.    Defendant Coverall, upon notice by the Plaintiff, breached its duty to the plaintiff

        by failing to obtain the fair value of plaintiff's labor performed by the plaintiff

        from Defendant Sunrise.

### COUNT V
### ACTION FOR SERVICES RENDERED
### AGAINST COVERALL AND SUNRISE

86.    Plaintiff realleges the facts set forth in paragraphs 1 through 87 above, and incorporates

       them by reference as duly set forth herein.

87.    Both Defendants Coverall agreed to pay to the plaintiff for the services in the amount of

       $13.81 per hour.

88.    Sunrise assured Plaintiff that they would compensate Plaintiff for all hours worked.

89.    Plaintiff with a coworker performed janitorial and carpet cleaning special services at

       Sunrise that amounted to more than 25 hours per week with the expectation that she

       would be compensated for those additional hours.

90.    Defendants Sunrise and Coverall allowed the plaintiff to so act without objection.

91.   The plaintiff thereafter performed all of her obligations under the agreement but the
      Defendants Coverall and Sunrise have neglected and refused to pay the plaintiff for the
      services.

92.   As a consequence of the Defendants' wrongful acts and conduct, Plaintiff suffered
      damages and Defendants have been and may continue to be unjustly enriched.

### COUNT VI
### ACTION FOR *QUANTUM MERIUT*
### AGAINST COVERALL AND SUNRISE

93.   Plaintiff realleges the facts set forth in paragraphs 1 through 91 above, and incorporates
      them by reference as duly set forth herein.

94.   The plaintiff is entitled to recover for the fair value of the services so rendered to the
      Defendant Sunrise from June 11, 2003 to October 31, 2003.

### COUNT VII
### VIOLATION OF MASSACHUSETTS
### TIMELY PAYMENT OF WAGES STATUTE G.L. c. 149§§ 148 & 150
### AGAINST COVERALL AND SUNRISE

95.   Plaintiff realleges the facts set forth in paragraphs 1 through 94 above, and incorporates
      them by reference as duly set forth herein.

96.   Plaintiff engaged in physical and mental exertion controlled by Defendants Sunrise and
      Coverall and primarily for their benefit.

97.   Defendants Sunrise and Coverall permitted or suffered plaintiff to work as a janitor

16

pursuant to Fair Labor Standards Act. 29 U.S.C. § 203(g).

98.    Defendants Sunrise and Coverall are joint employers of the plaintiff and as such are

       jointly and individually liable under the Fair Labor Standards Act 20 U.S.C. § , and 29

       C.F.R. § 791.2  and under the Massachusetts Minimum Fair Wage law  G.L. c.  151.

99.    On May 23, 2005 plaintiff received a private right of action by the Massachusetts

       Attorney General's office  pursuant to G.L. c.  149 § 150.

100.   Defendants repeatedly violated provisions of G.L. c.  149 § 148 by failing to pay the

       plaintiff all wages earned within a timely manner. Mass. Gen. Laws ch. 149 § 150.

101.   Defendant is further liable for loss of wages and treble damages, costs and attorneys fees

       for violations of G.L. c.  148 and 148A. G.L. c. 149 § 150.


                              **COUNT VIII**
                          **OVERTIME VIOLATIONS**
               **UNDER THE FAIR LABOR STANDARDS ACT AND**
               **MASSACHUSETTS MINIMUM FAIR WAGES ACT**
                   **AGAINST COVERALL AND SUNRISE**


102.   Plaintiff realleges the facts set forth in paragraphs 1 through 101 above, and incorporate

       them by reference as duly set forth herein.

103.   Plaintiff received no overtime compensation for the hours worked beyond forty hours

       each week. G.L. c. 151 § 1A.

104.   Any agreement between the plaintiff and employer to work for less than such overtime

       rate of compensation shall be no defense to such action.

105.   Defendants repeatedly violated the provisions the Fair Labor Standards Act, 29 U.S.C. §


                                    17

207 and G.L. c. 151, § § 1A & 1B, by employing the plaintiff for workweeks longer than

forty (40) hours without full compensation for all hours in excess of forty (40) hours in

said workweeks, at rates not less than one and one half times (1 ½) the regular rate at

which they were employed. 29 U.S.C. § 207(a)1 and G.L. c.  151 § 1B.

106.    Defendants are further liable to Plaintiff for an award of actual, triple or double damages

together with costs and reasonable attorneys fee's as specifically authorized by 29 U.S.C.

§ 216 and G.L. c.  151 § 1B.

## COUNT IX
## BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

107.    Plaintiff realleges the facts set forth in paragraphs 1 through 106 above, and incorporate

them by reference as duly set forth herein.

108.    Defendants are liable to the Plaintiff for terminating Plaintiff with without good cause

and with intent to deprive Plaintiff of benefits she has earned but not received in breach

of the implied covenant of good faith and fair dealing.

## PRAYERS FOR RELIEF

WHEREFORE, cause having been shown, plaintiff demands judgment ordering the following:

1.      Compensation for services rendered an equal amount as liquidated and  treble damages,

attorney fees and costs as provided by G.L. c.  93A § 9(4).

2.      Payment of unpaid wages found by the Court to be due the employee an equal amount as

18

liquidated and treble damages, attorney fees and costs as provided by 29 U.S.C. § 216;

G.L. c. 151 § 1B and G.L. c. 149 § 150.


3.    Entering judgment for double or triple amounts awarded and for reasonable attorney's

fees pursuant to G.L. c. 93A.

4.    Grant such additional or equitable relief as it may deem just and proper.


Date: _____ (OF FILING)


                                        Respectfully submitted.
                                        Rhina Alvarenga,
                                        By her attorney,

                                        Jennifer L. Huggins
                                        Greater Boston Legal Services
                                        197 Friend Street
                                        Boston, MA 02114
                                        617/ 603-1810
                                        BBO#: 642252