COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                    Superior Court
                                                  Civil Action No. MICV2005-01782-A

| | |
|---|---|
| Rhina Alvarenga,<br>        Plaintiff,<br><br>v.<br><br>Coverall of North America d/b/a Coverall<br>Cleaning Concepts and Coverall of Boston,<br>Sunrise Senior Living, Inc. d/b/a Sunrise of<br>Arlington,<br>        Defendants. | AMENDED COMPLAINT |

## INTRODUCTION

Plaintiff, Rhina Alvarenga, is a janitor by trade. From November 2002 until May 2003, Ms. Alvarenga provided janitorial services to Sunrise of Arlington, an assisted living facility for elderly adults. In early May 2003, Sunrise told Ms. Alvarenga that if she wished to continue to work at Sunrise, then she would be required to enter into a franchise agreement with Coverall of Boston. Coverall subsequently persuaded Ms. Alvarenga to purchase a franchise for the exorbitant sum of $10,500, most of which was financed by Coverall at a 12% annual interest rate. In exchange, Ms. Alvarenga received nothing beyond the opportunity to perform the same work she had always performed at Sunrise. Moreover, Ms. Alvarenga soon discovered that, contrary to Defendants' representations, she would be paid less than $1,500 per month for work that would require more than 80 hours a week to perform.

Ms. Alvarenga is an immigrant whose first language is Spanish. She has no advanced education, and she has no experience with franchise agreements or other business deals. Coverall well knew, and expected, that Ms. Alvarenga would not understand the terms of the

complicated franchise agreement or the risks associated with that agreement. Coverall, however, failed to advise Ms. Alvarenga to seek legal counsel or other advice before signing the agreement. Instead, Coverall, through its agents and representatives, convinced Ms. Alvarenga to rely on its numerous misrepresentations concerning the purchase of a franchise. Ms. Alvarenga never would have purchased the franchise had she understood that, in fact, she was paying a huge sum of money to Coverall for the "opportunity" to work more than 80 hours per week for less than minimum wage. When Ms. Alvarenga discovered that she had been misled by Coverall and that Coverall had no intention of fully compensating her for her services, she sought to cancel the franchise arrangement and recover her losses. Instead of compensating Ms. Alvarenga for the services she had performed, Coverall suddenly claimed that Ms. Alvarenga was in breach of the franchise agreement because Sunrise had found her performance to be inadequate.

Coverall and Sunrise's conduct violates several provisions of Massachusetts statutory and common law. As a result of Defendants' conduct, Ms. Alvarenga has suffered damages of at least $19,654.11, which are subject to trebling under Massachusetts law. She also is entitled to recover her attorneys fees and costs, and to rescission of the unlawful franchise agreement.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to Massachusetts G.L. c. 212, §§ 1, 4; the Massachusetts Minimum Fair Wages Law, G.L. c. 151 §§ 1, 19, and 20; the Massachusetts Weekly Payment of Wages Law, G.L. c. 149 § 148; and Massachusetts G.L. c. 93A § 9(1).

2.      Venue is proper in this Court pursuant to G.L. c. 223 § 1.

## PARTIES

3. Plaintiff, RHINA ALVARENGA, is and was at all times relevant to this action a resident of the City of Somerville, Massachusetts, Middlesex County.

4. Defendant, COVERALL OF NORTH AMERICA, INCORPORATED d/b/a COVERALL CLEANING CONCEPTS and COVERALL OF BOSTON is a foreign corporation, whose principal office is located at 500 West Cypress Creek Road, Suite 580, Fort Lauderdale FL 33309, and whose registered agent in Massachusetts is Corporate Creations Network, Inc. located at 18 Tremont Street, Suite 146 Boston, MA 02108. COVERALL OF BOSTON is located at 105 Central Street, Suite 110, Stoneham, Massachusetts 02180. Defendant Coverall of North America, Inc. d/b/a Coverall Cleaning Concepts and Coverall of Boston (collectively, "Coverall") is the owner and franchisor of the registered trademarks and trade names Coverall Cleaning Concepts and Coverall of North America. Coverall licenses various persons in the Commonwealth of Massachusetts and elsewhere in the United States to use its name and to perform commercial janitorial services.

5. Defendant SUNRISE SENIOR LIVING, INCORPORATED d/b/a SUNRISE OF ARLINGTON ( collectively referred to as "Sunrise") is a foreign corporation whose principal place of business located at 7902 West Park Drive, McLean, Virginia 22102, and whose registered agent in Massachusetts is CT Corporation Systems located at 101 Federal Street, Boston MA 02110. SUNRISE OF ARLINGTON is located at 1395 Massachusetts Avenue, Arlington, Massachusetts 02476. Upon information and belief, defendant Coverall contracted with defendant Sunrise to be the exclusive supplier of janitorial services at Sunrise of Arlington.

3

## STATEMENT OF FACTS

*Defendants Induce Ms. Alvarenga to Purchase a Coverall Franchise*

6. Ms. Alvarenga worked as a janitor at Sunrise, an assisted living complex for elderly adults, beginning in November 2002. From November 2002 until May 2003, she worked there for another Coverall franchisee.

7. In early May 2003, Sunrise told Ms. Alvarenga that it wished to hire her directly, but that because of an agreement with Coverall, she must pay for a franchise agreement in order to continue to work at Sunrise. Sunrise encouraged Ms. Alvarenga to speak to Coverall about becoming a franchisee.

8. On or about May 29, 2003, Coverall persuaded Ms. Alvarenga to purchase a franchise agreement with Coverall in order to work for Coverall as a janitor with the privilege of using Coverall's name.

9. On May 29, 2003, Joseph J. Falbo, the Regional Director of Coverall Cleaning Concepts' Boston Support Center, presented Ms. Alvarenga with a pre-printed, 24-page form franchise agreement. A true copy of this agreement is attached as Exhibit A and incorporated by reference.

10. The agreement provided, among other things, that Coverall would offer Ms. Alvarenga custodial jobs with revenues of at least $1,500 per month. To purchase the franchise, Ms. Alvarenga had to pay Coverall $10,500 – $3,800 up front and $6,700 which she was required to borrow from Coverall and repay with a 12% rate of interest.

11. Ms. Alvarenga first saw the franchise agreement on May 29, 2003. She was required to sign it that day.

12.     Ms. Alvarenga's first language is Spanish, and she speaks only simple, conversational English. She has no advanced formal education and no experience with franchise agreements or other business deals.

13.     Coverall did not allow Ms. Alvarenga to review the franchise agreement, or advise her to seek legal or other counsel before signing it. Instead, Mr. Falbo made oral representations as to the content of the agreement and then asked Ms. Alvarenga to sign it along with other documents, including the loan note and documents which purport to confirm receipt of policy manuals, circulars and disclosure statements.

*Coverall's Misrepresentation of the Terms of the Franchise Agreement*

14.     The representations Coverall made through its agents, representatives and brochures, which led the Ms. Alvarenga to purchase this franchise, included, but were not limited to, the following:

    (a)     Coverall would offer profitable accounts to Ms. Alvarenga.

    (b)     From the knowledge and experience of Coverall, the Sunrise account would be profitable.

    (c)     Coverall would provide all of the administrative and managerial services which, according to Coverall, were required of a franchisor.

    (d)     Coverall franchises are profitable, and Ms. Alvarenga could anticipate a profitable and successful business career as a Coverall franchisee.

    (e)     Coverall maintained the exclusive right to bill for the Ms. Alvarenga's services, which contemplated a continuing and close relationship with its franchisees.

    (f)     Coverall would make full disclosure to its franchisees of all material facts with respect to their relationship and franchise operations.

5

  (g) Franchisees could place trust and confidence in Coverall to deal fairly with and protect the interests of its franchisees.

  (h) Ms. Alvarenga would be able negotiate the number of hours and amount of compensation she would receive for her janitorial services.

15. Though Ms. Alvarenga had previously worked as a janitor, she had no prior experience in the operation of a janitorial franchise or any other business.

16. Ms. Alvarenga was relying, and Coverall knew she was relying, on Coverall's financial and management assistance to insure the profitability of the janitorial agreement.

*Defendants' Failure to Fully Compensate Ms. Alvarenga for her Work at Sunrise*

17. After the franchise agreement was signed on May 29, 2003, Coverall offered Ms. Alvarenga work as a janitor at Sunrise of Arlington, the senior living complex where Ms. Alvarenga had been working for the previous six months.

18. Mr. Falbo told Ms. Alvarenga that she would receive $1,485 per month, and that she was expected to work five (5) days a week for five (5) hours a day performing janitorial services at Sunrise, which amounted to $13.81 per hour of work.

19. Ms. Alvarenga told Mr. Falbo that the work at Sunrise usually took more than 25 hours a week to complete; however, Mr. Falbo assured Ms. Alvarenga that Coverall's agreement with Sunrise was only for 25 hour per week of janitorial services.

20. Mr. Falbo also told Ms. Alvarenga that she should notify Coverall of any hours she worked beyond 25 hours per week, in which case Coverall would bill Sunrise for the additional hours of service at a rate of $13.81 per hour, and would pay that amount to her.

21. On or about June 11, 2003, Greg Liminelli, a Coverall Field Consultant, called Ms. Alvarenga and told her she could report for work at Sunrise of Arlington.

22. On or about June 11, 2003, when Ms. Alvarenga arrived at Sunrise, Sam Ezra, the Sunrise building supervisor, told Ms. Alvarenga that Sunrise's agreement with Coverall required Ms. Alvarenga to clean 12 to 14 rooms plus common areas each day for 7 days a week, regardless of the number of hours this work required. In addition, Mr. Ezra said that the contract allowed him to assign specific additional duties for Ms. Alvarenga to perform, with no additional compensation.

23. Ms. Alvarenga immediately called Mr. Liminelli at Coverall to complain about the quantity of work Mr. Ezra assigned to her. Mr. Liminelli told Ms. Alvarenga to keep track of any hours she worked over 25 hours per week and that Coverall would bill Sunrise and pay Ms. Alvarenga accordingly.

24. Each day Ms. Alvarenga arrived at work, Mr. Ezra would supervise her work and give her a list of particular cleaning tasks assigned to her in addition to her regular custodial assignments.

25. Ms. Alvarenga complained that she alone could not complete all the tasks assigned to her by Sunrise, so Sunrise and Coverall agreed to allow her to ask a friend to assist her in these tasks; however, Ms. Alvarenga had to split her pay with the co-worker.

26. Ms. Alvarenga was supposed to be paid once a month for all services rendered to Sunrise.

27. Ms. Alvarenga kept track of all the hours she and her friend worked each month and sent copies of her work schedule to Mr. Liminelli; however, she never was paid for any of the work she performed over and above 25 hours per week.

28. As Coverall failed to pay Ms. Alvarenga, she complained to Patricia Blackburn, the Director of Sunrise.

29. Ms. Blackburn agreed to sign some of Ms. Alvarenga's monthly time sheets to confirm that Ms. Alvarenga and her co-worker in fact performed those hours of janitorial services at Sunrise.

30. The timesheets show that Ms. Alvarenga and her co-worker spent an average of 81 hours each week performing janitorial services at Sunrise.

31. However, Ms. Alvarenga received only between $752 and $1,170 per week after deductions by Coverall for worker's compensation insurance, royalty and management fees, as well as payments towards the $6,700 loan with 12% interest. In addition, Ms. Alvarenga was expected to split this compensation with her co-worker.

32. Ms. Alvarenga also performed "special services" at Sunrise, including carpet cleaning, and she forwarded special invoices to Coverall for these services.

33. Coverall never paid Ms. Alvarenga for these special services.

34. Because Ms. Alvarenga received so little compensation from Coverall, she often supplemented the payment she received from Coverall with her own money to compensate her co-worker for his hours of labor at Sunrise.

35. It became apparent to Ms. Alvarenga that Coverall had made the statements, representations, and promises alleged herein with no intention of ever honoring them.

*Coverall Declares Ms. Alvarenga in Breach of the Franchise Agreement when Ms. Alvarenga Attempts to Recover her Earned Compensation*

36. In late September 2003, Ms. Alvarenga notified Coverall and Sunrise of her wish to end the franchise agreement. She also demanded restitution for the amounts she had paid under the franchise agreement and the wages she lost as a result of the acts of Defendants. Defendants refused.

8

37. The following day, a Coverall employee told Ms. Alvarenga that Coverall found her in breach of her franchise agreement because Sunrise had reported that the janitorial services she provided were unsatisfactory, and that Coverall would apply all future payments by Sunrise for her work to the loan she owed to Coverall.

38. On March 4, 2005, Ms. Alvarenga, through her attorney, sent demand letters to Defendants Coverall and Sunrise pursuant to G.L. c. 93A.

39. Defendant Sunrise did not respond to Ms. Alvarenga's G.L. c. 93A demand.

40. Coverall failed to respond within 30 days.

41. On May 6, 2005, Coverall responded to Ms. Alvarenga's demand letter, but failed to make a reasonable offer for settlement.

42. Coverall's response was made in bad faith, and with knowledge that it had violated G.L. ch. 93A. Coverall has settled several actions similar to this action for amounts substantially exceeding its offer to Ms. Alvarenga. Coverall also has paid a civil penalty of $100,000 pursuant to a Consent Decree in an action brought by the Federal Trade Commission concerning Coverall's franchising practices.

## COUNT I
## (FRAUD AND MISREPRESENTATION AGAINST COVERALL)

43. Plaintiff restates and incorporates by reference paragraphs 1 through 42 above.

44. The representations and statements made by Coverall and its agents and representatives were false, fraudulent, and misleading in the following respects:

(a) That Ms. Alvarenga would receive $1,495 per month and was only required to perform 25 hours per week of janitorial services at Sunrise for this amount.

(b) That Coverall had the exclusive right to bill Sunrise and would pay Ms. Alvarenga for all janitorial services performed at Sunrise above 25 hours per week.

    (c)    That Coverall would pay Ms. Alvarenga for all "special services" performed at Sunrise, including carpet cleaning.

    (d)    That Coverall would timely pay Ms. Alvarenga, regardless of whether payment for her services was received from Sunrise.

    (e)    That accounts for janitorial services provided by Coverall to Ms. Alvarenga would be profitable, when Coverall knew such accounts returned far too small a profit to enable Ms. Alvarenga to earn a livelihood therefrom.

    (f)    That Defendant Coverall would sell Ms. Alvarenga's franchise agreement upon notice of her wish to end this franchise agreement.

    (g)    That Ms. Alvarenga would have the rights and control of an independent contractor over accounts offered to her by Coverall.

    (h)    That Sunrise was dissatisfied with the quality of Ms. Alvarenga's janitorial services such that Coverall could void the contract, collect the balance of the franchise fee, and withhold further payment for services from Ms. Alvarenga.

45.     The false, fraudulent, and misleading statements mentioned above were made by Defendant Coverall through its agents and representatives with knowledge that they were false, fraudulent, and misleading, or with reckless disregard for their truth or falsity.

46.     In making the false, fraudulent, and misleading statements alleged herein, Defendant Coverall through its agents and representatives acted willfully and with malice, or with reckless disregard for the rights of Ms. Alvarenga.

47.     In making the false, fraudulent, and misleading statements alleged herein, Defendant Coverall through its agents and representatives intended that Ms. Alvarenga rely on these statements.

10

48. Ms. Alvarenga placed reasonable reliance upon the representations of Coverall.

49. At all times, Ms. Alvarenga relied on the representations of Defendant Coverall and, but for those representations, would not have entered into the contract or purchased the janitorial franchise.

50. As a result of the fraudulent statements and misrepresentations of Defendant, Ms. Alvarenga suffered damages in the amount of $19,654.11.

## COUNT II
## (VIOLATION OF MASSACHUSETTS GENERAL LAWS 93A BY COVERALL)

51. Plaintiff restates and incorporates by reference paragraphs 1 through 50 above.

52. Coverall is engaged in the conduct of a trade or business.

53. Coverall's actions as set forth herein constitute unfair and deceptive acts or practices declared unlawful by G.L. c. 93A § 2 and the regulations promulgated pursuant to G.L. c. 93A § 2(c).

54. Coverall's unfair and deceptive acts occurred primarily and substantially within the Commonwealth.

55. Coverall's unfair and deceptive acts were conducted knowingly and willfully.

56. Ms. Alvarenga suffered damages as a result of Coverall's use of unfair and deceptive acts or practices in the agreement for janitorial services with Ms. Alvarenga.

57. On March 4, 2005, Ms. Alvarenga sent a demand letter in accordance with G.L. c. 93A, § 9.

58. Coverall failed to respond to the demand letter within 30 days. When it did respond, it failed to make a reasonable offer for settlement.

59. As a consequence of the Coverall's wrongful acts and conduct, Ms. Alvarenga suffered damages while Coverall has been and continues to be unjustly enriched.

## COUNT III
### (VIOLATION OF MASSACHUSETTS GENERAL LAWS 93A BY SUNRISE)

60. Plaintiff restates and incorporates by reference paragraphs 1 through 59 above.

61. Sunrise is engaged in the conduct of a trade or business.

62. Sunrise's actions as set forth herein constitute unfair and deceptive acts or practices declared unlawful by G.L. c. 93A § 2 and the regulations promulgated pursuant to G.L. c. 93A § 2(c).

63. Sunrise's unfair and deceptive acts occurred primarily and substantially within the Commonwealth.

64. Sunrise's unfair and deceptive acts were conducted knowingly and willfully.

65. Ms. Alvarenga suffered damages as a result of Sunrise's use of unfair and deceptive acts or practices in the agreement for janitorial services with Ms. Alvarenga.

66. On March 4, 2005, Ms. Alvarenga sent a demand letter in accordance with G.L. c. 93A, § 9.

67. Sunrise never responded to Ms. Alvarenga's demand letter. This failure to make a reasonable offer for settlement was in bad faith and with reason to know that the acts complained of were in violation of G.L. c. 93A.

68. As a consequence of the Coverall's wrongful acts and conduct, Ms. Alvarenga suffered damages while Sunrise has been and continues to be unjustly enriched.

## COUNT IV
### (RESCISSION OF FRANCHISE AGREEMENT)

69. Plaintiff restates and incorporates by reference paragraphs 1 through 68 above.

70. The "franchise agreement" between Coverall and Ms. Alvarenga was unconscionable.

71. Ms. Alvarenga suffered damages as a result of the unconscionable contract.

72. Plaintiff demands that the contract be rescinded, and that she be restored to her pre-contract position and awarded the reasonable value for services provided by her to Sunrise.

## COUNT V
### (BREACH OF CONTRACT AGAINST COVERALL)

73. Plaintiff restates and incorporates by reference paragraphs 1 through 72 above.

74. Ms. Alvarenga and Coverall entered into a valid and binding agreement.

75. Coverall breached the terms of that agreement.

76. Ms. Alvarenga suffered damages as a result of the breach.

## COUNT VI
### (BREACH OF FIDUCIARY DUTY AGAINST COVERALL)

77. Plaintiff restates and incorporates by reference paragraphs 1 through 76 above.

78. Defendant Coverall at all times had knowledge concerning the matters alleged herein far superior to that possessed by Ms. Alvarenga and acted from a position of greater economic and bargaining power. For this reason, Coverall acted, or should be held to have acted, in the capacity of a fiduciary.

79. Coverall was under a duty to exercise the utmost good faith and fairness toward Ms. Alvarenga in the negotiations leading to the execution of the contract, and in the performance thereof. This fiduciary duty applies particularly with respect to royalty and management fees, and payments for supplies and services, which sums were paid by Ms. Alvarenga to Defendant in its capacity as fiduciary and were received by Defendant in that capacity.

80. Coverall breached its fiduciary duties to Ms. Alvarenga, and she suffered damages as a result.

## COUNT VII
## (BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING AGAINST COVERALL)

81. Plaintiff restates and incorporates by reference paragraphs 1 through 80 above.

82. Coverall declared Ms. Alvarenga to be in breach of the franchise agreement in bad faith, without good cause, and with the intent to deprive Ms. Alvarenga of the benefits of that agreement.

83. Coverall's actions were in breach of the implied covenant of good faith and fair dealing.

84. Ms. Alvarenga has suffered damages as a result of Coverall's actions.

## COUNT VIII
## (VIOLATION OF MASSACHUSETTS
## MINIMUM FAIR WAGE ACT AGAINST COVERALL AND SUNRISE, G.L. c. 151 § 1)

85. Plaintiff restates and incorporates by reference paragraphs 1 through 84 above.

86. Ms. Alvarenga performed services for Coverall and Sunrise primarily for their benefit and subject to their control.

87. Coverall and Sunrise permitted Ms. Alvarenga to work as a janitor.

88. Coverall and Sunrise failed to pay Ms. Alvarenga a fair wage in violation of G.L. c. 151 § 1.

89. As a result of Coverall and Sunrise's actions, Ms. Alvarenga suffered damages.

90. On May 23, 2005, Ms. Alvarenga received a private right of action by the Massachusetts Attorney General's office pursuant to G.L. c. 149 § 150.

91. Coverall and Sunrise are liable for loss of wages, treble damages, costs and attorneys fees pursuant to G.L. c. 151 § 1B.

92. Coverall and Sunrise are joint employers of Ms. Alvarenga and therefore are jointly and severally liable under the Massachusetts Minimum Fair Wage law, G.L. c. 151.

## COUNT IX
### (VIOLATION OF TIMELY PAYMENT OF WAGES STATUTE AGAINST COVERALL AND SUNRISE, G.L. c. 149 § 148)

93.  Plaintiff restates and incorporates by reference paragraphs 1 through 92 above.

94.  Ms. Alvarenga performed services for Coverall and Sunrise primarily for their benefit and subject to their control.

95.  Coverall and Sunrise permitted Ms. Alvarenga to work as a janitor.

96.  Coverall and Sunrise repeatedly violated G.L. c. 149 § 148 by failing to pay Ms. Alvarenga all wages she earned in a timely manner.

97.  As a result of Coverall and Sunrise's actions, Ms. Alvarenga suffered damages.

98.  On May 23, 2005, Ms. Alvarenga received a private right of action by the Massachusetts Attorney General's office pursuant to G.L. c. 149 § 150.

99.  Coverall and Sunrise are liable for loss of wages, treble damages, costs and attorneys fees pursuant to G.L. c. 149 § 150.

100. Coverall and Sunrise are joint employers of Ms. Alvarenga and therefore are jointly and severally liable under the Timely Payment of Wages Act, G.L. c. 149 § 148.

## COUNT X
### OVERTIME VIOLATIONS UNDER THE MASSACHUSETTS MINIMUM FAIR WAGES ACT AGAINST COVERALL AND SUNRISE, G.L. c. 151, §§ 1A & 1B

101. Plaintiff restates and incorporates by reference paragraphs 1 through 100 above.

102. Ms. Alvarenga performed services for Coverall and Sunrise primarily for their benefit and subject to their control.

103. Coverall and Sunrise permitted Ms. Alvarenga to work as a janitor.

104. Defendants repeatedly violated G.L. c. 151, §§ 1A & 1B by employing Ms. Alvarenga for workweeks longer than forty (40) hours without full compensation for all hours in

15

excess of forty (40) hours in said workweeks at rates not less than one and one half times (1 ½) the regular rate at which they were employed.

105.   Ms. Alvarenga is not an exempt employee pursuant to G.L. c. 151 § 1A.

106.   As a result of Coverall and Sunrise's actions, Ms. Alvarenga suffered damages.

107.   Coverall and Sunrise are liable for an award of actual, double or treble damages, costs and attorneys' fees as authorized by G.L. c. 151 § 1B.

108.   Coverall and Sunrise are joint employers of Ms. Alvarenga and therefore are jointly and severally liable under the Minimum Fair Wages Act, G.L. c. 151, §§ 1A & 1B.

### COUNT XI
### ACTION FOR SERVICES RENDERED
### AGAINST COVERALL AND SUNRISE

109.   Plaintiff restates and incorporates by reference paragraphs 1 through 108 above.

110.   Coverall and Sunrise agreed to pay to Ms. Alvarenga for all hours she worked at a rate of $13.81 per hour.

111.   Ms. Alvarenga thereafter performed all of her obligations under the agreement but Coverall and Sunrise have refused to pay Ms. Alvarenga for her services.

112.   As a result of Coverall and Sunrise's conduct, Ms. Alvarenga suffered damages and Defendants have been and continue to be unjustly enriched.

### PRAYERS FOR RELIEF

WHEREFORE, cause having been shown, the Plaintiff respectfully requests that the Court grant the following relief:

1.   Award actual damages equal to the amount paid by the Plaintiff for the franchise and compensation for services rendered with interest, plus treble damages, attorney fees and costs as provided by G.L. c. 93A § 9(4).

2. Payment of unpaid wages found by the Court to be due the employee with interest, plus treble damages, attorney fees and costs as provided by 29 U.S.C. § 216, G.L. c. 151 § 1B, and G.L. c. 149 § 150.

3. Grant such additional or equitable relief as it may deem just and proper.

The Plaintiff hereby demands a jury trial on all claims so triable.

> RHINA ALVARENGA
> By her attorneys,
>
> _____
> Jennifer L. Huggins (BBO #642252)
> Greater Boston Legal Services
> 197 Friend Street
> Boston, MA 02114
> 617.603.1810
>
> Daryl J. Lapp (BBO #554980)
> Melissa C. Allison (BBO #657470)
> PALMER & DODGE LLP
> 111 Huntington Avenue at Prudential Center
> Boston, MA 02199-7613
> 617.239.0100

Dated: August 8, 2005