# MICV2005-01782

## Rhina Alvarenga

## v.

## Coverall of North America d/b/a Coverall Cleaning Concepts, et al.

## Removed to United States District Court

**Commonwealth of Massachusetts**
**SUPERIOR COURT DEPARTMENT**
**THE TRIAL COURT**
**CAMBRIDGE**

MICV2005-01782

I, Linda Gouveia, Deputy Assistant Clerk of the Superior Court, within and for said
County of Middlesex, do certify that the annexed papers are true copies made by
photographic process of pleadings entered in the Superior Court on the 9th day of September,
in the year of our Lord, Two Thousand Five.

In testimony whereof, I hereunto set my
hand and affix the seal of said Superior
Court, at Cambridge, in said County, this
9th day of September, in the year of our Lord,
Two Thousand Five.



Deputy Assistant Clerk

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

SUPERIOR COURT
C.A. NO.: 05-1782

RHINA ALVARENGA,                    )
     Plaintiff                    )
                                    )
v.                                  )
COVERALL OF NORTH AMERICA           )
d/b/a COVERALL CLEANING CONCEPTS    )
AND COVERALL OF BOSTON,             )
SUNRISE SENIOR LIVING, INC.         )
d/b/a SUNRISE OF ARLINGTON,         )
     Defendants

## NOTICE TO STATE COURT OF NOTICE OF REMOVAL
## TO FEDERAL COURT

Please take notice that on September 7, 2005, the above-captioned action has been

removed to the United States District Court for the District of Massachusetts pursuant to Tile 28,

United States Code, Sections 1332, 1441 and 1446. A certified copy of said notice of removal is

attached hereto, in accordance with Title 28, United States Code, Section 1446(d).

THE DEFENDANTS,
SUNRISE SENIOR LIVING, INC.
d/b/a/ SUNRISE OF ARLINGTON
By their attorneys,

**MORRISON MAHONEY LLP**

Joseph M. Desmond, BBO #634883
250 Summer Street
Boston, MA 02210
(617) 439-7500

Date: _9-7-05_



FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS

SEP 0 8 2005

1157826v1

# MORRISON MAHONEY LLP

COUNSELLORS AT LAW

250 SUMMER STREET
BOSTON, MASSACHUSETTS 02210-1181
617-439-7500

Joseph M. Desmond
Direct Dial: 617-439-7554
Direct Fax: 617-342-4935
jdesmond@morrisonmahoney.com

| | |
|---|---|
| MASSACHUSETTS | CONNECTICUT |
| BOSTON | HARTFORD |
| FALL RIVER | NEW YORK |
| SPRINGFIELD | NEW YORK |
| WORCESTER | NEW JERSEY |
| | PARSIPPANY |
| RHODE ISLAND | ENGLAND |
| PROVIDENCE | LONDON |

September 7, 2005

Civil Clerk
Middlesex Superior Court
40 Thorndike Street
East Cambridge, MA 02141

Re:     Rhina Alvarenga
        vs. Coverall Cleaning Concepts, et al.
        C.A. No.: 05-1782
        Our File No.: Pending

Dear Sir/Madam:

Enclosed for filing in the above-entitled action, please find the following:

1.     NOTICE TO STATE COURT OF NOTICE OF REMOVAL TO FEDERAL
       COURT.

Thank you.

Very truly yours,

Joseph M. Desmond

JMD/mf
Enclosure
cc:     Jennifer L. Huggins, Esq.
        Daryl J. Lapp, Esq.

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS

SEP 0 8 2005

1157833v1

## **CERTIFICATE OF SERVICE**

I, Joseph M. Desmond, do hereby certify that I have this day served the foregoing **NOTICE TO STATE COURT OF NOTICE OF REMOVAL TO FEDERAL COURT** to all counsel of record in this action by mailing the same, postage prepaid to:

Jennifer L. Huggins, Esq.
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114
(617) 603-1810
BBO #642252

Daryl J. Lapp, Esq. – BBO #554980
Melissa C. Allison, Esq. – BBO #657470
Palmer & Dodge, LLP
111 Huntington Avenue at Prudential Center
Boston, MA 02199-7613
(617) 239-0100

Date: 9-7-05                    Attorney: _____



1157826v1

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Rhina Alvarenga

**DEFENDANTS**

Coverall of North America d/b/a Coverall Cleaning Concepts and Coverall of Boston, Sunrise Senior Living, Inc, d/b/a Sunrise of Arl.

**(b)** County of Residence of First Listed Plaintiff   Middlesex, MA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Jennifer L. Huggins, Esq., Greater Boston Legal Services
197 Friend Street, Boston, MA, 02466

Attorneys (If Known)

Joseph M. Desmond, Morrison Mahoney, LLP
250 Summer St. Boston, MA 02210

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☒ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing. (Do not cite jurisdictional statutes unless diversity):
Fair Labor Standards Act, United States Code Chapter 29

Brief description of cause:
Recovery of compensation for work performed as a janitoron behalf of defendant corporation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   09/22/2005

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RHINA ALVARENGA,                    )
        Plaintiff                   )
                                    )
v.                                  )
                                    )
COVERALL OF NORTH AMERICA           )
d/b/a COVERALL CLEANING CONCEPTS    )
AND COVERALL OF BOSTON,             )
SUNRISE SENIOR LIVING, INC.         )    05 - 11819 JLT
d/b/a SUNRISE OF ARLINGTON,         )
        Defendants                  )

## NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT
### 28 U.S.C. 1441(a)

Defendant Sunrise Senior Living, Inc., d/b/a Sunrise of Arlington, pursuant to 28

U.S.C. § 1446 and Local Rule 81.1, hereby files this Notice of Removal to the United

States District Court for the District of Massachusetts of the civil action now pending in

the Superior Court Department of the Trial Court for the Commonwealth of

Massachusetts, Middlesex Superior Court. The defendant states:

1.      Sunrise Senior Living, Inc., d/b/a Sunrise of Arlington is a defendant in a civil

action filed in the Middlesex Superior Court on May 24, 2005, and served on August 11,

2005.

2.      In her complaint, the plaintiff Rhina Alvarenga avers that under the Fair Labor

Standards Act, United States Code, Chapter 29, she is owed compensation for work

performed as a janitor on behalf of defendant Coverall of Boston ("Coverall"), a national

corporation that provides janitors to companies.    Ms. Alvarenga claims she was

persuaded to purchase her own Coverall franchise, and was made certain guarantees for

future business by Coverall and Sunrise.

1

1157784v1

3.      In her amended complaint, Ms. Alvarenga requests that the Court grant payment

of unpaid wages found by the Court to be due the employee with interest, plus treble

damages, attorney fees and costs as provided by 29 U.S.C. § 216 ("Fair Labor Standards

Act").

4.      This case is within the original jurisdiction of this Court and Defendant Sunrise

Senior Living, Inc., d/b/a Sunrise of Arlington is entitled to remove this action to this

Court pursuant to the provisions of 28 U.S.C. § 1367, which provides:

> ...in any civil action of which the district courts have
> original jurisdiction, the district courts shall have
> supplemental jurisdiction over all other claims that are so
> related to claims in the action within such original
> jurisdiction that they form part of the same case or
> controversy under Article III of the United States
> Constitution.

5.      Defendant Sunrise Senior Living, Inc., d/b/a Sunrise of Arlington is entitled to

remove this action to this Court because the state law claims asserted in the plaintiff's

complaint arise from the same set of facts as the federal claims brought under the Fair

Labor Standards Act.

6.      This suit is wholly civil in nature brought in a trial court in Middlesex County,

Massachusetts, and, accordingly, under 28 U.S.C. §§ 101 and 1441(a), the United States

District Court for the District of Massachusetts is the proper forum for removal.

7.      A copy of all process, pleadings and orders provided to the defendant are filed

with and attached to this notice. (The Complaint as Exhibit A; The Amended Complaint

as Exhibit B, the Statement of Damages as Exhibit C).

2

8.    Defendant Sunrise Senior Living, Inc., d/b/a Sunrise of Arlington will give written notice of this filing to all adverse parties by mailing a copy of it to plaintiffs' counsel, as shown on the certificate of service.

9.    Defendant Sunrise Senior Living, Inc., d/b/a Sunrise of Arlington will file a copy of this notice with the Clerk of the Middlesex Superior Court by mailing a copy as shown on the certificate of service.

10.    This notice is filed within thirty (30) days of notice of the suit, within thirty days of the date this action became removable, and within the time for filing this notice. See 28 U.S.C. §1446.

11.    Pursuant to Local Rule 81.1(A), defendants shall request the Clerk of the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts, Middlesex County, certified or attested copies of all records and proceedings in the state court and certified or attested copies of all docket entries therein, and shall file the same with this Court within thirty (30) days after the filing of this Notice of Removal.

WHEREFORE, Defendant Sunrise Senior Living, Inc., d/b/a Sunrise of Arlington prays that the above action now pending in the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts, Middlesex County, be removed from that Court to this United States District Court.

3

1157784v1

THE DEFENDANTS,
SUNRISE SENIOR LIVING, INC.
d/b/a/ SUNRISE OF ARLINGTON
By their attorney,

Joseph M. Desmond, BBO #634883
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
(617) 439-7500

Date: 9-7-05

4

## CERTIFICATE OF SERVICE

I, Joseph M. Desmond, do hereby certify that I have this day served the foregoing **NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT, 28 U.S.C. 1441(a)** to all counsel of record in this action by mailing the same, postage prepaid to:

Jennifer L. Huggins, Esq.
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114
(617) 603-1810
BBO #642252

Daryl J. Lapp, Esq.
Melissa C. Allison, Esq.
Palmer & Dodge, LLP
111 Huntington Avenue at Prudential Center
Boston, MA 02199-7613
(617) 239-0100

Date: $9 - 7 - 05$                    Attorney: _____

1157784v1

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

Superior Court
CIVIL ACTION NO. **05-1782**

Rhina Alvarenga, )
    Plaintiff )
                )
v. )
                )
Coverall Cleaning Concepts, )
Coverall of North America; )
Coverall of Boston, )
Joseph J. Falbo, )
Greg Liminelli, )
Sunrise Senior Living, Inc.. )
Sunrise of Arlington, )
Patricia Blackburn )
    Defendants )

CIVIL COMPLAINT



FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

MAY 2 4 2005

CLERK

### INTRODUCTION

Plaintiff, Rhina Alvarenga, brings this action to recover compensation for work

performed as a janitor on behalf of defendant Coverall of Boston ("Coverall"), a national

corporation that provides janitors to companies. Coverall persuaded Ms Alvarenga, a janitor, to

pay its corporation $10,500 for the privilege to work as a janitor. Plaintiff spent over 81 hours a

week cleaning Sunrise, an assisted living center for the elderly. Coverall promised to pay her at a

rate of $31.81 an hour but in fact she received compensation that was often below the state

minimum wage.

### JURISDICTION AND VENUE

1.      Jurisdiction is conferred upon this Court pursuant to the Fair Labor Standards Act, United

1

States Code, Chapter 29, § § 207, and 216; generally at G.L. c. 212,§4; under the Massachusetts Minimum Fair Wages Laws, G.L. c. 151, sections 1, 19, and 20; and Massachusetts Weekly Payment of Wages Laws, G.L. c. 149 § 148.

2.  Jurisdiction of the subject matter of this action is conferred on this court by chapter G.L. c. 93A § 9(1) and by G.L. c. 214, § 1 .

3.  Venue in this action properly lies in this Court pursuant to G.L. c. 223 § 1.

## PARTIES

4.  Plaintiff, RHINA ALVARENGA at all times relevant to this action is and was a resident of the City of Somerville, Massachusetts, MIDDLESEX COUNTY.

5.  Defendant, COVERALL OF NORTH AMERICA, INCORPORATED, and COVERALL CLEANING CONCEPTS d/b/a COVERALL OF BOSTON (collectively referred to as "Coverall") is a foreign corporation, whose principal office is located at 3111 Camino Del Rio, North San Diego, California, 92108, and whose registered agent is CT Corporation Systems located at 101 Federal Street, Boston MA 02110.

6.  COVERALL OF BOSTON is located at 105 Central Street, Suite 110, Stoneham, Massachusetts 02180.

7.  Defendant JOSEPH J. FALBO was at all times relevant an the Regional Director of Coverall Cleaning Concepts' Boston Support Center located at Coverall of Boston , 105 Central Street, Suite 110, Stoneham, Massachusetts 02180.

8.  Defendant GREG LIMINELLI, upon information and belief, was at all times relevant a Coverall Field Consultant, of Coverall of Boston located at 105 Central Street, Suite 110,

2

Stoneham, Massachusetts 02180.

9.    Defendant Coverall is the owner and franchiser of the registered trademark and trade name Coverall Cleaning Concepts and Coverall of North America. Coverall licenses janitors to use its name and therein, defendant Coverall licenses various persons, in the State of Massachusetts, and elsewhere in the United States, including the plaintiff to perform janitorial services for businesses.

10.    Defendant SUNRISE SENIOR LIVING, INCORPORATED d/b/a SUNRISE OF ARLINGTON ( collectively referred to as "Sunrise") is a foreign corporation which has a principal place of business is located 7902 West Park Drive, McLean, Virginia 22102 whose registered agent is Corporate Creations Network, Incorporated located at 18 Tremont Street, Suite 146 Boston, Massachusetts 02108.

11.    SUNRISE OF ARLINGTON is located at 1395 Massachusetts Avenue, Arlington, Massachusetts 02476.

12.    Upon information and belief, Defendant PATRICIA BLACKBURN is and was at all times relevant the Director of Sunrise of Arlington located at 1395 Massachusetts Avenue, Arlington, Massachusetts 02476.

13.    Upon information and belief, defendant Coverall contracted with defendant Sunrise to be the exclusive supplier of janitorial services at Sunrise of Arlington.

14.    Upon information and belief Defendants Coverall and Sunrise are and were, at all times hereinafter mentioned, engaged in related activities performed through unified operation or common control, engaged in commerce or in the production of goods for commerce and are and at all time hereinafter mentioned were enterprises within the meaning of 29

3

U.S.C. § 203(r).

15.   Defendants Sunrise and Coverall are joint employers and are jointly liable where Coverall
      acted directly in the interest of Sunrise by having exclusive responsibility for providing
      janitors to Sunrise, and Sunrise benefitted from Coverall's services.

## STATEMENT OF FACTS

16.   Plaintiff, Rhina Alvarenga worked as a janitor by trade.

17.   Ms. Alvarenga's first language is Spanish and has no undergraduate education.

18.   Plaintiff previously worked at Sunrise from November 2002 until May 2003 under
      another Coverall franchisee.

19.   On or about May 29, 2003, defendant Coverall persuaded Plaintiff, Rhina Alvarenga to
      purchase a franchise agreement with defendant Coverall to work for them as a janitor
      with the privilege of using Coverall's name.

20.   Sunrise is an assisted living complex for elderly adults.

21.   In early May 2003, Sunrise told Plaintiff that they wished to hire her directly but because
      of an agreement with Coverall, she must pay for a franchise agreement in order to
      continue to work at Sunrise.

22.   On May 29, 2003, Joseph J. Falbo, the Regional Director of Coverall Cleaning Concepts'
      Boston Support Center, presented Plaintiff with a pre-printed form franchise agreement in
      which Coverall promised to offer Plaintiff monthly business at a minimum of $1,500 per
      month if she paid Coverall $3,800 deposit and agree to a loan from Coverall for $6,700
      with 12% rate of interest.

4

23.    On May 29, 2003, Plaintiff first saw the actual franchise agreement and was required to sign said agreement on that day.

24.    Plaintiff was never able to review the 24 paged franchise agreement herself before signing it and defendant Coverall did not allow her to review the actual franchise agreement or advise her to seek counsel before signing the agreement. Instead, Mr. Falbo made oral representations as to the content of the agreement and then asked Plaintiff to sign and initial numerous documents.

25.    Among the representations made by defendant Coverall through its agent and representatives, in its advertising, and brochures, which led to the purchase by plaintiff of this franchise, included, were the following:

   a.    That Defendant would offer profitable accounts to the plaintiff and, from the knowledge and experience of Defendant, the site would be profitable.

   b.    That Defendant Coverall would provide all of the administrative and managerial services represented by Defendant as incumbent upon a franchisor as advertised by Defendant.

   c.    That Coverall franchises were profitable and, in reliance thereon, plaintiff could anticipate a profitable and successful business career as a Coverall franchisee.

   d.    That Defendant Coverall's exclusive right to bill for the plaintiff's services which contemplated a continuing, close relationship between Defendant and its franchisees during which Defendant Coverall would make full disclosure to its franchisees of all material facts respecting their relationship and franchise operations, and franchisees could place trust and confidence in Defendant to deal

5

fairly with and protect the interests of its franchisees.

e.    That plaintiff would be able negotiate the number of hours and amount of compensation she would receive for her janitorial services.

26.    Though Plaintiff had previously worked as a janitor, she had no prior experience in the operation of a janitorial franchise or similar business.

27.    Plaintiff had no resources other than those declared to Defendant and, thus, plaintiff had to rely on Defendant's financial and management assistance to insure the profitability of the janitorial agreement.

28.    Also, on May 29, 2003, Defendant Coverall offered Plaintiff work as a janitor at Sunrise in Arlington.

29.    Mr. Falbo told Plaintiff that in exchange for $1,485/month she was expected to work five (5) days a week, for five (5) hours a day performing janitorial services at Sunrise, which amounted to $13.81 per hour of work.

30.    Plaintiff told Mr. Falbo that the work at Sunrise usually took more than 25 hours a week to complete; however, Mr. Falbo assured Plaintiff that Coverall's agreement with Sunrise was only for 25 hour per week of janitorial services.

31.    Mr. Falbo also told Plaintiff that she should notify Coverall of any hours of janitorial services she performed over the 25 hours and Coverall would bill Sunrise for the additional hours of service at a rate of $13.81 per hour.

32.    On or about June 11, 2003, Greg Liminelli, a Coverall Field Consultant, called Plaintiff and told her she could report for work at Sunrise of Arlington.

33.    On or about June 11, 2003, when Plaintiff showed up at Sunrise, Sam Ezra, the Sunrise

6

building supervisor, told Plaintiff that Sunrise's agreement with Coverall provided that Plaintiff clean 12 to 14 rooms plus common areas each day for 7 days a week regardless of the number of hours of work it took to complete them. In addition, Mr. Ezra could assign specific duties for Plaintiff to perform.

34.    Plaintiff immediately called Mr. Liminelli at Coverall to complain about the quantity of work Mr. Ezra assigned to her. Mr. Liminelli told Plaintiff to keep track of any hours over 25 hours a week she performed and Coverall would bill Sunrise accordingly.

35.    Each day Plaintiff arrived at work, Mr. Ezra would supervise her work and give her a list of particular cleaning tasks assigned to her in addition to her daily maintenance assignments.

36.    Plaintiff complained that she alone could not complete all the tasks assigned to her by Sunrise, so Sunrise and Coverall agreed to allow her to ask a friend to assist her in the tasks; however, Plaintiff had to split her pay with the coworker.

37.    Plaintiff was supposed to be paid once a month for all services rendered to Sunrise.

38.    Plaintiff kept track of all the hours she and her friend worked each month and sent copies of her monthly schedule of hours of work to Mr. Liminelli; however, she never received full pay for any of those additional hours of work.

39.    As Coverall failed to pay Plaintiff, she complained to Patricia Blackburn, the Director of Sunrise.

40.    Ms. Blackburn agreed to sign some of her monthly time sheets to confirm that Plaintiff and her co-worker in fact performed the hours of janitorial services at Sunrise.

41.    Plaintiff and her co-worker spent an average of 81 hours each week performing janitorial

7

services at Sunrise on the timesheets.

42.    However, Plaintiff received only between $752 and $1,170 per after minus deductions by Coverall for worker's compensation insurance, royalty and management fees, as well as payments towards the $6,700 loan plus the 12% interest. However, Plaintiff was expected to split her pay with her co-worker.

43.    In addition, Plaintiff performed "special services" which included carpet cleaning several times at Sunrise and forwarded special invoices to Coverall for this service.

44.    Coverall never paid Plaintiff for these special services.

45.    Because Plaintiff received so little compensation from Coverall, she often supplemented the payment she received from Coverall with her own money to compensate her co-worker for his hours of labor at Sunrise.

46.    About four(4) months after operating under the franchise contract it became apparent to the Plaintiff that Defendant Coverall had made the statements, representations, and promises alleged herein with no intention of ever performing according to representations made.

47.    In late September 2003, and within a reasonable time after realizing her situation, Plaintiff notified Defendants Coverall and Sunrise, of her wish to end the franchise agreement and demanded restitution for the amounts paid and losses sustained by plaintiff under the contract and as a result of the acts of Defendants alleged herein. Defendants have failed and refused to make such restitution, and continues to do so.

48.    Instead of offering the plaintiff restitution, the following day, plaintiff was told by a Coverall employee that Coverall found her in breach of her franchise agreement because

8

Sunrise had reported that the janitorial services provided by Plaintiff were unsatisfactory

and Coverall would apply all future payments by Sunrise for her work to the loan she

owed to Coverall.

49.    Plaintiff does not know the amount of payment Coverall received from Sunrise for her

services.

50.    On March 4, 2005, Plaintiff, through her attorney, sent Defendants Coverall and Sunrise a

demand letter pursuant to G.L. c. 93A.

51.    Defendant Coverall failed to provide a reasonable offer for settlement within 30 days.

52.    On May 6, 2005, Defendant Coverall responded to the plaintiff's March 4th demand letter

but failed to provide a reasonable offer for settlement.

53.    Defendant Sunrise did not respond to Plaintiff's   G.L. c. 93A demand.


## COUNT I
### FRAUD AND MISREPRESENTATION
### AGAINST DEFENDANTS COVERALL,
### JOSEPH FALBO AND GREG LIMINELLI

54.    Plaintiff realleges the facts set forth in paragraphs 1 through 53 above, and incorporates

them by reference as duly set forth herein.

55.    Plaintiff, placing reasonable reliance upon the representations of Defendant Coverall,

executed a franchise agreement, a true copy of which is attached as Exhibit 1.

56.    At all times, plaintiff relied on the representations of Defendant Coverall and, but for

those representations, would not have entered into the contract or purchased the franchise

to operate a janitorial franchise.

9

57.   The representations and statements made by Defendant Coverall and its agents and
      representatives were false, fraudulent, and misleading in the following respects:

      a.    That Plaintiff would receive $1,495 per month and was only required to perform
            25 hours per week of janitorial services at Sunrise for this amount.

      b.    That Defendant Coverall had the exclusive right to bill Sunrise and would pay
            Plaintiff for all janitorial services performed at Sunrise above 25 hours per week.

      c.    That Defendant Coverall would pay plaintiff for all "special services" performed
            at Sunrise including carpet cleaning.

      d.    That Defendant Coverall would timely pay plaintiff regardless of whether
            payment for her services was received from the Defendant Sunrise.

      e.    That accounts for janitorial services provided by Coverall to the Plaintiff would be
            profitable, when in fact, said accounts have a returning far too small a profit to
            enable Plaintiff to earn a livelihood therefrom.

      f.    That Defendant Coverall would sell Plaintiff's franchise agreement upon notice of
            her wish to end this franchise agreement.

      g.    That plaintiff would have the rights and control of an independent contractor over
            accounts offered to her by Coverall.

      h.    That Defendant Sunrise was dissatisfied with the qualify of Plaintiff's janitorial
            services such that Defendant Coverall could void the contract and collect the
            balance of the franchise fee and withhold further payment for services to the
            Plaintiff.

58.   The false, fraudulent, and misleading statements mentioned above were made by

                                          10

Defendant Coverall with knowledge that they were false, fraudulent, and misleading, or with reckless disregard for their truth or falsity.

59.    In making the false, fraudulent, and misleading statements alleged herein, Defendant Coverall and its agents and representatives acted willfully and with malice, or with reckless disregard for the rights of plaintiff.

60.    As a result of the fraudulent statements and misrepresentations of Defendant, plaintiff has been damaged in the sum of $19,654.11; plaintiff claims the further sum of $39,308.22 as exemplary damages.

## COUNT II
## UNCONSCIONABLE CONTRACT AGAINST
## COVERALL AND JOSEPH FALBO

61.    Plaintiff realleges the facts set forth in paragraphs 1 through 60 above, and incorporates them by reference as duly set forth herein.

62.    The "franchise agreement" between Coverall and the Plaintiff was not a bargained for agreement but the result of gross disparity in bargaining positions and values exchanged.

63.    The "franchise agreement" between Coverall and the Plaintiff is a contract of adhesion.

64.    The "franchise agreement" contained terms unreasonably favorable to Coverall, and Plaintiff had no meaningful choice or alternative than to sign the agreement if she wanted to continue to work as a janitor at Sunrise of Arlington.

65.    Plaintiff was unable to receive substantial benefits from the contract and because of her weaker position, was unable to reasonably protect her interest as she was unable to

11

understand the sophisticated language of the twenty-four (24) paged agreement.

66.  Defendant Coverall through its agent Joseph Falbo did not allow the Plaintiff time to
     review the contract herself and instead made false verbal representations about its terms.

67.  As a result of the unconscionable contract and unconscionable actions of Defendant
     Coverall, Plaintiff suffered oppression and unfair surprise and thus the "franchise
     agreement" is unconscionable.

68.  Plaintiff demands that she be restored to pre-contract position and awarded the reasonable
     value for services provided by her to Sunrise.

**COUNT III**
**VIOLATION OF MASSACHUSETTS GENERAL LAWS 93A**
**BY ALL NAMED DEFENDANTS**

69.  Plaintiff realleges the facts set forth in paragraphs 1 through 68 above, and incorporates
     them by reference as duly set forth herein.

70.  The Defendants' wrongful acts occurred primarily and substantially within the
     Commonwealth, and were conducted knowingly and willfully.

71.  On March 4, 2005, Plaintiff, through counsel, sent Defendant a written demand for relief
     by sending Defendants Coverall and Sunrise a demand letter as required by G.L. c. 93A,
     § 9.

72.  Both Defendants Coverall and Sunrise have failed to respond to Plaintiff's demand letter
     within 30 days with a reasonable offer for settlement.

73.  Defendant Coverall's never responded to Plaintiff's demand letter. This failure to make a
     reasonable offer for settlement was in bad faith and with reason to know that the acts

12

complained of were in violation of G.L. c. c. 93A.

74.   Defendant Sunrise's failure to make any offer for settlement was in bad faith and with
reason to know that the acts complained of were in violation of G.L. c. 93A.

75.   Plaintiff suffered damages as a result of Defendants' Coverall and Sunrises' use of unfair
an deceptive acts and practices in the agreement for janitorial services with Plaintiff.

76.   Defendant Coverall's misrepresentations to Plaintiff that induced her to sign the contract,
pay a deposit of $3,800, and enter into a loan agreement for $6,700 with a 12% interest
rate was an unfair or deceptive acts and practice declared unlawful by G.L. c. 93A § 2
and the regulations promulgated pursuant to G.L. c. 93A § 2(c).

77.   Defendant Coverall's failure to allow Plaintiff at least 5 days to seek counsel and review
the franchise agreement for janitorial services is an unfair and deceptive act declared
unlawful by G.L. c. 93A § 2 and the regulations promulgated pursuant to G.L. c. 93A §
2(c) and Fair Trade Act pursuant to 16 C.F.R. § 436.1.

78.   Defendant Coverall's and Sunrise's failure to pay Plaintiff for all hours of work performed
at Sunrise was an unfair or deceptive act declared unlawful by G.L. c. 93A § 2 and the
regulations promulgated pursuant to G.L. c. 93A § 2(c).

79.   Defendant Coverall's assertion that Plaintiff failed to perform janitorial services
satisfactorily at Sunrise in violation of the franchise agreement is pretextual and
constitutes an unfair and deceptive act, declared unlawful by G.L. c. 93A §2 and the
regulations promulgated pursuant to G.L. c. 93A § 2(c).

80.   Defendant Sunrise's failure to pay Plaintiff for janitorial services as promised was an
unfair and deceptive act, declared unlawful by G.L. c. 93A § 2 and the regulations

13

promulgated pursuant to G.L. c. 93A § 2(C)).

81.    As a consequence of the Defendants' wrongful acts and conduct, plaintiff suffered the
damages while Defendants have been and may continue to be, unjustly enriched.

### COUNT IV
### BREACH OF FIDUCIARY DUTY
### TO PLAINTIFF AGAINST COVERALL

82.    Plaintiff realleges the facts set forth in paragraphs 1 through 81 above, and incorporates
them by reference as duly set forth herein.

83.    Defendant Coverall at all times had knowledge concerning the matters alleged herein far
superior to that possessed by plaintiff and acted from a position of greater economic and
bargaining power. For this reason, Defendant acted, or should be held to have acted, in
the capacity of a fiduciary, and, as such, was under a duty to make full disclosure of all
facts concerning the transactions mentioned herein that were necessary to permit plaintiff
to make intelligent decisions regarding the purchase of the franchise; to make full
disclosure to plaintiff of all the terms of the franchise contract; the reasons therefor, and
the probable effect thereof, to permit plaintiff to negotiate respecting any of the terms of
the contract, and otherwise to exercise the utmost good faith and fairness toward plaintiff
in the negotiations leading to the execution of the contract, and in the performance
thereof. This fiduciary duty applies particularly with respect to royalty and management
fees, and payments for supplies and services, which sums were paid by plaintiff to
Defendant in its capacity as fiduciary and were received by Defendant in that capacity.

84.    Defendant Coverall negotiated and contracted with Sunrise on behalf of the plaintiff for a

14

contract for janitorial services.

85. On good faith belief the Plaintiff alleges that:

    a.    Defendant Coverall breached its fiduciary duty to the plaintiff by agreeing to a
          contract well below the fair value for janitorial services the plaintiff had to
          perform at Sunrise.

    b.    Defendants Coverall and Sunrise conspired to contract for services for which
          plaintiff would not receive the fair value of the amount of work she performed.

    c.    Defendant Coverall, upon notice by the Plaintiff, breached its duty to the plaintiff
          by failing to obtain the fair value of plaintiff's labor performed by the plaintiff
          from Defendant Sunrise.

### COUNT V
### ACTION FOR SERVICES RENDERED
### AGAINST COVERALL AND SUNRISE

86. Plaintiff realleges the facts set forth in paragraphs 1 through 87 above, and incorporates
    them by reference as duly set forth herein.

87. Both Defendants Coverall agreed to pay to the plaintiff for the services in the amount of
    $13.81 per hour.

88. Sunrise assured Plaintiff that they would compensate Plaintiff for all hours worked.

89. Plaintiff with a coworker performed janitorial and carpet cleaning special services at
    Sunrise that amounted to more than 25 hours per week with the expectation that she
    would be compensated for those additional hours.

90. Defendants Sunrise and Coverall allowed the plaintiff to so act without objection.

91.  The plaintiff thereafter performed all of her obligations under the agreement but the
     Defendants Coverall and Sunrise have neglected and refused to pay the plaintiff for the
     services.

92.  As a consequence of the Defendants' wrongful acts and conduct, Plaintiff suffered
     damages and Defendants have been and may continue to be unjustly enriched.

### COUNT VI
### ACTION FOR *QUANTUM MERIUT*
### AGAINST COVERALL AND SUNRISE

93.  Plaintiff realleges the facts set forth in paragraphs 1 through 91 above, and incorporates
     them by reference as duly set forth herein.

94.  The plaintiff is entitled to recover for the fair value of the services so rendered to the
     Defendant Sunrise from June 11, 2003 to October 31, 2003.

### COUNT VII
### VIOLATION OF MASSACHUSETTS
### TIMELY PAYMENT OF WAGES STATUTE G.L. c. 149§§ 148 & 150
### AGAINST COVERALL AND SUNRISE

95.  Plaintiff realleges the facts set forth in paragraphs 1 through 94 above, and incorporates
     them by reference as duly set forth herein.

96.  Plaintiff engaged in physical and mental exertion controlled by Defendants Sunrise and
     Coverall and primarily for their benefit.

97.  Defendants Sunrise and Coverall permitted or suffered plaintiff to work as a janitor

pursuant to Fair Labor Standards Act. 29 U.S.C. § 203(g).

98. Defendants Sunrise and Coverall are joint employers of the plaintiff and as such are jointly and individually liable under the Fair Labor Standards Act 20 U.S.C. § , and 29 C.F.R. § 791.2 and under the Massachusetts Minimum Fair Wage law G.L. c. 151.

99. On May 23, 2005 plaintiff received a private right of action by the Massachusetts Attorney General's office pursuant to G.L. c. 149 § 150.

100. Defendants repeatedly violated provisions of G.L. c. 149 § 148 by failing to pay the plaintiff all wages earned within a timely manner. Mass. Gen. Laws ch. 149 § 150.

101. Defendant is further liable for loss of wages and treble damages, costs and attorneys fees for violations of G.L. c. 148 and 148A. G.L. c. 149 § 150.

### COUNT VIII
### OVERTIME VIOLATIONS
### UNDER THE FAIR LABOR STANDARDS ACT AND
### MASSACHUSETTS MINIMUM FAIR WAGES ACT
### AGAINST COVERALL AND SUNRISE

102. Plaintiff realleges the facts set forth in paragraphs 1 through 101 above, and incorporate them by reference as duly set forth herein.

103. Plaintiff received no overtime compensation for the hours worked beyond forty hours each week. G.L. c. 151 § 1A.

104. Any agreement between the plaintiff and employer to work for less than such overtime rate of compensation shall be no defense to such action.

105. Defendants repeatedly violated the provisions the Fair Labor Standards Act, 29 U.S.C. §

17

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS

SEP 0 8 2005

207 and G.L. c. 151, § § 1A & 1B, by employing the plaintiff for workweeks longer than

forty (40) hours without full compensation for all hours in excess of forty (40) hours in

said workweeks, at rates not less than one and one half times (1 ½) the regular rate at

which they were employed. 29 U.S.C. § 207(a)1 and G.L. c. 151 § 1B.

106.    Defendants are further liable to Plaintiff for an award of actual, triple or double damages

together with costs and reasonable attorneys fee's as specifically authorized by 29 U.S.C.

§ 216 and G.L. c. 151 § 1B.

### COUNT IX
### BREACH OF IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING

107.    Plaintiff realleges the facts set forth in paragraphs 1 through 106 above, and incorporate

them by reference as duly set forth herein.

108.    Defendants are liable to the Plaintiff for terminating Plaintiff with without good cause

and with intent to deprive Plaintiff of benefits she has earned but not received in breach

of the implied covenant of good faith and fair dealing.

### PRAYERS FOR RELIEF

WHEREFORE, cause having been shown, plaintiff demands judgment ordering the following:

1.    Compensation for services rendered an equal amount as liquidated and  treble damages,

attorney fees and costs as provided by G.L. c. 93A § 9(4).

2.    Payment of unpaid wages found by the Court to be due the employee an equal amount as

liquidated and treble damages, attorney fees and costs as provided by 29 U.S.C. § 216;

G.L. c. 151 § 1B and G.L. c. 149 § 150.

3.  Entering judgment for double or triple amounts awarded and for reasonable attorney's fees pursuant to G.L. c. 93A.

4.  Grant such additional or equitable relief as it may deem just and proper.


Date: _____ (OF FILING)

Respectfully submitted
Rhina Alvarenga,
By her attorney,

Jennifer L. Huggins
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114
617/ 603-1810
BBO#: 642252

19

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                          Superior Court
                                        Civil Action No.  MICV2005-01782-A

Rhina Alvarenga,
                Plaintiff,

        v.                              **AMENDED COMPLAINT**

Coverall of North America d/b/a Coverall
Cleaning Concepts and Coverall of Boston,
Sunrise Senior Living, Inc. d/b/a Sunrise of
Arlington,
                Defendants.

## INTRODUCTION

Plaintiff, Rhina Alvarenga, is a janitor by trade. From November 2002 until May 2003,

Ms. Alvarenga provided janitorial services to Sunrise of Arlington, an assisted living facility for

elderly adults. In early May 2003, Sunrise told Ms. Alvarenga that if she wished to continue to

work at Sunrise, then she would be required to enter into a franchise agreement with Coverall of

Boston. Coverall subsequently persuaded Ms. Alvarenga to purchase a franchise for the

exorbitant sum of $10,500, most of which was financed by Coverall at a 12% annual interest

rate. In exchange, Ms. Alvarenga received nothing beyond the opportunity to perform the same

work she had always performed at Sunrise. Moreover, Ms. Alvarenga soon discovered that,

contrary to Defendants' representations, she would be paid less than $1,500 per month for work

that would require more than 80 hours a week to perform.

Ms. Alvarenga is an immigrant whose first language is Spanish. She has no advanced

education, and she has no experience with franchise agreements or other business deals.

Coverall well knew, and expected, that Ms. Alvarenga would not understand the terms of the

complicated franchise agreement or the risks associated with that agreement. Coverall, however, failed to advise Ms. Alvarenga to seek legal counsel or other advice before signing the agreement. Instead, Coverall, through its agents and representatives, convinced Ms. Alvarenga to rely on its numerous misrepresentations concerning the purchase of a franchise. Ms. Alvarenga never would have purchased the franchise had she understood that, in fact, she was paying a huge sum of money to Coverall for the "opportunity" to work more than 80 hours per week for less than minimum wage. When Ms. Alvarenga discovered that she had been misled by Coverall and that Coverall had no intention of fully compensating her for her services, she sought to cancel the franchise arrangement and recover her losses. Instead of compensating Ms. Alvarenga for the services she had performed, Coverall suddenly claimed that Ms. Alvarenga was in breach of the franchise agreement because Sunrise had found her performance to be inadequate.

Coverall and Sunrise's conduct violates several provisions of Massachusetts statutory and common law. As a result of Defendants' conduct, Ms. Alvarenga has suffered damages of at least $19,654.11, which are subject to trebling under Massachusetts law. She also is entitled to recover her attorneys fees and costs, and to rescission of the unlawful franchise agreement.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to Massachusetts G.L. c. 212, §§ 1, 4; the Massachusetts Minimum Fair Wages Law, G.L. c. 151 §§ 1, 19, and 20; the Massachusetts Weekly Payment of Wages Law, G.L. c. 149 § 148; and Massachusetts G.L. c. 93A § 9(1).

2.      Venue is proper in this Court pursuant to G.L. c. 223 § 1.

2

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS

SEP 0 8 2005

Edward J. Sullivan

## PARTIES

3.     Plaintiff, RHINA ALVARENGA, is and was at all times relevant to this action a resident of the City of Somerville, Massachusetts, Middlesex County.

4.     Defendant, COVERALL OF NORTH AMERICA, INCORPORATED d/b/a COVERALL CLEANING CONCEPTS and COVERALL OF BOSTON is a foreign corporation, whose principal office is located at 500 West Cypress Creek Road, Suite 580, Fort Lauderdale FL 33309, and whose registered agent in Massachusetts is Corporate Creations Network, Inc. located at 18 Tremont Street, Suite 146 Boston, MA 02108.  COVERALL OF BOSTON is located at 105 Central Street, Suite 110, Stoneham, Massachusetts 02180.  Defendant Coverall of North America, Inc. d/b/a Coverall Cleaning Concepts and Coverall of Boston (collectively, "Coverall") is the owner and franchisor of the registered trademarks and trade names Coverall Cleaning Concepts and Coverall of North America.  Coverall licenses various persons in the Commonwealth of Massachusetts and elsewhere in the United States to use its name and to perform commercial janitorial services.

5.     Defendant SUNRISE SENIOR LIVING, INCORPORATED d/b/a SUNRISE OF ARLINGTON ( collectively referred to as "Sunrise") is a foreign corporation whose principal place of business located at 7902 West Park Drive, McLean, Virginia 22102, and whose registered agent in Massachusetts is CT Corporation Systems located at 101 Federal Street, Boston MA 02110.  SUNRISE OF ARLINGTON is located at 1395 Massachusetts Avenue, Arlington, Massachusetts 02476.  Upon information and belief, defendant Coverall contracted with defendant Sunrise to be the exclusive supplier of janitorial services at Sunrise of Arlington.

3

## STATEMENT OF FACTS

### *Defendants Induce Ms. Alvarenga to Purchase a Coverall Franchise*

6.    Ms. Alvarenga worked as a janitor at Sunrise, an assisted living complex for elderly adults, beginning in November 2002. From November 2002 until May 2003, she worked there for another Coverall franchisee.

7.    In early May 2003, Sunrise told Ms. Alvarenga that it wished to hire her directly, but that because of an agreement with Coverall, she must pay for a franchise agreement in order to continue to work at Sunrise. Sunrise encouraged Ms. Alvarenga to speak to Coverall about becoming a franchisee.

8.    On or about May 29, 2003, Coverall persuaded Ms. Alvarenga to purchase a franchise agreement with Coverall in order to work for Coverall as a janitor with the privilege of using Coverall's name.

9.    On May 29, 2003, Joseph J. Falbo, the Regional Director of Coverall Cleaning Concepts' Boston Support Center, presented Ms. Alvarenga with a pre-printed, 24-page form franchise agreement. A true copy of this agreement is attached as Exhibit A and incorporated by reference.

10.    The agreement provided, among other things, that Coverall would offer Ms. Alvarenga custodial jobs with revenues of at least $1,500 per month. To purchase the franchise, Ms. Alvarenga had to pay Coverall $10,500 -- $3,800 up front and $6,700 which she was required to borrow from Coverall and repay with a 12% rate of interest.

11.    Ms. Alvarenga first saw the franchise agreement on May 29, 2003. She was required to sign it that day.

4

12.     Ms. Alvarenga's first language is Spanish, and she speaks only simple,

conversational English. She has no advanced formal education and no experience with franchise agreements or other business deals.

13.     Coverall did not allow Ms. Alvarenga to review the franchise agreement, or advise her to seek legal or other counsel before signing it. Instead, Mr. Falbo made oral representations as to the content of the agreement and then asked Ms. Alvarenga to sign it along with other documents, including the loan note and documents which purport to confirm receipt of policy manuals, circulars and disclosure statements.

*Coverall's Misrepresentation of the Terms of the Franchise Agreement*

14.     The representations Coverall made through its agents, representatives and brochures, which led the Ms. Alvarenga to purchase this franchise, included, but were not limited to, the following:

(a)     Coverall would offer profitable accounts to Ms. Alvarenga.

(b)     From the knowledge and experience of Coverall, the Sunrise account would be profitable.

(c)     Coverall would provide all of the administrative and managerial services which, according to Coverall, were required of a franchisor.

(d)     Coverall franchises are profitable, and Ms. Alvarenga could anticipate a profitable and successful business career as a Coverall franchisee.

(e)     Coverall maintained the exclusive right to bill for the Ms. Alvarenga's services, which contemplated a continuing and close relationship with its franchisees.

(f)     Coverall would make full disclosure to its franchisees of all material facts with respect to their relationship and franchise operations.

5

(g)     Franchisees could place trust and confidence in Coverall to deal fairly with and protect the interests of its franchisees.

(h)     Ms. Alvarenga would be able negotiate the number of hours and amount of compensation she would receive for her janitorial services.

15.     Though Ms. Alvarenga had previously worked as a janitor, she had no prior experience in the operation of a janitorial franchise or any other business.

16.     Ms. Alvarenga was relying, and Coverall knew she was relying, on Coverall's financial and management assistance to insure the profitability of the janitorial agreement.

*Defendants' Failure to Fully Compensate Ms. Alvarenga for her Work at Sunrise*

17.     After the franchise agreement was signed on May 29, 2003, Coverall offered Ms. Alvarenga work as a janitor at Sunrise of Arlington, the senior living complex where Ms. Alvarenga had been working for the previous six months.

18.     Mr. Falbo told Ms. Alvarenga that she would receive $1,485 per month, and that she was expected to work five (5) days a week for five (5) hours a day performing janitorial services at Sunrise, which amounted to $13.81 per hour of work.

19.     Ms. Alvarenga told Mr. Falbo that the work at Sunrise usually took more than 25 hours a week to complete; however, Mr. Falbo assured Ms. Alvarenga that Coverall's agreement with Sunrise was only for 25 hour per week of janitorial services.

20.     Mr. Falbo also told Ms. Alvarenga that she should notify Coverall of any hours she worked beyond 25 hours per week, in which case Coverall would bill Sunrise for the additional hours of service at a rate of $13.81 per hour, and would pay that amount to her.

21.     On or about June 11, 2003, Greg Liminelli, a Coverall Field Consultant, called Ms. Alvarenga and told her she could report for work at Sunrise of Arlington.

6

22.     On or about June 11, 2003, when Ms. Alvarenga arrived at Sunrise, Sam Ezra, the Sunrise building supervisor, told Ms. Alvarenga that Sunrise's agreement with Coverall required Ms. Alvarenga to clean 12 to 14 rooms plus common areas each day for 7 days a week, regardless of the number of hours this work required. In addition, Mr. Ezra said that the contract allowed him to assign specific additional duties for Ms. Alvarenga to perform, with no additional compensation.

23.     Ms. Alvarenga immediately called Mr. Liminelli at Coverall to complain about the quantity of work Mr. Ezra assigned to her. Mr. Liminelli told Ms. Alvarenga to keep track of any hours she worked over 25 hours per week and that Coverall would bill Sunrise and pay Ms. Alvarenga accordingly.

24.     Each day Ms. Alvarenga arrived at work, Mr. Ezra would supervise her work and give her a list of particular cleaning tasks assigned to her in addition to her regular custodial assignments.

25.     Ms. Alvarenga complained that she alone could not complete all the tasks assigned to her by Sunrise, so Sunrise and Coverall agreed to allow her to ask a friend to assist her in these tasks; however, Ms. Alvarenga had to split her pay with the co-worker.

26.     Ms. Alvarenga was supposed to be paid once a month for all services rendered to Sunrise.

27.     Ms. Alvarenga kept track of all the hours she and her friend worked each month and sent copies of her work schedule to Mr. Liminelli; however, she never was paid for any of the work she performed over and above 25 hours per week.

28.     As Coverall failed to pay Ms. Alvarenga, she complained to Patricia Blackburn, the Director of Sunrise.

7

29.    Ms. Blackburn agreed to sign some of Ms. Alvarenga's monthly time sheets to confirm that Ms. Alvarenga and her co-worker in fact performed those hours of janitorial services at Sunrise.

30.    The timesheets show that Ms. Alvarenga and her co-worker spent an average of 81 hours each week performing janitorial services at Sunrise.

31.    However, Ms. Alvarenga received only between $752 and $1,170 per week after deductions by Coverall for worker's compensation insurance, royalty and management fees, as well as payments towards the $6,700 loan with 12% interest. In addition, Ms. Alvarenga was expected to split this compensation with her co-worker.

32.    Ms. Alvarenga also performed "special services" at Sunrise, including carpet cleaning, and she forwarded special invoices to Coverall for these services.

33.    Coverall never paid Ms. Alvarenga for these special services.

34.    Because Ms. Alvarenga received so little compensation from Coverall, she often supplemented the payment she received from Coverall with her own money to compensate her co-worker for his hours of labor at Sunrise.

35.    It became apparent to Ms. Alvarenga that Coverall had made the statements, representations, and promises alleged herein with no intention of ever honoring them.

*Coverall Declares Ms. Alvarenga in Breach of the Franchise Agreement when Ms. Alvarenga Attempts to Recover her Earned Compensation*

36.    In late September 2003, Ms. Alvarenga notified Coverall and Sunrise of her wish to end the franchise agreement. She also demanded restitution for the amounts she had paid under the franchise agreement and the wages she lost as a result of the acts of Defendants. Defendants refused.

8

37.    The following day, a Coverall employee told Ms. Alvarenga that Coverall found

her in breach of her franchise agreement because Sunrise had reported that the janitorial services

she provided were unsatisfactory, and that Coverall would apply all future payments by Sunrise

for her work to the loan she owed to Coverall.

38.    On March 4, 2005, Ms. Alvarenga, through her attorney, sent demand letters to

Defendants Coverall and Sunrise pursuant to G.L. c. 93A.

39.    Defendant Sunrise did not respond to Ms. Alvarenga's G.L. c. 93A demand.

40.    Coverall failed to respond within 30 days.

41.    On May 6, 2005, Coverall responded to Ms. Alvarenga's demand letter, but failed

to make a reasonable offer for settlement.

42.    Coverall's response was made in bad faith, and with knowledge that it had

violated G.L. ch. 93A. Coverall has settled several actions similar to this action for amounts

substantially exceeding its offer to Ms. Alvarenga. Coverall also has paid a civil penalty of

$100,000 pursuant to a Consent Decree in an action brought by the Federal Trade Commission

concerning Coverall's franchising practices.

### COUNT I
### (FRAUD AND MISREPRESENTATION
### AGAINST COVERALL)

43.    Plaintiff restates and incorporates by reference paragraphs 1 through 42 above.

44.    The representations and statements made by Coverall and its agents and

representatives were false, fraudulent, and misleading in the following respects:

(a)    That Ms. Alvarenga would receive $1,495 per month and was only

required to perform 25 hours per week of janitorial services at Sunrise for this amount.

(b)    That Coverall had the exclusive right to bill Sunrise and would pay Ms.

Alvarenga for all janitorial services performed at Sunrise above 25 hours per week.

9

(c)     That Coverall would pay Ms. Alvarenga for all "special services" performed at Sunrise, including carpet cleaning.

(d)     That Coverall would timely pay Ms. Alvarenga, regardless of whether payment for her services was received from Sunrise.

(e)     That accounts for janitorial services provided by Coverall to Ms. Alvarenga would be profitable, when Coverall knew such accounts returned far too small a profit to enable Ms. Alvarenga to earn a livelihood therefrom.

(f)     That Defendant Coverall would sell Ms. Alvarenga's franchise agreement upon notice of her wish to end this franchise agreement.

(g)     That Ms. Alvarenga would have the rights and control of an independent contractor over accounts offered to her by Coverall.

(h)     That Sunrise was dissatisfied with the quality of Ms. Alvarenga's janitorial services such that Coverall could void the contract, collect the balance of the franchise fee, and withhold further payment for services from Ms. Alvarenga.

45.     The false, fraudulent, and misleading statements mentioned above were made by Defendant Coverall through its agents and representatives with knowledge that they were false, fraudulent, and misleading, or with reckless disregard for their truth or falsity.

46.     In making the false, fraudulent, and misleading statements alleged herein, Defendant Coverall through its agents and representatives acted willfully and with malice, or with reckless disregard for the rights of Ms. Alvarenga.

47.     In making the false, fraudulent, and misleading statements alleged herein, Defendant Coverall through its agents and representatives intended that Ms. Alvarenga rely on these statements.

10

48.    Ms. Alvarenga placed reasonable reliance upon the representations of Coverall.

49.    At all times, Ms. Alvarenga relied on the representations of Defendant Coverall

and, but for those representations, would not have entered into the contract or purchased the

janitorial franchise.

50.    As a result of the fraudulent statements and misrepresentations of Defendant, Ms.

Alvarenga suffered damages in the amount of $19,654.11.

## COUNT II
## (VIOLATION OF MASSACHUSETTS GENERAL LAWS 93A
## BY COVERALL)

51.    Plaintiff restates and incorporates by reference paragraphs 1 through 50 above.

52.    Coverall is engaged in the conduct of a trade or business.

53.    Coverall's actions as set forth herein constitute unfair and deceptive acts or

practices declared unlawful by G.L. c. 93A § 2 and the regulations promulgated pursuant to G.L.

c. 93A § 2(c).

54.    Coverall's unfair and deceptive acts occurred primarily and substantially within

the Commonwealth.

55.    Coverall's unfair and deceptive acts were conducted knowingly and willfully.

56.    Ms. Alvarenga suffered damages as a result of Coverall's use of unfair and

deceptive acts or practices in the agreement for janitorial services with Ms. Alvarenga.

57.    On March 4, 2005, Ms. Alvarenga sent a demand letter in accordance with G.L. c.

93A, § 9.

58.    Coverall failed to respond to the demand letter within 30 days. When it did

respond, it failed to make a reasonable offer for settlement.

59.    As a consequence of the Coverall's wrongful acts and conduct, Ms. Alvarenga

suffered damages while Coverall has been and continues to be unjustly enriched.

11

### COUNT III
### (VIOLATION OF MASSACHUSETTS GENERAL LAWS 93A
### BY SUNRISE)

60.    Plaintiff restates and incorporates by reference paragraphs 1 through 59 above.

61.    Sunrise is engaged in the conduct of a trade or business.

62.    Sunrise's actions as set forth herein constitute unfair and deceptive acts or

practices declared unlawful by G.L. c. 93A § 2 and the regulations promulgated pursuant to G.L.

c. 93A § 2(c).

63.    Sunrise's unfair and deceptive acts occurred primarily and substantially within the

Commonwealth.

64.    Sunrise's unfair and deceptive acts were conducted knowingly and willfully.

65.    Ms. Alvarenga suffered damages as a result of Sunrise's use of unfair and

deceptive acts or practices in the agreement for janitorial services with Ms. Alvarenga.

66.    On March 4, 2005, Ms. Alvarenga sent a demand letter in accordance with G.L. c.

93A, § 9.

67.    Sunrise never responded to Ms. Alvarenga's demand letter. This failure to make a

reasonable offer for settlement was in bad faith and with reason to know that the acts complained

of were in violation of G.L. c. 93A.

68.    As a consequence of the Coverall's wrongful acts and conduct, Ms. Alvarenga

suffered damages while Sunrise has been and continues to be unjustly enriched.

### COUNT IV
### (RESCISSION OF FRANCHISE AGREEMENT)

69.    Plaintiff restates and incorporates by reference paragraphs 1 through 68 above.

70.    The "franchise agreement" between Coverall and Ms. Alvarenga was

unconscionable.

12

71.    Ms. Alvarenga suffered damages as a result of the unconscionable contract.

72.    Plaintiff demands that the contract be rescinded, and that she be restored to her

pre-contract position and awarded the reasonable value for services provided by her to Sunrise.

## COUNT V
## (BREACH OF CONTRACT AGAINST COVERALL)

73.    Plaintiff restates and incorporates by reference paragraphs 1 through 72 above.

74.    Ms. Alvarenga and Coverall entered into a valid and binding agreement.

75.    Coverall breached the terms of that agreement.

76.    Ms. Alvarenga suffered damages as a result of the breach.

## COUNT VI
## (BREACH OF FIDUCIARY DUTY AGAINST COVERALL)

77.    Plaintiff restates and incorporates by reference paragraphs 1 through 76 above.

78.    Defendant Coverall at all times had knowledge concerning the matters alleged

herein far superior to that possessed by Ms. Alvarenga and acted from a position of greater

economic and bargaining power. For this reason, Coverall acted, or should be held to have

acted, in the capacity of a fiduciary.

79.    Coverall was under a duty to exercise the utmost good faith and fairness toward

Ms. Alvarenga in the negotiations leading to the execution of the contract, and in the

performance thereof. This fiduciary duty applies particularly with respect to royalty and

management fees, and payments for supplies and services, which sums were paid by Ms.

Alvarenga to Defendant in its capacity as fiduciary and were received by Defendant in that

capacity.

80.    Coverall breached its fiduciary duties to Ms. Alvarenga, and she suffered

damages as a result.

13

## COUNT VII
### (BREACH OF IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING AGAINST COVERALL)

81.     Plaintiff restates and incorporates by reference paragraphs 1 through 80 above.

82.     Coverall declared Ms. Alvarenga to be in breach of the franchise agreement in bad faith, without good cause, and with the intent to deprive Ms. Alvarenga of the benefits of that agreement.

83.     Coverall's actions were in breach of the implied covenant of good faith and fair dealing.

84.     Ms. Alvarenga has suffered damages as a result of Coverall's actions.

## COUNT VIII
### (VIOLATION OF MASSACHUSETTS
### MINIMUM FAIR WAGE ACT AGAINST COVERALL AND SUNRISE, G.L. c. 151 § 1)

85.     Plaintiff restates and incorporates by reference paragraphs 1 through 84 above.

86.     Ms. Alvarenga performed services for Coverall and Sunrise primarily for their benefit and subject to their control.

87.     Coverall and Sunrise permitted Ms. Alvarenga to work as a janitor.

88.     Coverall and Sunrise failed to pay Ms. Alvarenga a fair wage in violation of G.L. c. 151 § 1.

89.     As a result of Coverall and Sunrise's actions, Ms. Alvarenga suffered damages.

90.     On May 23, 2005, Ms. Alvarenga received a private right of action by the Massachusetts Attorney General's office pursuant to G.L. c. 149 § 150.

91.     Coverall and Sunrise are liable for loss of wages, treble damages, costs and attorneys fees pursuant to G.L. c. 151 § 1B.

92.     Coverall and Sunrise are joint employers of Ms. Alvarenga and therefore are jointly and severally liable under the Massachusetts Minimum Fair Wage law, G.L. c. 151.

## COUNT IX
## (VIOLATION OF TIMELY PAYMENT OF WAGES STATUTE AGAINST COVERALL AND SUNRISE, G.L. c. 149 § 148)

93.    Plaintiff restates and incorporates by reference paragraphs 1 through 92 above.

94.    Ms. Alvarenga performed services for Coverall and Sunrise primarily for their

benefit and subject to their control.

95.    Coverall and Sunrise permitted Ms. Alvarenga to work as a janitor.

96.    Coverall and Sunrise repeatedly violated G.L. c. 149 § 148 by failing to pay Ms.

Alvarenga all wages she earned in a timely manner.

97.    As a result of Coverall and Sunrise's actions, Ms. Alvarenga suffered damages.

98.    On May 23, 2005, Ms. Alvarenga received a private right of action by the

Massachusetts Attorney General's office pursuant to G.L. c. 149 § 150.

99.    Coverall and Sunrise are liable for loss of wages, treble damages, costs and

attorneys fees pursuant to G.L. c. 149 § 150.

100.    Coverall and Sunrise are joint employers of Ms. Alvarenga and therefore are

jointly and severally liable under the Timely Payment of Wages Act, G.L. c. 149 § 148.

## COUNT X
## OVERTIME VIOLATIONS UNDER THE MASSACHUSETTS MINIMUM FAIR WAGES ACT AGAINST COVERALL AND SUNRISE, G.L. c. 151, §§ 1A & 1B

101.    Plaintiff restates and incorporates by reference paragraphs 1 through 100 above.

102.    Ms. Alvarenga performed services for Coverall and Sunrise primarily for their

benefit and subject to their control.

103.    Coverall and Sunrise permitted Ms. Alvarenga to work as a janitor.

104.    Defendants repeatedly violated G.L. c. 151, §§ 1A & 1B by employing Ms.

Alvarenga for workweeks longer than forty (40) hours without full compensation for all hours in

15

excess of forty (40) hours in said workweeks at rates not less than one and one half times (1 ½) the regular rate at which they were employed.

105. Ms. Alvarenga is not an exempt employee pursuant to G.L. c. 151 § 1A.

106. As a result of Coverall and Sunrise's actions, Ms. Alvarenga suffered damages.

107. Coverall and Sunrise are liable for an award of actual, double or treble damages, costs and attorneys' fees as authorized by G.L. c. 151 § 1B.

108. Coverall and Sunrise are joint employers of Ms. Alvarenga and therefore are jointly and severally liable under the Minimum Fair Wages Act, G.L. c. 151, §§ 1A & 1B.

## COUNT XI
## ACTION FOR SERVICES RENDERED
## AGAINST COVERALL AND SUNRISE

109. Plaintiff restates and incorporates by reference paragraphs 1 through 108 above.

110. Coverall and Sunrise agreed to pay to Ms. Alvarenga for all hours she worked at a rate of $13.81 per hour.

111. Ms. Alvarenga thereafter performed all of her obligations under the agreement but Coverall and Sunrise have refused to pay Ms. Alvarenga for her services.

112. As a result of Coverall and Sunrise's conduct, Ms. Alvarenga suffered damages and Defendants have been and continue to be unjustly enriched.

## PRAYERS FOR RELIEF

WHEREFORE, cause having been shown, the Plaintiff respectfully requests that the Court grant the following relief:

1. Award actual damages equal to the amount paid by the Plaintiff for the franchise and compensation for services rendered with interest, plus treble damages, attorney fees and costs as provided by G.L. c. 93A § 9(4).

16

2.    Payment of unpaid wages found by the Court to be due the employee with

interest, plus treble damages, attorney fees and costs as provided by 29 U.S.C. § 216, G.L. c.

151 § 1B, and G.L. c. 149 § 150.

3.    Grant such additional or equitable relief as it may deem just and proper.

The Plaintiff hereby demands a jury trial on all claims so triable.


                                RHINA ALVARENGA
                                By her attorneys,


                                _____
                                Jennifer L. Huggins (BBO #642252)
                                Greater Boston Legal Services
                                197 Friend Street
                                Boston, MA 02114
                                617.603.1810

                                Daryl J. Lapp (BBO #554980)
                                Melissa C. Allison (BBO #657470)
                                PALMER & DODGE LLP
                                111 Huntington Avenue at Prudential Center
                                Boston, MA 02199-7613
                                617.239.0100

Dated: August 8, 2005


17

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

Superior Court
CIVIL ACTION NO. _____

| | |
|---|---|
| Rhina Alvarenga, ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | |
| ) | |
| Coverall Cleaning Concepts, ) | |
| Coverall of North America; ) | |
| Coverall of Boston, ) | |
| Joseph J. Falbo, ) | |
| Greg Liminelli, ) | |
| Sunrise Senior Living, Inc. ) | |
| Sunrise of Arlington, ) | |
| Patricia Blackburn ) | |
|     Defendants. ) | |

### PLAINTIFF'S STATEMENT OF DAMAGES

Plaintiff demands relief as follows:

1. That the Plaintiff be awarded unpaid wages and overtime in the amount of $19, 654.11

2. That the Plaintiff be awarded an additional amount in liquidated or treble damages.

3. That Plaintiff be awarded reasonable attorney fees and costs.

4. That the Court award such other, further or different relief as it determines just.

Respectfully submitted
Rhina Alvarenga,
By her attorney,

20

Jennifer L. Huggins, Esq.
Staff Attorney
Greater Boston Legal Services
197 Friend St.
Boston, MA 02114
617/ 603-1810
BBO#: 642252



*The Commonwealth of Massachusetts*

| CIVIL ACTION COVER SHEET | Trial Court of Massachusetts<br>SUPERIOR COURT DEPARTMENT<br>County: _____ | Docket Number<br>05-1782 |
|---|---|---|

PLAINTIFF(S) *Rhina Alxarenga*

DEFENDANT(S) Coverall of Boston & Sunrise of Arlington.

ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE
Jennifer L. Huggins, Greater Boston Legal Services
197 Friend St, Boston, MA 02114 (617) 603-1810
Board of Bar Overseers number: 642252

ATTORNEY (if known) Coverall: Jacquiline Vlaming
Coverall Cleaning Concepts 5201 Congress Ave, Suit 275
Boca Raton, FL

### Origin code and track designation

Place an x in one box only:
[X] 1. F01 Original Complaint
[ ] 2. F02 Removal to Sup.Ct. c. 231, s.104 (Before trial) (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
[ ] 5. F05 Reactivated after rescript;relief from judgment/ Order (Mass.R.Civ.P. 60) (X)
[ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

CODE NO.　TYPE OF ACTION (specify)　TRACK　IS THIS A JURY CASE?
Services + Labor
A01 + D13　AO1 & D13 Declaratory Judgment ( ) → A　(✓) Yes　( ) No

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ............... $..............
2. Total Doctor expenses ................ $..............
3. Total chiropractic expenses ......... $..............
4. Total physical therapy expenses .... $..............
5. Total other expenses (describe) .... $..............
Subtotal $..............

B. Documented lost wages and compensation to date ...... $ 19,654.11
C. Documented property damages to date ................ $..............
D. Reasonably anticipated future medical and hospital expenses ............ $..............
E. Reasonably anticipated lost wages ................... $..............
F. Other documented items of damages (describe) Treble damages $ 58,962.33
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

$78,616.44
TOTAL: $..............

### CONTRACT CLAIMS
(Attach additional sheets as necessary)
Provide a detailed description of claim(s):

93A & Fraud & Misrepresentation

Same as above
TOTAL $..............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."
Signature of Attorney of Record _____ DATE: 5/24/05

A.O.S.C. 2003

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

Superior Court
CIVIL ACTION NO. _____

**05-1782**

| | |
|---|---|
| Rhina Alvarenga, ) | |
| Plaintiff ) | |
| ) | CIVIL COMPLAINT |
| v. ) | |
| ) | |
| Coverall Cleaning Concepts, ) | |
| Coverall of North America; ) | |
| Coverall of Boston, ) | |
| Joseph J. Falbo, ) | |
| Greg Liminelli, ) | |
| Sunrise Senior Living, Inc.. ) | |
| Sunrise of Arlington, ) | |
| Patricia Blackburn ) | |
| Defendants ) | |

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

MAY 2 4 2005

*Edward J. Sullivan*

CLERK

## INTRODUCTION

Plaintiff, Rhina Alvarenga, brings this action to recover compensation for work

performed as a janitor on behalf of defendant Coverall of Boston ("Coverall"), a national

corporation that provides janitors to companies. Coverall persuaded Ms Alvarenga, a janitor, to

pay its corporation $10,500 for the privilege to work as a janitor. Plaintiff spent over 81 hours a

week cleaning Sunrise, an assisted living center for the elderly. Coverall promised to pay her at a

rate of $31.81 an hour but in fact she received compensation that was often below the state

minimum wage.

## JURISDICTION AND VENUE

1.      Jurisdiction is conferred upon this Court pursuant to the Fair Labor Standards Act, United

1

States Code, Chapter 29, § § 207, and 216; generally at G.L. c. 212,§4; under the

Massachusetts Minimum Fair Wages Laws, G.L. c. 151, sections 1, 19, and 20; and

Massachusetts Weekly Payment of Wages Laws, G.L. c. 149 § 148.

2. Jurisdiction of the subject matter of this action is conferred on this court by chapter G.L.

c. 93A § 9(1) and by G.L. c. 214, § 1 .

3. Venue in this action properly lies in this Court pursuant to G.L. c. 223 § 1.

## PARTIES

4. Plaintiff, RHINA ALVARENGA at all times relevant to this action is and was a resident

of the City of Somerville, Massachusetts, MIDDLESEX COUNTY.

5. Defendant, COVERALL OF NORTH AMERICA, INCORPORATED, and COVERALL

CLEANING CONCEPTS d/b/a COVERALL OF BOSTON (collectively referred to as

"Coverall") is a foreign corporation, whose principal office is located at 3111 Camino

Del Rio, North San Diego, California, 92108, and whose registered agent is CT

Corporation Systems located at 101 Federal Street, Boston MA 02110.

6. COVERALL OF BOSTON is located at 105 Central Street, Suite 110, Stoneham,

Massachusetts 02180.

7. Defendant JOSEPH J. FALBO was at all times relevant an the Regional Director of

Coverall Cleaning Concepts' Boston Support Center located at Coverall of Boston , 105

Central Street, Suite 110, Stoneham, Massachusetts 02180.

8. Defendant GREG LIMINELLI, upon information and belief, was at all times relevant a

Coverall Field Consultant, of Coverall of Boston located at 105 Central Street, Suite 110,

2

Stoneham, Massachusetts 02180.

9.    Defendant Coverall is the owner and franchiser of the registered trademark and trade name Coverall Cleaning Concepts and Coverall of North America. Coverall licenses janitors to use its name and therein, defendant Coverall licenses various persons, in the State of Massachusetts, and elsewhere in the United States, including the plaintiff to perform janitorial services for businesses.

10.   Defendant SUNRISE SENIOR LIVING, INCORPORATED d/b/a SUNRISE OF ARLINGTON ( collectively referred to as "Sunrise") is a foreign corporation which has a principal place of business is located 7902 West Park Drive, McLean, Virginia 22102 whose registered agent is Corporate Creations Network, Incorporated located at 18 Tremont Street, Suite 146 Boston, Massachusetts 02108.

11.   SUNRISE OF ARLINGTON is located at 1395 Massachusetts Avenue, Arlington, Massachusetts 02476.

12.   Upon information and belief, Defendant PATRICIA BLACKBURN is and was at all times relevant the Director of Sunrise of Arlington located at 1395 Massachusetts Avenue, Arlington, Massachusetts 02476.

13.   Upon information and belief, defendant Coverall contracted with defendant Sunrise to be the exclusive supplier of janitorial services at Sunrise of Arlington.

14.   Upon information and belief Defendants Coverall and Sunrise are and were, at all times hereinafter mentioned, engaged in related activities performed through unified operation or common control, engaged in commerce or in the production of goods for commerce and are and at all time hereinafter mentioned were enterprises within the meaning of 29

3

U.S.C. § 203(r).

15. Defendants Sunrise and Coverall are joint employers and are jointly liable where Coverall acted directly in the interest of Sunrise by having exclusive responsibility for providing janitors to Sunrise, and Sunrise benefitted from Coverall's services.

## STATEMENT OF FACTS

16. Plaintiff, Rhina Alvarenga worked as a janitor by trade.

17. Ms. Alvarenga's first language is Spanish and has no undergraduate education.

18. Plaintiff previously worked at Sunrise from November 2002 until May 2003 under another Coverall franchisee.

19. On or about May 29, 2003, defendant Coverall persuaded Plaintiff, Rhina Alvarenga to purchase a franchise agreement with defendant Coverall to work for them as a janitor with the privilege of using Coverall's name.

20. Sunrise is an assisted living complex for elderly adults.

21. In early May 2003, Sunrise told Plaintiff that they wished to hire her directly but because of an agreement with Coverall, she must pay for a franchise agreement in order to continue to work at Sunrise.

22. On May 29, 2003, Joseph J. Falbo, the Regional Director of Coverall Cleaning Concepts' Boston Support Center, presented Plaintiff with a pre-printed form franchise agreement in which Coverall promised to offer Plaintiff monthly business at a minimum of $1,500 per month if she paid Coverall $3,800 deposit and agree to a loan from Coverall for $6,700 with 12% rate of interest.

4

23. On May 29, 2003, Plaintiff first saw the actual franchise agreement and was required to sign said agreement on that day.

24. Plaintiff was never able to review the 24 paged franchise agreement herself before signing it and defendant Coverall did not allow her to review the actual franchise agreement or advise her to seek counsel before signing the agreement. Instead, Mr. Falbo made oral representations as to the content of the agreement and then asked Plaintiff to sign and initial numerous documents.

25. Among the representations made by defendant Coverall through its agent and representatives, in its advertising, and brochures, which led to the purchase by plaintiff of this franchise, included, were the following:

   a. That Defendant would offer profitable accounts to the plaintiff and, from the knowledge and experience of Defendant, the site would be profitable.

   b. That Defendant Coverall would provide all of the administrative and managerial services represented by Defendant as incumbent upon a franchisor as advertised by Defendant.

   c. That Coverall franchises were profitable and, in reliance thereon, plaintiff could anticipate a profitable and successful business career as a Coverall franchisee.

   d. That Defendant Coverall's exclusive right to bill for the plaintiff's services which contemplated a continuing, close relationship between Defendant and its franchisees during which Defendant Coverall would make full disclosure to its franchisees of all material facts respecting their relationship and franchise operations, and franchisees could place trust and confidence in Defendant to deal

5

fairly with and protect the interests of its franchisees.

e.    That plaintiff would be able negotiate the number of hours and amount of
      compensation she would receive for her janitorial services.

26.    Though Plaintiff had previously worked as a janitor, she had no prior experience in the
       operation of a janitorial franchise or similar business.

27.    Plaintiff had no resources other than those declared to Defendant and, thus, plaintiff had
       to rely on Defendant's financial and management assistance to insure the profitability of
       the janitorial agreement.

28.    Also, on May 29, 2003, Defendant Coverall offered Plaintiff work as a janitor at Sunrise
       in Arlington.

29.    Mr. Falbo told Plaintiff that in exchange for $1,485/month she was expected to work five
       (5) days a week, for five (5) hours a day performing janitorial services at Sunrise, which
       amounted to $13.81 per hour of work.

30.    Plaintiff told Mr. Falbo that the work at Sunrise usually took more than 25 hours a week
       to complete; however, Mr. Falbo assured Plaintiff that Coverall's agreement with Sunrise
       was only for 25 hour per week of janitorial services.

31.    Mr. Falbo also told Plaintiff that she should notify Coverall of any hours of janitorial
       services she performed over the 25 hours and Coverall would bill Sunrise for the
       additional hours of service at a rate of $13.81 per hour.

32.    On or about June 11, 2003, Greg Liminelli, a Coverall Field Consultant, called Plaintiff
       and told her she could report for work at Sunrise of Arlington.

33.    On or about June 11, 2003, when Plaintiff showed up at Sunrise, Sam Ezra, the Sunrise

6

building supervisor, told Plaintiff that Sunrise's agreement with Coverall provided that Plaintiff clean 12 to 14 rooms plus common areas each day for 7 days a week regardless of the number of hours of work it took to complete them. In addition, Mr. Ezra could assign specific duties for Plaintiff to perform.

34.   Plaintiff immediately called Mr. Liminelli at Coverall to complain about the quantity of work Mr. Ezra assigned to her. Mr. Liminelli told Plaintiff to keep track of any hours over 25 hours a week she performed and Coverall would bill Sunrise accordingly.

35.   Each day Plaintiff arrived at work, Mr. Ezra would supervise her work and give her a list of particular cleaning tasks assigned to her in addition to her daily maintenance assignments.

36.   Plaintiff complained that she alone could not complete all the tasks assigned to her by Sunrise, so Sunrise and Coverall agreed to allow her to ask a friend to assist her in the tasks; however, Plaintiff had to split her pay with the coworker.

37.   Plaintiff was supposed to be paid once a month for all services rendered to Sunrise.

38.   Plaintiff kept track of all the hours she and her friend worked each month and sent copies of her monthly schedule of hours of work to Mr. Liminelli; however, she never received full pay for any of those additional hours of work.

39.   As Coverall failed to pay Plaintiff, she complained to Patricia Blackburn, the Director of Sunrise.

40.   Ms. Blackburn agreed to sign some of her monthly time sheets to confirm that Plaintiff and her co-worker in fact performed the hours of janitorial services at Sunrise.

41.   Plaintiff and her co-worker spent an average of 81 hours each week performing janitorial

7

services at Sunrise on the timesheets.

42. However, Plaintiff received only between $752 and $1,170 per after minus deductions by Coverall for worker's compensation insurance, royalty and management fees, as well as payments towards the $6,700 loan plus the 12% interest. However, Plaintiff was expected to split her pay with her co-worker.

43. In addition, Plaintiff performed "special services" which included carpet cleaning several times at Sunrise and forwarded special invoices to Coverall for this service.

44. Coverall never paid Plaintiff for these special services.

45. Because Plaintiff received so little compensation from Coverall, she often supplemented the payment she received from Coverall with her own money to compensate her co-worker for his hours of labor at Sunrise.

46. About four(4) months after operating under the franchise contract it became apparent to the Plaintiff that Defendant Coverall had made the statements, representations, and promises alleged herein with no intention of ever performing according to representations made.

47. In late September 2003, and within a reasonable time after realizing her situation, Plaintiff notified Defendants Coverall and Sunrise, of her wish to end the franchise agreement and demanded restitution for the amounts paid and losses sustained by plaintiff under the contract and as a result of the acts of Defendants alleged herein. Defendants have failed and refused to make such restitution, and continues to do so.

48. Instead of offering the plaintiff restitution, the following day, plaintiff was told by a Coverall employee that Coverall found her in breach of her franchise agreement because

8

Sunrise had reported that the janitorial services provided by Plaintiff were unsatisfactory and Coverall would apply all future payments by Sunrise for her work to the loan she owed to Coverall.

49.     Plaintiff does not know the amount of payment Coverall received from Sunrise for her services.

50.     On March 4, 2005, Plaintiff, through her attorney, sent Defendants Coverall and Sunrise a demand letter pursuant to G.L. c. 93A.

51.     Defendant Coverall failed to provide a reasonable offer for settlement within 30 days.

52.     On May 6, 2005, Defendant Coverall responded to the plaintiff's March 4th demand letter but failed to provide a reasonable offer for settlement.

53.     Defendant Sunrise did not respond to Plaintiff's G.L. c. 93A demand.

## COUNT I
## FRAUD AND MISREPRESENTATION
## AGAINST DEFENDANTS COVERALL,
## JOSEPH FALBO AND GREG LIMINELLI

54.     Plaintiff realleges the facts set forth in paragraphs 1 through 53 above, and incorporates them by reference as duly set forth herein.

55.     Plaintiff, placing reasonable reliance upon the representations of Defendant Coverall, executed a franchise agreement, a true copy of which is attached as Exhibit 1.

56.     At all times, plaintiff relied on the representations of Defendant Coverall and, but for those representations, would not have entered into the contract or purchased the franchise to operate a janitorial franchise.

9

57.   The representations and statements made by Defendant Coverall and its agents and

      representatives were false, fraudulent, and misleading in the following respects:

      a.    That Plaintiff would receive $1,495 per month and was only required to perform

            25 hours per week of janitorial services at Sunrise for this amount.

      b.    That Defendant Coverall had the exclusive right to bill Sunrise and would pay

            Plaintiff for all janitorial services performed at Sunrise above 25 hours per week.

      c.    That Defendant Coverall would pay plaintiff for all "special services" performed

            at Sunrise including carpet cleaning.

      d.    That Defendant Coverall would timely pay plaintiff regardless of whether

            payment for her services was received from the Defendant Sunrise.

      e.    That accounts for janitorial services provided by Coverall to the Plaintiff would be

            profitable, when in fact, said accounts have a returning far too small a profit to

            enable Plaintiff to earn a livelihood therefrom.

      f.    That Defendant Coverall would sell Plaintiff's franchise agreement upon notice of

            her wish to end this franchise agreement.

      g.    That plaintiff would have the rights and control of an independent contractor over

            accounts offered to her by Coverall.

      h.    That Defendant Sunrise was dissatisfied with the qualify of Plaintiff's janitorial

            services such that Defendant Coverall could void the contract and collect the

            balance of the franchise fee and withhold further payment for services to the

            Plaintiff.

58.   The false, fraudulent, and misleading statements mentioned above were made by

                                            10

Defendant Coverall with knowledge that they were false, fraudulent, and misleading, or

with reckless disregard for their truth or falsity.

59.    In making the false, fraudulent, and misleading statements alleged herein, Defendant

Coverall and its agents and representatives acted willfully and with malice, or with

reckless disregard for the rights of plaintiff.

60.    As a result of the fraudulent statements and misrepresentations of Defendant, plaintiff has

been damaged in the sum of $19,654.11; plaintiff claims the further sum of $39,308.22 as

exemplary damages.

## COUNT II
## UNCONSCIONABLE CONTRACT AGAINST
## COVERALL AND JOSEPH FALBO

61.    Plaintiff realleges the facts set forth in paragraphs 1 through 60 above, and incorporates

them by reference as duly set forth herein.

62.    The "franchise agreement" between Coverall and the Plaintiff was not a bargained for

agreement but the result of gross disparity in bargaining positions and values exchanged.

63.    The "franchise agreement" between Coverall and the Plaintiff is a contract of adhesion.

64.    The "franchise agreement" contained terms unreasonably favorable to Coverall, and

Plaintiff had no meaningful choice or alternative than to sign the agreement if she wanted

to continue to work as a janitor at Sunrise of Arlington.

65.    Plaintiff was unable to receive substantial benefits from the contract and because of her

weaker position, was unable to reasonably protect her interest as she was unable to

11

understand the sophisticated language of the twenty-four (24) paged agreement.

66. Defendant Coverall through its agent Joseph Falbo did not allow the Plaintiff time to
    review the contract herself and instead made false verbal representations about its terms.

67. As a result of the unconscionable contract and unconscionable actions of Defendant
    Coverall, Plaintiff suffered oppression and unfair surprise and thus the "franchise
    agreement" is unconscionable.

68. Plaintiff demands that she be restored to pre-contract position and awarded the reasonable
    value for services provided by her to Sunrise.

## COUNT III
## VIOLATION OF MASSACHUSETTS GENERAL LAWS 93A
## BY ALL NAMED DEFENDANTS

69. Plaintiff realleges the facts set forth in paragraphs 1 through 68 above, and incorporates
    them by reference as duly set forth herein.

70. The Defendants' wrongful acts occurred primarily and substantially within the
    Commonwealth, and were conducted knowingly and willfully.

71. On March 4, 2005, Plaintiff, through counsel, sent Defendant a written demand for relief
    by sending Defendants Coverall and Sunrise a demand letter as required by G.L. c. 93A,
    § 9.

72. Both Defendants Coverall and Sunrise have failed to respond to Plaintiff's demand letter
    within 30 days with a reasonable offer for settlement.

73. Defendant Coverall's never responded to Plaintiff's demand letter. This failure to make a
    reasonable offer for settlement was in bad faith and with reason to know that the acts

12

complained of were in violation of G.L. c. c. 93A.

74. Defendant Sunrise's failure to make any offer for settlement was in bad faith and with reason to know that the acts complained of were in violation of G.L. c. 93A.

75. Plaintiff suffered damages as a result of Defendants' Coverall and Sunrises' use of unfair an deceptive acts and practices in the agreement for janitorial services with Plaintiff.

76. Defendant Coverall's misrepresentations to Plaintiff that induced her to sign the contract, pay a deposit of $3,800, and enter into a loan agreement for $6,700 with a 12% interest rate was an unfair or deceptive acts and practice declared unlawful by G.L. c. 93A § 2 and the regulations promulgated pursuant to G.L. c. 93A § 2(c).

77. Defendant Coverall's failure to allow Plaintiff at least 5 days to seek counsel and review the franchise agreement for janitorial services is an unfair and deceptive act declared unlawful by G.L. c. 93A § 2 and the regulations promulgated pursuant to G.L. c. 93A § 2(c) and Fair Trade Act pursuant to 16 C.F.R. § 436.1.

78. Defendant Coverall's and Sunrise's failure to pay Plaintiff for all hours of work performed at Sunrise was an unfair or deceptive act declared unlawful by G.L. c. 93A § 2 and the regulations promulgated pursuant to G.L. c. 93A § 2(c).

79. Defendant Coverall's assertion that Plaintiff failed to perform janitorial services satisfactorily at Sunrise in violation of the franchise agreement is pretextual and constitutes an unfair and deceptive act, declared unlawful by G.L. c. 93A §2 and the regulations promulgated pursuant to G.L. c. 93A § 2(c).

80. Defendant Sunrise's failure to pay Plaintiff for janitorial services as promised was an unfair and deceptive act, declared unlawful by G.L. c. 93A § 2 and the regulations

13

promulgated pursuant to G.L. c. 93A § 2(C)).

81.    As a consequence of the Defendants' wrongful acts and conduct, plaintiff suffered the

damages while Defendants have been and may continue to be, unjustly enriched.

## COUNT IV
## BREACH OF FIDUCIARY DUTY
## TO PLAINTIFF AGAINST COVERALL

82.    Plaintiff realleges the facts set forth in paragraphs 1 through 81 above, and incorporates

them by reference as duly set forth herein.

83.    Defendant Coverall at all times had knowledge concerning the matters alleged herein far

superior to that possessed by plaintiff and acted from a position of greater economic and

bargaining power. For this reason, Defendant acted, or should be held to have acted, in

the capacity of a fiduciary, and, as such, was under a duty to make full disclosure of all

facts concerning the transactions mentioned herein that were necessary to permit plaintiff

to make intelligent decisions regarding the purchase of the franchise; to make full

disclosure to plaintiff of all the terms of the franchise contract; the reasons therefor, and

the probable effect thereof, to permit plaintiff to negotiate respecting any of the terms of

the contract, and otherwise to exercise the utmost good faith and fairness toward plaintiff

in the negotiations leading to the execution of the contract, and in the performance

thereof. This fiduciary duty applies particularly with respect to royalty and management

fees, and payments for supplies and services, which sums were paid by plaintiff to

Defendant in its capacity as fiduciary and were received by Defendant in that capacity.

84.    Defendant Coverall negotiated and contracted with Sunrise on behalf of the plaintiff for a

14

contract for janitorial services.

85.     On good faith belief the Plaintiff alleges that:

a.      Defendant Coverall breached its fiduciary duty to the plaintiff by agreeing to a
contract well below the fair value for janitorial services the plaintiff had to
perform at Sunrise.

b.      Defendants Coverall and Sunrise conspired to contract for services for which
plaintiff would not receive the fair value of the amount of work she performed.

c.      Defendant Coverall, upon notice by the Plaintiff, breached its duty to the plaintiff
by failing to obtain the fair value of plaintiff's labor performed by the plaintiff
from Defendant Sunrise.

## COUNT V
## ACTION FOR SERVICES RENDERED
## AGAINST COVERALL AND SUNRISE

86.     Plaintiff realleges the facts set forth in paragraphs 1 through 87 above, and incorporates
them by reference as duly set forth herein.

87.     Both Defendants Coverall agreed to pay to the plaintiff for the services in the amount of
$13.81 per hour.

88.     Sunrise assured Plaintiff that they would compensate Plaintiff for all hours worked.

89.     Plaintiff with a coworker performed janitorial and carpet cleaning special services at
Sunrise that amounted to more than 25 hours per week with the expectation that she
would be compensated for those additional hours.

90.     Defendants Sunrise and Coverall allowed the plaintiff to so act without objection.

15

91.   The plaintiff thereafter performed all of her obligations under the agreement but the

      Defendants Coverall and Sunrise have neglected and refused to pay the plaintiff for the

      services.

92.   As a consequence of the Defendants' wrongful acts and conduct, Plaintiff suffered

      damages and Defendants have been and may continue to be unjustly enriched.


### COUNT VI
### ACTION FOR *QUANTUM MERIUT*
### AGAINST COVERALL AND SUNRISE


93.   Plaintiff realleges the facts set forth in paragraphs 1 through 91 above, and incorporates

      them by reference as duly set forth herein.

94.   The plaintiff is entitled to recover for the fair value of the services so rendered to the

      Defendant Sunrise from June 11, 2003 to October 31, 2003.


### COUNT VII
### VIOLATION OF MASSACHUSETTS
### TIMELY PAYMENT OF WAGES STATUTE G.L. c. 149§§ 148 & 150
### AGAINST COVERALL AND SUNRISE


95.   Plaintiff realleges the facts set forth in paragraphs 1 through 94 above, and incorporates

      them by reference as duly set forth herein.

96.   Plaintiff engaged in physical and mental exertion controlled by Defendants Sunrise and

      Coverall and primarily for their benefit.

97.   Defendants Sunrise and Coverall permitted or suffered plaintiff to work as a janitor

pursuant to Fair Labor Standards Act. 29 U.S.C. § 203(g).

98. Defendants Sunrise and Coverall are joint employers of the plaintiff and as such are jointly and individually liable under the Fair Labor Standards Act 20 U.S.C. § , and 29 C.F.R. § 791.2  and under the Massachusetts Minimum Fair Wage law  G.L. c.  151.

99. On May 23, 2005 plaintiff received a private right of action by the Massachusetts Attorney General's office  pursuant to G.L. c.  149 § 150.

100. Defendants repeatedly violated provisions of G.L. c.  149 § 148 by failing to pay the plaintiff all wages earned within a timely manner. Mass. Gen. Laws ch. 149 § 150.

101. Defendant is further liable for loss of wages and treble damages, costs and attorneys fees for violations of G.L. c.  148 and 148A. G.L. c. 149 § 150.

## COUNT VIII
## OVERTIME VIOLATIONS
## UNDER THE FAIR LABOR STANDARDS ACT AND
## MASSACHUSETTS MINIMUM FAIR WAGES ACT
## AGAINST COVERALL AND SUNRISE

102. Plaintiff realleges the facts set forth in paragraphs 1 through 101 above, and incorporate them by reference as duly set forth herein.

103. Plaintiff received no overtime compensation for the hours worked beyond forty hours each week. G.L. c. 151 § 1A.

104. Any agreement between the plaintiff and employer to work for less than such overtime rate of compensation shall be no defense to such action.

105. Defendants repeatedly violated the provisions the Fair Labor Standards Act, 29 U.S.C. §

17

207 and G.L. c. 151, § § 1A & 1B, by employing the plaintiff for workweeks longer than

forty (40) hours without full compensation for all hours in excess of forty (40) hours in

said workweeks, at rates not less than one and one half times (1 ½) the regular rate at

which they were employed. 29 U.S.C. § 207(a)1 and G.L. c. 151 § 1B.

106.    Defendants are further liable to Plaintiff for an award of actual, triple or double damages

together with costs and reasonable attorneys fee's as specifically authorized by 29 U.S.C.

§ 216 and G.L. c. 151 § 1B.

## COUNT IX
## BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

107.    Plaintiff realleges the facts set forth in paragraphs 1 through 106 above, and incorporate

them by reference as duly set forth herein.

108.    Defendants are liable to the Plaintiff for terminating Plaintiff with without good cause

and with intent to deprive Plaintiff of benefits she has earned but not received in breach

of the implied covenant of good faith and fair dealing.

## PRAYERS FOR RELIEF

WHEREFORE, cause having been shown, plaintiff demands judgment ordering the following:

1.    Compensation for services rendered an equal amount as liquidated and  treble damages,

attorney fees and costs as provided by G.L. c. 93A § 9(4).

2.    Payment of unpaid wages found by the Court to be due the employee an equal amount as

18

liquidated and  treble damages, attorney fees and costs as provided by 29 U.S.C. § 216;

G.L. c.  151 § 1B and G.L. c. 149 § 150.

3.    Entering judgment for double or triple amounts awarded and for reasonable attorney's

fees pursuant to G.L. c. 93A.

4.    Grant such additional or equitable relief as it may deem just and proper.

Date: 5/24/05  (OF FILING)

Respectfully submitted
Rhina Alvarenga,
By her attorney,

Jennifer L. Huggins
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114
617/ 603-1810
BBO#: 642252

19

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss

Superior Court
CIVIL ACTION NO. _____

**05-1782**

Rhina Alvarenga,       )
    Plaintiff       )
           )
v.       )
           )
Coverall Cleaning Concepts, )
Coverall of North America;   )
Coverall of Boston,       )
Joseph J. Falbo,       )
Greg Liminelli,       )
Sunrise Senior Living, Inc.   )
Sunrise of Arlington,       )
Patricia Blackburn       )
    Defendants.       )
_____ )

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

MAY 2 4 2005

Edward J. Sullivan
CLERK

### PLAINTIFF'S STATEMENT OF DAMAGES

Plaintiff demands relief as follows:

1. That the Plaintiff be awarded unpaid wages and overtime in the amount of $19, 654.11

2. That the Plaintiff be awarded an additional amount in liquidated or treble damages.

3. That Plaintiff be awarded reasonable attorney fees and costs.

4. That the Court award such other, further or different relief as it determines just.

               Respectfully submitted
               Rhina Alvarenga,
               By her attorney,

Jennifer L. Huggins, Esq.
Staff Attorney
Greater Boston Legal Services
197 Friend St.
Boston, MA 02114
617/ 603-1810
BBO#: 642252

# Commonwealth of Massachusetts
## County of Middlesex
## The Superior Court

CIVIL DOCKET# **MICV2005-01782-A**

RE:   **Alvarenga v Coverall Cleaning Concepts et al**

TO: Jennifer Lynne Huggins, Esquire
Greater Boston Legal Services
197 Friend St
Boston, MA 02114

## TRACKING ORDER - F TRACK

You are hereby notified that this case is on the **fast (F) track** as per Superior Court
Standing Order 1-88. The order requires that the various stages of litigation described
below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                  DEADLINE

| | |
|---|---|
| Service of process made and return filed with the Court | 08/22/2005 |
| Response to the complaint filed (also see MRCP 12) | 10/21/2005 |
| All motions under MRCP 12, 19, and 20 filed | 10/21/2005 |
| All motions under MRCP 15 filed | 10/21/2005 |
| All discovery requests and depositions completed | 03/20/2006 |
| All motions under MRCP 56 served and heard | 04/19/2006 |
| Final pre-trial conference held and firm trial date set | 05/19/2006 |
| Case disposed | 07/18/2006 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be
notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline
for filing return of service.**
This case is assigned to session **A sitting in Rm 12A (Cambridge) at Middlesex Superior
Court.**

Dated: 05/25/2005

Edward J. Sullivan
Clerk of the Courts
BY: William Smith
Assistant Clerk

Location: Rm 12A (Cambridge)
Telephone: 617-494-4010 EXT 4341

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                      Superior Court
                                                   Civil Action No. MICV2005-01782-A

Rhina Alvarenga,
                      Plaintiff,

v.                                                 **AMENDED COMPLAINT**

Coverall of North America d/b/a Coverall
Cleaning Concepts and Coverall of Boston,
Sunrise Senior Living, Inc. d/b/a Sunrise of
Arlington,
                      Defendants.

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

AUG 0 8 2005

CLERK

## INTRODUCTION

Plaintiff, Rhina Alvarenga, is a janitor by trade. From November 2002 until May 2003,

Ms. Alvarenga provided janitorial services to Sunrise of Arlington, an assisted living facility for

elderly adults. In early May 2003, Sunrise told Ms. Alvarenga that if she wished to continue to

work at Sunrise, then she would be required to enter into a franchise agreement with Coverall of

Boston. Coverall subsequently persuaded Ms. Alvarenga to purchase a franchise for the

exorbitant sum of $10,500, most of which was financed by Coverall at a 12% annual interest

rate. In exchange, Ms. Alvarenga received nothing beyond the opportunity to perform the same

work she had always performed at Sunrise. Moreover, Ms. Alvarenga soon discovered that,

contrary to Defendants' representations, she would be paid less than $1,500 per month for work

that would require more than 80 hours a week to perform.

Ms. Alvarenga is an immigrant whose first language is Spanish. She has no advanced

education, and she has no experience with franchise agreements or other business deals.

Coverall well knew, and expected, that Ms. Alvarenga would not understand the terms of the

complicated franchise agreement or the risks associated with that agreement. Coverall, however, failed to advise Ms. Alvarenga to seek legal counsel or other advice before signing the agreement. Instead, Coverall, through its agents and representatives, convinced Ms. Alvarenga to rely on its numerous misrepresentations concerning the purchase of a franchise. Ms. Alvarenga never would have purchased the franchise had she understood that, in fact, she was paying a huge sum of money to Coverall for the "opportunity" to work more than 80 hours per week for less than minimum wage. When Ms. Alvarenga discovered that she had been misled by Coverall and that Coverall had no intention of fully compensating her for her services, she sought to cancel the franchise arrangement and recover her losses. Instead of compensating Ms. Alvarenga for the services she had performed, Coverall suddenly claimed that Ms. Alvarenga was in breach of the franchise agreement because Sunrise had found her performance to be inadequate.

Coverall and Sunrise's conduct violates several provisions of Massachusetts statutory and common law. As a result of Defendants' conduct, Ms. Alvarenga has suffered damages of at least $19,654.11, which are subject to trebling under Massachusetts law. She also is entitled to recover her attorneys fees and costs, and to rescission of the unlawful franchise agreement.

## JURISDICTION AND VENUE

1.       This Court has jurisdiction pursuant to Massachusetts G.L. c. 212, §§ 1, 4; the Massachusetts Minimum Fair Wages Law, G.L. c. 151 §§ 1, 19, and 20; the Massachusetts Weekly Payment of Wages Law, G.L. c. 149 § 148; and Massachusetts G.L. c. 93A § 9(1).

2.       Venue is proper in this Court pursuant to G.L. c. 223 § 1.

## PARTIES

3.     Plaintiff, RHINA ALVARENGA, is and was at all times relevant to this action a resident of the City of Somerville, Massachusetts, Middlesex County.

4.     Defendant, COVERALL OF NORTH AMERICA, INCORPORATED d/b/a COVERALL CLEANING CONCEPTS and COVERALL OF BOSTON is a foreign corporation, whose principal office is located at 500 West Cypress Creek Road, Suite 580, Fort Lauderdale FL 33309, and whose registered agent in Massachusetts is Corporate Creations Network, Inc. located at 18 Tremont Street, Suite 146 Boston, MA 02108. COVERALL OF BOSTON is located at 105 Central Street, Suite 110, Stoneham, Massachusetts 02180. Defendant Coverall of North America, Inc. d/b/a Coverall Cleaning Concepts and Coverall of Boston (collectively, "Coverall") is the owner and franchisor of the registered trademarks and trade names Coverall Cleaning Concepts and Coverall of North America. Coverall licenses various persons in the Commonwealth of Massachusetts and elsewhere in the United States to use its name and to perform commercial janitorial services.

5.     Defendant SUNRISE SENIOR LIVING, INCORPORATED d/b/a SUNRISE OF ARLINGTON ( collectively referred to as "Sunrise") is a foreign corporation whose principal place of business located at 7902 West Park Drive, McLean, Virginia 22102, and whose registered agent in Massachusetts is CT Corporation Systems located at 101 Federal Street, Boston MA 02110. SUNRISE OF ARLINGTON is located at 1395 Massachusetts Avenue, Arlington, Massachusetts 02476. Upon information and belief, defendant Coverall contracted with defendant Sunrise to be the exclusive supplier of janitorial services at Sunrise of Arlington.

3

## STATEMENT OF FACTS

### *Defendants Induce Ms. Alvarenga to Purchase a Coverall Franchise*

6.      Ms. Alvarenga worked as a janitor at Sunrise, an assisted living complex for elderly adults, beginning in November 2002. From November 2002 until May 2003, she worked there for another Coverall franchisee.

7.      In early May 2003, Sunrise told Ms. Alvarenga that it wished to hire her directly, but that because of an agreement with Coverall, she must pay for a franchise agreement in order to continue to work at Sunrise. Sunrise encouraged Ms. Alvarenga to speak to Coverall about becoming a franchisee.

8.      On or about May 29, 2003, Coverall persuaded Ms. Alvarenga to purchase a franchise agreement with Coverall in order to work for Coverall as a janitor with the privilege of using Coverall's name.

9.      On May 29, 2003, Joseph J. Falbo, the Regional Director of Coverall Cleaning Concepts' Boston Support Center, presented Ms. Alvarenga with a pre-printed, 24-page form franchise agreement. A true copy of this agreement is attached as Exhibit A and incorporated by reference.

10.     The agreement provided, among other things, that Coverall would offer Ms. Alvarenga custodial jobs with revenues of at least $1,500 per month. To purchase the franchise, Ms. Alvarenga had to pay Coverall $10,500 -- $3,800 up front and $6,700 which she was required to borrow from Coverall and repay with a 12% rate of interest.

11.     Ms. Alvarenga first saw the franchise agreement on May 29, 2003. She was required to sign it that day.

4

12.     Ms. Alvarenga's first language is Spanish, and she speaks only simple,

conversational English. She has no advanced formal education and no experience with franchise

agreements or other business deals.

13.     Coverall did not allow Ms. Alvarenga to review the franchise agreement, or

advise her to seek legal or other counsel before signing it. Instead, Mr. Falbo made oral

representations as to the content of the agreement and then asked Ms. Alvarenga to sign it along

with other documents, including the loan note and documents which purport to confirm receipt

of policy manuals, circulars and disclosure statements.

## Coverall's Misrepresentation of the Terms of the Franchise Agreement

14.     The representations Coverall made through its agents, representatives and

brochures, which led the Ms. Alvarenga to purchase this franchise, included, but were not limited

to, the following:

> (a)     Coverall would offer profitable accounts to Ms. Alvarenga.

> (b)     From the knowledge and experience of Coverall, the Sunrise account
> would be profitable.

> (c)     Coverall would provide all of the administrative and managerial services
> which, according to Coverall, were required of a franchisor.

> (d)     Coverall franchises are profitable, and Ms. Alvarenga could anticipate a
> profitable and successful business career as a Coverall franchisee.

> (e)     Coverall maintained the exclusive right to bill for the Ms. Alvarenga's
> services, which contemplated a continuing and close relationship with its franchisees.

> (f)     Coverall would make full disclosure to its franchisees of all material facts
> with respect to their relationship and franchise operations.

5

(g)     Franchisees could place trust and confidence in Coverall to deal fairly with and protect the interests of its franchisees.

(h)     Ms. Alvarenga would be able negotiate the number of hours and amount of compensation she would receive for her janitorial services.

15.     Though Ms. Alvarenga had previously worked as a janitor, she had no prior experience in the operation of a janitorial franchise or any other business.

16.     Ms. Alvarenga was relying, and Coverall knew she was relying, on Coverall's financial and management assistance to insure the profitability of the janitorial agreement.

## *Defendants' Failure to Fully Compensate Ms. Alvarenga for her Work at Sunrise*

17.     After the franchise agreement was signed on May 29, 2003, Coverall offered Ms. Alvarenga work as a janitor at Sunrise of Arlington, the senior living complex where Ms. Alvarenga had been working for the previous six months.

18.     Mr. Falbo told Ms. Alvarenga that she would receive $1,485 per month, and that she was expected to work five (5) days a week for five (5) hours a day performing janitorial services at Sunrise, which amounted to $13.81 per hour of work.

19.     Ms. Alvarenga told Mr. Falbo that the work at Sunrise usually took more than 25 hours a week to complete; however, Mr. Falbo assured Ms. Alvarenga that Coverall's agreement with Sunrise was only for 25 hour per week of janitorial services.

20.     Mr. Falbo also told Ms. Alvarenga that she should notify Coverall of any hours she worked beyond 25 hours per week, in which case Coverall would bill Sunrise for the additional hours of service at a rate of $13.81 per hour, and would pay that amount to her.

21.     On or about June 11, 2003, Greg Liminelli, a Coverall Field Consultant, called Ms. Alvarenga and told her she could report for work at Sunrise of Arlington.

22.    On or about June 11, 2003, when Ms. Alvarenga arrived at Sunrise, Sam Ezra, the Sunrise building supervisor, told Ms. Alvarenga that Sunrise's agreement with Coverall required Ms. Alvarenga to clean 12 to 14 rooms plus common areas each day for 7 days a week, regardless of the number of hours this work required. In addition, Mr. Ezra said that the contract allowed him to assign specific additional duties for Ms. Alvarenga to perform, with no additional compensation.

23.    Ms. Alvarenga immediately called Mr. Liminelli at Coverall to complain about the quantity of work Mr. Ezra assigned to her. Mr. Liminelli told Ms. Alvarenga to keep track of any hours she worked over 25 hours per week and that Coverall would bill Sunrise and pay Ms. Alvarenga accordingly.

24.    Each day Ms. Alvarenga arrived at work, Mr. Ezra would supervise her work and give her a list of particular cleaning tasks assigned to her in addition to her regular custodial assignments.

25.    Ms. Alvarenga complained that she alone could not complete all the tasks assigned to her by Sunrise, so Sunrise and Coverall agreed to allow her to ask a friend to assist her in these tasks; however, Ms. Alvarenga had to split her pay with the co-worker.

26.    Ms. Alvarenga was supposed to be paid once a month for all services rendered to Sunrise.

27.    Ms. Alvarenga kept track of all the hours she and her friend worked each month and sent copies of her work schedule to Mr. Liminelli; however, she never was paid for any of the work she performed over and above 25 hours per week.

28.    As Coverall failed to pay Ms. Alvarenga, she complained to Patricia Blackburn, the Director of Sunrise.

7

29.    Ms. Blackburn agreed to sign some of Ms. Alvarenga's monthly time sheets to confirm that Ms. Alvarenga and her co-worker in fact performed those hours of janitorial services at Sunrise.

30.    The timesheets show that Ms. Alvarenga and her co-worker spent an average of 81 hours each week performing janitorial services at Sunrise.

31.    However, Ms. Alvarenga received only between $752 and $1,170 per week after deductions by Coverall for worker's compensation insurance, royalty and management fees, as well as payments towards the $6,700 loan with 12% interest. In addition, Ms. Alvarenga was expected to split this compensation with her co-worker.

32.    Ms. Alvarenga also performed "special services" at Sunrise, including carpet cleaning, and she forwarded special invoices to Coverall for these services.

33.    Coverall never paid Ms. Alvarenga for these special services.

34.    Because Ms. Alvarenga received so little compensation from Coverall, she often supplemented the payment she received from Coverall with her own money to compensate her co-worker for his hours of labor at Sunrise.

35.    It became apparent to Ms. Alvarenga that Coverall had made the statements, representations, and promises alleged herein with no intention of ever honoring them.

## Coverall Declares Ms. Alvarenga in Breach of the Franchise Agreement when Ms. Alvarenga Attempts to Recover her Earned Compensation

36.    In late September 2003, Ms. Alvarenga notified Coverall and Sunrise of her wish to end the franchise agreement. She also demanded restitution for the amounts she had paid under the franchise agreement and the wages she lost as a result of the acts of Defendants. Defendants refused.

8

37.     The following day, a Coverall employee told Ms. Alvarenga that Coverall found her in breach of her franchise agreement because Sunrise had reported that the janitorial services she provided were unsatisfactory, and that Coverall would apply all future payments by Sunrise for her work to the loan she owed to Coverall.

38.     On March 4, 2005, Ms. Alvarenga, through her attorney, sent demand letters to Defendants Coverall and Sunrise pursuant to G.L. c. 93A.

39.     Defendant Sunrise did not respond to Ms. Alvarenga's G.L. c. 93A demand.

40.     Coverall failed to respond within 30 days.

41.     On May 6, 2005, Coverall responded to Ms. Alvarenga's demand letter, but failed to make a reasonable offer for settlement.

42.     Coverall's response was made in bad faith, and with knowledge that it had violated G.L. ch. 93A. Coverall has settled several actions similar to this action for amounts substantially exceeding its offer to Ms. Alvarenga. Coverall also has paid a civil penalty of $100,000 pursuant to a Consent Decree in an action brought by the Federal Trade Commission concerning Coverall's franchising practices.

## COUNT I
## (FRAUD AND MISREPRESENTATION
## AGAINST COVERALL)

43.     Plaintiff restates and incorporates by reference paragraphs 1 through 42 above.

44.     The representations and statements made by Coverall and its agents and representatives were false, fraudulent, and misleading in the following respects:

         (a)     That Ms. Alvarenga would receive $1,495 per month and was only required to perform 25 hours per week of janitorial services at Sunrise for this amount.

         (b)     That Coverall had the exclusive right to bill Sunrise and would pay Ms. Alvarenga for all janitorial services performed at Sunrise above 25 hours per week.

9

(c)     That Coverall would pay Ms. Alvarenga for all "special services"

performed at Sunrise, including carpet cleaning.

(d)     That Coverall would timely pay Ms. Alvarenga, regardless of whether

payment for her services was received from Sunrise.

(e)     That accounts for janitorial services provided by Coverall to Ms.

Alvarenga would be profitable, when Coverall knew such accounts returned far too small

a profit to enable Ms. Alvarenga to earn a livelihood therefrom.

(f)     That Defendant Coverall would sell Ms. Alvarenga's franchise agreement

upon notice of her wish to end this franchise agreement.

(g)     That Ms. Alvarenga would have the rights and control of an independent

contractor over accounts offered to her by Coverall.

(h)     That Sunrise was dissatisfied with the quality of Ms. Alvarenga's

janitorial services such that Coverall could void the contract, collect the balance of the

franchise fee, and withhold further payment for services from Ms. Alvarenga.

45.     The false, fraudulent, and misleading statements mentioned above were made by

Defendant Coverall through its agents and representatives with knowledge that they were false,

fraudulent, and misleading, or with reckless disregard for their truth or falsity.

46.     In making the false, fraudulent, and misleading statements alleged herein,

Defendant Coverall through its agents and representatives acted willfully and with malice, or

with reckless disregard for the rights of Ms. Alvarenga.

47.     In making the false, fraudulent, and misleading statements alleged herein,

Defendant Coverall through its agents and representatives intended that Ms. Alvarenga rely on

these statements.

10

48.   Ms. Alvarenga placed reasonable reliance upon the representations of Coverall.

49.   At all times, Ms. Alvarenga relied on the representations of Defendant Coverall

and, but for those representations, would not have entered into the contract or purchased the

janitorial franchise.

50.   As a result of the fraudulent statements and misrepresentations of Defendant, Ms.

Alvarenga suffered damages in the amount of $19,654.11.

## COUNT II
## (VIOLATION OF MASSACHUSETTS GENERAL LAWS 93A
## BY COVERALL)

51.   Plaintiff restates and incorporates by reference paragraphs 1 through 50 above.

52.   Coverall is engaged in the conduct of a trade or business.

53.   Coverall's actions as set forth herein constitute unfair and deceptive acts or

practices declared unlawful by G.L. c. 93A § 2 and the regulations promulgated pursuant to G.L.

c. 93A § 2(c).

54.   Coverall's unfair and deceptive acts occurred primarily and substantially within

the Commonwealth.

55.   Coverall's unfair and deceptive acts were conducted knowingly and willfully.

56.   Ms. Alvarenga suffered damages as a result of Coverall's use of unfair and

deceptive acts or practices in the agreement for janitorial services with Ms. Alvarenga.

57.   On March 4, 2005, Ms. Alvarenga sent a demand letter in accordance with G.L. c.

93A, § 9.

58.   Coverall failed to respond to the demand letter within 30 days. When it did

respond, it failed to make a reasonable offer for settlement.

59.   As a consequence of the Coverall's wrongful acts and conduct, Ms. Alvarenga

suffered damages while Coverall has been and continues to be unjustly enriched.

11

## COUNT III
## (VIOLATION OF MASSACHUSETTS GENERAL LAWS 93A
## BY SUNRISE)

60.    Plaintiff restates and incorporates by reference paragraphs 1 through 59 above.

61.    Sunrise is engaged in the conduct of a trade or business.

62.    Sunrise's actions as set forth herein constitute unfair and deceptive acts or

practices declared unlawful by G.L. c. 93A § 2 and the regulations promulgated pursuant to G.L.

c. 93A § 2(c).

63.    Sunrise's unfair and deceptive acts occurred primarily and substantially within the

Commonwealth.

64.    Sunrise's unfair and deceptive acts were conducted knowingly and willfully.

65.    Ms. Alvarenga suffered damages as a result of Sunrise's use of unfair and

deceptive acts or practices in the agreement for janitorial services with Ms. Alvarenga.

66.    On March 4, 2005, Ms. Alvarenga sent a demand letter in accordance with G.L. c.

93A, § 9.

67.    Sunrise never responded to Ms. Alvarenga's demand letter. This failure to make a

reasonable offer for settlement was in bad faith and with reason to know that the acts complained

of were in violation of G.L. c. 93A.

68.    As a consequence of the Coverall's wrongful acts and conduct, Ms. Alvarenga

suffered damages while Sunrise has been and continues to be unjustly enriched.

## COUNT IV
## (RESCISSION OF FRANCHISE AGREEMENT)

69.    Plaintiff restates and incorporates by reference paragraphs 1 through 68 above.

70.    The "franchise agreement" between Coverall and Ms. Alvarenga was

unconscionable.

12

71. Ms. Alvarenga suffered damages as a result of the unconscionable contract.

72. Plaintiff demands that the contract be rescinded, and that she be restored to her

pre-contract position and awarded the reasonable value for services provided by her to Sunrise.

## COUNT V
## (BREACH OF CONTRACT AGAINST COVERALL)

73. Plaintiff restates and incorporates by reference paragraphs 1 through 72 above.

74. Ms. Alvarenga and Coverall entered into a valid and binding agreement.

75. Coverall breached the terms of that agreement.

76. Ms. Alvarenga suffered damages as a result of the breach.

## COUNT VI
## (BREACH OF FIDUCIARY DUTY AGAINST COVERALL)

77. Plaintiff restates and incorporates by reference paragraphs 1 through 76 above.

78. Defendant Coverall at all times had knowledge concerning the matters alleged

herein far superior to that possessed by Ms. Alvarenga and acted from a position of greater

economic and bargaining power. For this reason, Coverall acted, or should be held to have

acted, in the capacity of a fiduciary.

79. Coverall was under a duty to exercise the utmost good faith and fairness toward

Ms. Alvarenga in the negotiations leading to the execution of the contract, and in the

performance thereof. This fiduciary duty applies particularly with respect to royalty and

management fees, and payments for supplies and services, which sums were paid by Ms.

Alvarenga to Defendant in its capacity as fiduciary and were received by Defendant in that

capacity.

80. Coverall breached its fiduciary duties to Ms. Alvarenga, and she suffered

damages as a result.

13

## COUNT VII
## (BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING AGAINST COVERALL)

81.     Plaintiff restates and incorporates by reference paragraphs 1 through 80 above.

82.     Coverall declared Ms. Alvarenga to be in breach of the franchise agreement in

bad faith, without good cause, and with the intent to deprive Ms. Alvarenga of the benefits of

that agreement.

83.     Coverall's actions were in breach of the implied covenant of good faith and fair

dealing.

84.     Ms. Alvarenga has suffered damages as a result of Coverall's actions.

## COUNT VIII
## (VIOLATION OF MASSACHUSETTS
## MINIMUM FAIR WAGE ACT AGAINST COVERALL AND SUNRISE, G.L. c. 151 § 1)

85.     Plaintiff restates and incorporates by reference paragraphs 1 through 84 above.

86.     Ms. Alvarenga performed services for Coverall and Sunrise primarily for their

benefit and subject to their control.

87.     Coverall and Sunrise permitted Ms. Alvarenga to work as a janitor.

88.     Coverall and Sunrise failed to pay Ms. Alvarenga a fair wage in violation of G.L.

c. 151 § 1.

89.     As a result of Coverall and Sunrise's actions, Ms. Alvarenga suffered damages.

90.     On May 23, 2005, Ms. Alvarenga received a private right of action by the

Massachusetts Attorney General's office pursuant to G.L. c. 149 § 150.

91.     Coverall and Sunrise are liable for loss of wages, treble damages, costs and

attorneys fees pursuant to G.L. c. 151 § 1B.

92.     Coverall and Sunrise are joint employers of Ms. Alvarenga and therefore are

jointly and severally liable under the Massachusetts Minimum Fair Wage law, G.L. c. 151.

14

## COUNT IX
## (VIOLATION OF TIMELY PAYMENT OF WAGES STATUTE AGAINST COVERALL AND SUNRISE, G.L. c. 149 § 148)

93.     Plaintiff restates and incorporates by reference paragraphs 1 through 92 above.

94.     Ms. Alvarenga performed services for Coverall and Sunrise primarily for their

benefit and subject to their control.

95.     Coverall and Sunrise permitted Ms. Alvarenga to work as a janitor.

96.     Coverall and Sunrise repeatedly violated G.L. c. 149 § 148 by failing to pay Ms.

Alvarenga all wages she earned in a timely manner.

97.     As a result of Coverall and Sunrise's actions, Ms. Alvarenga suffered damages.

98.     On May 23, 2005, Ms. Alvarenga received a private right of action by the

Massachusetts Attorney General's office pursuant to G.L. c. 149 § 150.

99.     Coverall and Sunrise are liable for loss of wages, treble damages, costs and

attorneys fees pursuant to G.L. c. 149 § 150.

100.    Coverall and Sunrise are joint employers of Ms. Alvarenga and therefore are

jointly and severally liable under the Timely Payment of Wages Act, G.L. c. 149 § 148.

## COUNT X
## OVERTIME VIOLATIONS UNDER THE MASSACHUSETTS MINIMUM FAIR WAGES ACT AGAINST COVERALL AND SUNRISE, G.L. c. 151, §§ 1A & 1B

101.    Plaintiff restates and incorporates by reference paragraphs 1 through 100 above.

102.    Ms. Alvarenga performed services for Coverall and Sunrise primarily for their

benefit and subject to their control.

103.    Coverall and Sunrise permitted Ms. Alvarenga to work as a janitor.

104.    Defendants repeatedly violated G.L. c. 151, §§ 1A & 1B by employing Ms.

Alvarenga for workweeks longer than forty (40) hours without full compensation for all hours in

15

excess of forty (40) hours in said workweeks at rates not less than one and one half times (1 ½) the regular rate at which they were employed.

105.    Ms. Alvarenga is not an exempt employee pursuant to G.L. c. 151 § 1A.

106.    As a result of Coverall and Sunrise's actions, Ms. Alvarenga suffered damages.

107.    Coverall and Sunrise are liable for an award of actual, double or treble damages, costs and attorneys' fees as authorized by G.L. c. 151 § 1B.

108.    Coverall and Sunrise are joint employers of Ms. Alvarenga and therefore are jointly and severally liable under the Minimum Fair Wages Act, G.L. c. 151, §§ 1A & 1B.

## COUNT XI
## ACTION FOR SERVICES RENDERED
## AGAINST COVERALL AND SUNRISE

109.    Plaintiff restates and incorporates by reference paragraphs 1 through 108 above.

110.    Coverall and Sunrise agreed to pay to Ms. Alvarenga for all hours she worked at a rate of $13.81 per hour.

111.    Ms. Alvarenga thereafter performed all of her obligations under the agreement but Coverall and Sunrise have refused to pay Ms. Alvarenga for her services.

112.    As a result of Coverall and Sunrise's conduct, Ms. Alvarenga suffered damages and Defendants have been and continue to be unjustly enriched.

## PRAYERS FOR RELIEF

WHEREFORE, cause having been shown, the Plaintiff respectfully requests that the Court grant the following relief:

1.    Award actual damages equal to the amount paid by the Plaintiff for the franchise and compensation for services rendered with interest, plus treble damages, attorney fees and costs as provided by G.L. c. 93A § 9(4).

16

2.     Payment of unpaid wages found by the Court to be due the employee with

interest, plus treble damages, attorney fees and costs as provided by 29 U.S.C. § 216, G.L. c.

151 § 1B, and G.L. c. 149 § 150.

3.     Grant such additional or equitable relief as it may deem just and proper.

The Plaintiff hereby demands a jury trial on all claims so triable.

                                          RHINA ALVARENGA
                                          By her attorneys,

                                          _Melissm  allison_

                                          Jennifer L. Huggins (BBO #642252)
                                          Greater Boston Legal Services
                                          197 Friend Street
                                          Boston, MA 02114
                                          617.603.1810

                                          Daryl J. Lapp (BBO #554980)
                                          Melissa C. Allison (BBO #657470)
                                          PALMER & DODGE LLP
                                          111 Huntington Avenue at Prudential Center
                                          Boston, MA 02199-7613
                                          617.239.0100

Dated: August 8, 2005

# COVERALL CLEANING CONCEPTS®

# JANITORIAL FRANCHISE AGREEMENT

COVERALL CLEANING CONCEPTS®
JANITORIAL FRANCHISE AGREEMENT
TABLE OF CONTENTS

| Paragraph | | Page No. |
|---|---|---|
| - | Information Regarding Franchisee and Franchise Package | 1 |
| 1 | Use of Trade Name, Service Marks, and Confidential and Proprietary Information | 2 |
| 2 | Term and Renewal | 3 |
| 3 | Territory | 3 |
| 4 | Initial Business and Guarantee | 3 |
| 5 | Additional Dollar Volume | 5 |
| 6 | Business and Management Services Provided By Coverall | 5 |
| 7 | Franchise and Other Fees | 7 |
| 8 | Refunds | 9 |
| 9 | Franchisee Business Operations | 10 |
| 10 | Franchisee Service to Customers | 11 |
| 11 | Keys and Security | 13 |
| 12 | Restriction on Use of Confidential Information | 13 |
| 13 | Franchisee is an Independent Contractor | 14 |
| 14 | Insurance | 14 |
| 15 | Indemnification | 16 |
| 16 | Assignment | 16 |
| 17 | Termination | 17 |
| 18 | Procedures After Termination | 18 |
| 19 | Non-Competition | 19 |
| 20 | Informal Dispute Resolution | 20 |
| 21 | Additional Remedies for Breach | 20 |
| 22 | Time to Assert Claims | 22 |
| 23 | Governing Law | 22 |
| 24 | Entire Agreement | 22 |
| 25 | Amendment | 22 |
| 26 | Waivers | 22 |
| 27 | Force Majeure | 22 |
| 28 | Severability | 22 |
| 29 | Notices | 22 |
| 30 | Successors Bound | 23 |
| 31 | Survival of Provisions | 23 |
| 32 | Captions | 23 |
| 33 | Guaranty | 23 |

**FRANCHISE #** *F763*

NOTE: This is for new agreements
(not for transfers or renewals)

## COVERALL NORTH AMERICA, INC. dba COVERALL OF BOSTON
## 105 Central Street, Suite 1100, Stoneham, Massachusetts 02180

### JANITORIAL FRANCHISE AGREEMENT

THIS AGREEMENT (hereinafter referred to as "Agreement") is entered into by and between Coverall North America, Inc., dba Coverall of BOSTON , a corporation organized and existing under the laws of the State of Delaware, hereinafter referred to as "Coverall," and *RHINO ALVARENGA* hereinafter referred to (singularly or collectively) as "Franchisee" for the purposes of allowing Franchisee to operate a business as a Franchisee of Coverall. Franchisee is doing business as a:

[x] Sole Proprietorship   [ ] Partnership   [ ] Corporation, incorporated under the laws of

Effective Date of Agreement: **The effective date of this Agreement will be the date it is signed by the Regional Director and Franchisee; provided, however, that if the Agreement is not signed by a corporate officer as provided on the last page of this Agreement, then the Agreement will not be effective.**

Initial Franchise Fee: *10,500*

Down Payment: *3800*

Amount Financed by Coverall: *6700*
(with interest at 12% per annum)

Term of Franchise ("Initial Term"): 20 years
**Franchise Package**

Financing Period: *2 Y* months
(equal consecutive monthly installments of principal & interest)

Package Purchased: P- *1500*

Amount of Each Monthly Installment: *315.39*

Monthly $ Volume of Initial Business: $ *1500*
Initial Business Offering Period: *120* days
(in which Initial Business shall be offered after Franchisee's completion of initial training - calculated per Paragraph 4A hereof)

The first installment of principal and interest shall be paid on the last day of *SEPT* , *03*

**REPRESENTATIONS** Franchisee makes the following representations: If Franchisee is a sole proprietor, partnership, or corporation, there is set forth below, as the case may be, the name, address and other information of the sole proprietor, of each partner of the partnership, or of each shareholder in the corporation:
Franchisee Name: *RHINO ALVARENGA*
Address: *29 GRANT ST APT 2 SOMERVILLE, MA 02145*
Phone: *617-718-2865*   Social Security Number: *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* Percentage Interest*:

Franchisee Name:
Address:
Phone:   Social Security Number:   Percentage Interest*:

Franchisee Name:
Address:
Phone:   Social Security Number:   Percentage Interest*:

*As to a partnership, this shall indicate the percent owned in the capital and/or profits of the partnership. As to a corporation, this shall indicate the percent owned of the outstanding stock of the corporation.

Federal I.D. # of Franchisee if a partnership or corporation:

Address for mailing notices to Franchisee:

Franchisee acknowledges receipt from Coverall of a Franchise Disclosure Document which describes the Franchise to be operated pursuant to the terms of this Agreement. Franchisee acknowledges receipt of a completed copy of this Agreement at least five (5) business days prior to its execution.

_____   *5/29/03*   _____   _____
**Franchisee's Signature**    **Date**      **Franchisee's Signature**    **Date**

## RECITALS:

A.    Coverall is the owner of certain trademarks and service marks, including the marks "Coverall®" and "Coverall Cleaning Concepts®;" and

B.    Coverall, as the result of the expenditure of time, skill, effort, and money, has developed and owns a distinctive system ("the System") relating to the establishment and operation of janitorial cleaning service businesses. The distinguishing characteristics of the System include, without limitation, methods, procedures, standards, and equipment for janitorial cleaning and business services; procedures for quality control and customer assistance; marketing concepts; bidding, contracting, and billing procedures; training, assistance, advertising, and promotional programs; all of which may be changed, improved, and further developed by Coverall from time to time; and

C.    Coverall, as part of its business operations, licenses the use of its name and service mark to Coverall franchised professional cleaning and maintenance businesses which provide cleaning, maintenance and janitorial services to commercial cleaning customers, and provides Coverall's franchisees with the various components of the System for use in their Coverall businesses; and

D.    Coverall, as part of its business operations, obtains customer accounts, which are contracts between Coverall and cleaning customers, under which Coverall delegates the performance of services to its franchisees; and

E.    Franchisee desires to utilize the trade name, service mark, reputation, techniques, and the System of Coverall, as a Coverall franchisee, in operating a commercial janitorial cleaning service business.

## TERMS OF AGREEMENT

NOW, THEREFORE, for and in consideration of the mutual promises and covenants contained in this Agreement, the parties agree as follows:

1.    USE OF TRADE NAME, SERVICE MARKS, AND CONFIDENTIAL AND PROPRIETARY INFORMATION.

A.    The License.  Coverall grants to Franchisee a non-exclusive license, upon the terms and conditions contained in this Agreement, to use and display "Coverall®," "Coverall Cleaning Concepts®," "Coverall and Design®," "The Art And Science Of Cleaning®," "Making Your World A Cleaner Place®," "When It Has to be Absolutely Clean®," "Customers for Life®," and/or such other names and designs as Coverall may from time to time designate, as Franchisee's trademarks, service marks, trade names, logos, labels and designs (the "Marks"), but only in connection with the rendering of Franchisee's services in the commercial janitorial service business in the territory as described in Paragraph 3, and only on those items and in the form approved by Coverall.  Nothing contained in this Agreement shall be construed to permit the use by Franchisee of the Marks in any medium, in any other manner or for any other purpose except as expressly provided.  Coverall expressly reserves all rights with respect to the Marks, as well as to any trade secrets, processes, methods of operation, and goodwill granted to Franchisee.  Accordingly, Coverall reserves the sole right to institute administrative proceedings and/or litigation regarding the Marks.  The Franchisee shall not have any right, title, or interest in or to the Marks, trade secrets, processes, methods of operation, or goodwill of Coverall.  Coverall further reserves the right to modify, discontinue and/or change the Marks, name, and/or design.  In the event of modifications, changes, or discontinuations, Franchisee will upon receipt of written notice, and at its sole expense, promptly discontinue use of the discontinued name and/or Marks and adopt and promptly begin use of the new or modified name and/or Marks, and promptly implement the modifications and/or changes to the System.  Franchisee expressly and specifically waives any claims, demands, or damages arising from or related to the loss of the Marks (or any variation) and/or the loss of association with or identification with the Mark "Coverall®" arising out of Coverall's exercise of the above reservation.  Franchisee agrees to use only the Marks designated by Coverall and to use the Marks only in the manner approved by Coverall.  Franchisee agrees not to use the Marks or any name or design confusingly similar to the Marks in Franchisee's corporate or other legal or business name.  Franchisee must promptly tell Coverall if Franchisee learns about unauthorized use of Coverall's confidential, proprietary, and copyrighted information.

B.    Termination of License.  Upon the expiration or termination of this Agreement and the license for any reason, Franchisee agrees that it will, immediately discontinue the use of the Marks, deliver and surrender to

Exhibit A.1 to
Janitorial Franchise Offering Circular
Page 2 of 24



Initial    Initial

(i) If Franchisee refuses to accept any customer account(s) timely offered to fulfill the Initial Business, Coverall shall be deemed to have fulfilled its obligations to offer customer accounts during the Initial Business Offering Period.

(ii) However, Coverall shall remain obligated to offer, within a reasonable period of time after the expiration of the Initial Business Offering Period (identified on Page 1), the amount of gross monthly dollar volume refused by Franchisee; provided, however, that if Franchisee unreasonably refuses to accept customer accounts offered within a reasonable time after the Initial Business Offering Period has expired, Coverall shall be deemed to have fulfilled its obligation to provide Initial Business for the dollar volume of the customer account(s) which has been unreasonably refused by Franchisee.

(iii) If Franchisee chooses to discontinue servicing a customer account(s) accepted as part of the Initial Business, Coverall shall be deemed to have fulfilled its obligation to provide Initial Business for the dollar volume of the abandoned customers account(s).

The time within which Coverall shall offer the Initial Business to Franchisee (the "Initial Business Offering Period," identified on Page 1), is calculated from the date of completion of Initial Training as follows:

> (1)     For Initial Business packages up to and including $3,000 gross dollar volume per month (all packages up to and including the P-3,000), one hundred twenty (120) days;

> (2)     For Initial Business packages exceeding $3,000 gross volume per month (all packages larger than the P-3000), one hundred twenty (120) days plus an additional thirty (30) days for each $1,000 (or portion thereof) in gross dollar volume per month over the initial $3,000.

Example:
  Franchise Package:   $5,000
  Initial Business Offering Period: 180 days from completion of training
  Accordingly, if Franchisee purchases a P-5000 and completes Initial Training on March 1, all $5,000 in Initial Business must be offered on or before August 28 of that same year.

### B.    Guarantee

Coverall provides a limited guarantee for the Franchisee's Initial Business. The guarantee applies only to customers lost through no fault of the Franchisee. Customers lost because of faulty workmanship, Franchisee's lack of trustworthiness or any other defaults by Franchisee are not guaranteed. Franchisee may qualify for either a twelve (12) month guarantee or a six (6) month guarantee, which begins on the date that Franchisee begins servicing the customer. If Franchisee qualifies for either guarantee, Coverall will replace the dollar volume of the lost customer, with one or more customers of equal dollar volume. If the replacement customer(s) has a dollar volume in excess of that lost by Franchisee, Franchisee may have to pay Coverall for the excess dollar volume.

This Initial Business guarantee is provided only under the following conditions:

(1) To qualify for the 12 month guarantee, for each month from the date Franchisee begins servicing an account, Franchisee must perform an inspection with the customer, and submit the Inspection Report, which must be signed by the customer, to Coverall no later than the 5th day following the inspection. *Franchisee must do all 12 inspections to qualify for the 12 month guarantee.*

(2) If Franchisee chooses not to perform the inspections, or if Franchisee fails to do an inspection in any month or fails to timely submit a properly completed Inspection Report, then Franchisee only qualifies for a 6 month guarantee.

(3) Dollar volume replaced by Coverall under either guarantee is only guaranteed to the extent that there is time remaining under the original guarantee. For example, if Franchisee loses an account after three months and Franchisee qualifies for the 6 month guarantee, the replacement account is only guaranteed for the time remaining, 3 months.


Initial    Initial

designee of Franchisee to attend the Initial Training instead of the person(s) signing this Agreement. Up to two employees of Franchisee, approved by Coverall, may also attend the Initial Training. There shall be no charge for the Initial Training.

(2)    Additional Training. Any training to be provided to Franchisee by Coverall after the Initial Training, is "Additional Training." Additional Training shall include, but shall not be limited to, any training course offered in the Initial Training, or any other training provided by Coverall to Franchisee and/or its approved employee(s). Additional Training shall also include courses introducing new methods developed after the Initial Training. Franchisee's Additional Training may be offered through personal consultation and/or through group seminars. Personal consultations will be scheduled at the request of Franchisee and may be conducted by telephone or in person. The frequency and scheduling of group seminars will be determined at the sole discretion of Coverall. Additional Training shall be attended as provided in Paragraph 9A. The cost and method of payment for Additional Training shall be as provided in Paragraph 7F.

(3)    Retraining of Franchisee. If (i) within a sixty (60) day period any two customers being serviced by the Franchisee complain to Coverall about Franchisee's faulty workmanship, lack of trustworthiness, or any other claimed default by Franchisee, or (ii) if at any time any customer being serviced by the Franchisee cancels Franchisee's services for faulty workmanship, lack of trustworthiness, or other default under that customer's account contract, or (iii) if, pursuant to Paragraph 10B of this Agreement, Coverall discontinues Franchisee's services to a customer, Coverall may, in any of these events, require retraining of Franchisee. In the event of retraining, the time within which to offer or provide any remaining Initial Business and/or Additional Dollar Volume will be suspended from the time Franchisee is requested to attend retraining until Franchisee completes retraining to Coverall's satisfaction. Retraining is Additional Training, and the Franchisee will be charged an Additional Training fee, in accordance with the provisions of Paragraph 7F.

B.    Promotional and Sales Materials. Coverall shall make available to Franchisee, at Franchisee's expense, promotional or sales materials for use in developing Franchisee's business.

C.    Billing, Collection, and Records. Coverall has the exclusive right to perform all billing for services and supplies provided by Franchisee. All customer payments made to Coverall and all credits due Franchisee shall be applied, in whole or in part, to Franchisee's then due or past due obligations under this Agreement and all other agreements, present and future, between Coverall and Franchisee. At the beginning of each month, Coverall shall invoice and collect payment from the customers for all services and supplies provided by Franchisee. On the last day of the month (if the last day of the month falls on a weekend and/or holiday, payment will be made on the next business day) following the month in which the services and supplies were provided by Franchisee, Coverall will pay Franchisee amounts collected from customers, excluding amounts retained by Coverall on Strategic Accounts, less amounts due Coverall for the fees described in Paragraphs 7 and 14, as well as note payments, transfer fees, equipment lease payments, advances, and any other amounts due Coverall or any third party lender through whom Franchisee has financed any purchase from Coverall.

If the services performed by Franchisee on any Coverall customer account(s) are discontinued for any reason, unless the customer account(s) is guaranteed as provided in Paragraphs 4 and 5 above, Coverall shall have the right to apply the entire amount of any payment subsequently received by Coverall from the customer account(s) no longer serviced by Franchisee to the balance (principle and/or interest) of any amount owed by Franchisee to Coverall, including but not limited to, promissory note(s), line of credit or any other financing provided to Franchisee by Coverall. Coverall shall also have the right but not the obligation, to pay any amount remaining after applying the payment to Franchisee's obligations to Coverall, to any third party lender from whom Franchisee borrowed funds to finance any purchase from Coverall. Nothing contained in this Paragraph 6C, however, shall be construed to release the Franchisee from its obligations to Coverall for any amount remaining due after applying the funds received from the discontinued customer account(s).

Coverall shall be entitled to recover from Franchisee all reasonable attorneys' fees, court costs, and expenses, and out-of-pocket costs which may be incurred by Coverall in enforcing payment by any customer accounts and/or payment by Franchisee and Franchisee's lenders, guarantors, or others. Coverall may, in its sole discretion, assign to Franchisee (in the form of a written assignment agreement) the right to enforce payment on any delinquent

B. Sales and Marketing Fee. A sales and marketing fee for additional dollar volume provided in accordance with Paragraph 5 shall be charged pursuant to this Paragraph 7B. The sales and marketing fee for each customer account or accounts shall be payable at the time an additional customer account or accounts are accepted by Franchisee. If the sales and marketing fees exceed $150.00, Coverall may agree to finance Franchisee's purchase(s) of additional dollar volume. The amount financed by Coverall shall be payable in equal monthly installments of principal and interest at the rate of twelve percent (12%) per annum over the period of time agreed upon by Franchisee and Coverall, which period shall not exceed twenty-four (24) months, unless financing is provided, at Coverall's discretion, through the line of credit described in Paragraph 7G or by a third party lender. Payment will commence on the last day of the first month (if the last day of the month falls on a weekend and/or holiday, payment will be made on the next business day) following the month that Franchisee begins servicing the account related to the amount financed, unless the purchase is financed through a line of credit, in which event, repayment shall be in accordance with the provisions of Paragraph 7G, or pursuant to the terms and conditions of any third party financing. Franchisee may be required to execute a promissory note, in a form substantially similar to that attached as Exhibit B, reflecting the amount financed.

The sales and marketing fee shall be calculated as set forth in the Coverall Policy and Procedure Manual, as it may from time to time be modified or revised by Coverall.

C. Royalty. A royalty in an amount equal to five percent (5%) of the amount billed customers for any and all services and supplies provided by Franchisee, shall be payable monthly on the last day following the last day of the month in which the services were performed. The sum total of the royalty and management fees may, at the discretion of Coverall, be subject to minimum payments of $50 per month in the first year of operation and $100 per month thereafter. The minimum fee may be adjusted for increases in the Consumer Price Index.

D. Management Fee. A management fee, as described in Paragraph 6E, hereof, in an amount equal to ten percent (10%) of the amount billed customers for any and all services and supplies provided by Franchisee, shall be payable monthly on the last day following the last day for the month in which the services were performed.

E. Special Services Finder's Fee. A fee shall be charged for special service contracts, for example, a one-time, non-recurring contract for services such as carpet cleaning, strip and waxing, or initial cleaning. The amount of the fee shall be twenty percent (20%) of the total special services contract price, unless Franchisee sells the job to the customer and furnishes all equipment, supplies and labor, in which case no fee will be charged. The total special services contract price equals the gross revenue from the contract to Franchisee before deduction of any other fee(s) payable to Coverall. Amounts billed customers for special services are subject to royalty and management fees.

F. Additional Training Fee. A fee shall be charged for Additional Training, as that term is defined in Paragraphs 6A (2) and (3). The Additional Training fee for each Additional Training course attended by Franchisee, and/or by Franchisee's employees, shall be Fifty ($50.00) Dollars. Coverall reserves the right to change the fee for any Additional Training course by setting forth the changed fee in the Coverall Policy and Procedure Manual as it may, from time to time, be amended. The Additional Training fee shall be due at the time of the Additional Training; however, Coverall may, in its sole discretion, upon the request of Franchisee, finance this Additional Training fee so that it is payable in up to twelve (12) equal monthly installments of principal and interest (which interest shall be at the rate of twelve (12%) percent per annum). If Coverall agrees to finance this Additional Training fee, Franchisee shall, prior to the Additional Training, sign a promissory note payable to Coverall, in the amount of the Additional Training fee. Notwithstanding the above, Additional Training fees totaling less than One Hundred Fifty ($150.00) Dollars in the aggregate will not be financed, and will be due at the time of the Additional Training.

G.        Alternative Financing.  Coverall reserves the right to extend, or make available to Franchisee alternative forms of financing, including the following:

1.) Line of Credit. The term "line of credit" shall mean a monetary amount which Coverall shall make available to Franchisee, and upon which Franchisee may draw, on a continuing basis, up to the maximum limit of the line of credit, for payment of a portion of Franchisee's Initial Franchise Fee, the purchase of Additional Dollar Volume (as defined in Paragraph 5A) and/or toward payment of any other item for which Coverall agrees to provide Franchisee financing. The initial limit of the line of credit shall be determined by Coverall, and Coverall may

Exhibit A.1 to

Initial    Initial

A.    Initial Business. If Coverall does not (i) offer Franchisee, as provided in Paragraph 4A(i), all or any portion of the monthly dollar volume of Initial Business; or (ii) offer Franchisee, within a reasonable time after the expiration of the Initial Offering Period, as provided in Paragraph 4A(ii), a volume of Initial Business equal to that refused by Franchisee upon its initial, timely offer, provided Franchisee has not unreasonably rejected the post Initial Offering Period offer; or (iii) offer to replace guaranteed monthly dollar volume as provided in Paragraph 4B; then and in any event Franchisee will, upon Franchisee's request, be entitled to payment of an amount determined and payable as follows:

(1)    Determination of Amount Payable. The monthly dollar volume of Initial Business (i) not timely offered by Coverall to Franchisee under Paragraph 4A(i); or, (ii) not unreasonably refused by Franchisee under Paragraph 4A(ii); or (iii) not replaced by Coverall under Paragraph 4B, as the case may be, shall (a) be multiplied by two and eight-tenths (2.8) - the resultant figure shall be referred to as "the Gross Recalculated Amount;" (b) The current replacement cost of Franchisee's starter kit shall be subtracted from the Gross Recalculated Amount - the resultant figure shall be the "Amount Payable to Franchisee."

(2)    Payment of Amount Payable to Franchisee. If, at the time of the determination of the Amount Payable to the Franchisee, the Franchisee is indebted to Coverall, Franchisee's indebtedness shall be reduced by the Amount Payable to the Franchisee before the balance (if any) is paid to the Franchisee in cash or kind.

B.    Additional Dollar Volume. If Coverall is unable to provide or replace all or any portion of Franchisee's Additional Dollar Volume within a reasonable period of time, Franchisee's sole remedy shall be a refund of whatever sales and marketing fee was actually paid by Franchisee. If, at the time of this refund, the Franchisee is indebted to Coverall, this refund shall be applied to Franchisee's indebtedness, before the balance (if any) is paid to the Franchisee in cash or in kind.

C.    Sole Remedy. Franchisee acknowledges and agrees that the payment by Coverall to Franchisee of the Amount Payable to Franchisee, as provided in Paragraph 8A, shall be Franchisee's sole remedy in the event of Coverall's (i) failure to timely offer Initial Business; or (ii) failure to offer Franchisee, within a reasonable time after the expiration of the Initial Offering Period, a volume of Initial Business equal to that initially refused by Franchisee upon timely offer; or (iii) failure to replace guaranteed Initial Business. Franchisee further acknowledges and agrees that the refund to Franchisee, as provided in Paragraph 8B, shall be Franchisee's sole remedy in the event Coverall is unable to provide or replace any portion of Franchisee's Additional Dollar Volume. Franchisee agrees that this payment or refund is necessary as it would otherwise be difficult, if not impossible, to ascertain the damages incurred by Franchisee in the event of any failure by Coverall to timely offer or replace Initial Business, or to timely provide or replace Additional Dollar Volume. The parties agree that such payment or refund is not a penalty, but is a payment which Coverall must provide as liquidated damages as a consequence of Coverall's failure to offer or replace Initial Business, or to provide or replace Additional Dollar Volume. Upon Coverall's paying Franchisee, as provided in Paragraph 8A or 8B above as the case may be, Coverall shall be released from any obligation to offer or replace Initial Business, or to provide or replace Additional Dollar Volume, or to pay Franchisee any other damages.

9.    FRANCHISEE BUSINESS OPERATIONS.

A.    Franchisee To Attend Training Course. Franchisee shall attend the Initial Training as defined and described in Paragraph 6A(1), which is provided by Coverall to all new franchisees, and any other training courses Coverall may prescribe with respect to the needs of Franchisee or a particular customer serviced by Franchisee. The person signing this Agreement on behalf of Franchisee shall attend the Initial Training unless Coverall, in its sole discretion, agrees in writing to allow a designee of Franchisee to attend the Initial Training instead of the person signing this Agreement. Seminars shall be attended as provided in Paragraph 6A(1), although Franchisee's employees may also attend training. While there shall be no additional charge for the Initial Training, Franchisee shall be charged a fee for retaking Initial Training courses, including any retraining required under Paragraph 6A (3). The fee for the retaking of Initial Training courses and the manner of payment shall be as provided in Paragraph 7F.

B.    Franchisee to Abide by Policies and Procedures. Franchisee understands and acknowledges that every detail of the System is essential to Coverall, Franchisee, and other System franchisees in order to (i) develop and maintain quality operating standards, (ii) increase the demand for the services sold by all franchisees operating


Initial    Initial

Coverall Marks. Franchisee thus acknowledges that the requirements of this Paragraph are necessary to assure continuing public acceptance and patronage of the Coverall System.

A.    Franchisee to Contact Customer Accounts.    Customer Accounts are delegated to the Franchisee to service. In order for Coverall and the Franchisee to keep the customer accounts, Franchisee must provide satisfactory service. Communication between the Franchisee and the customer account is important for understanding the needs of the customer account and knowing whether or not the service being performed by the Franchisee is satisfactory. Therefore, it is important for the Franchisee to develop a strong relationship with the contact person at the customer accounts. To facilitate customer account retention, Franchisee shall contact each customer account serviced by Franchisee, which has regular monthly service revenues of $500 or less. For each month commencing on the date that Franchisee begins servicing the customer account, Franchisee must contact the customer account either in person or by telephone and obtain a rating of Franchisee's performance. Franchisee must complete an Account Contact Report for each customer account contacted and submit them to Coverall no later than the 5th day of the month following the contact. Should Franchisee fail to submit the Account Contact Reports required by this Paragraph 10A for any two (2) consecutive months, Coverall may remove the Franchisee from the customer account for which the Account Contact Reports were not submitted. This obligation to inspect is continuing, and is unrelated to the inspections which Franchisee must perform in order to qualify for the customer account guarantee described in Paragraphs 4B and 5B.

B.    Franchisee to Furnish Staff, Equipment, Materials, and Supplies. In consideration of the franchise fee paid by Franchisee, Coverall will provide, upon the opening of Franchisee's business, the equipment and supplies listed in Exhibit A of this Agreement. Thereafter, Franchisee will replace equipment and supplies as needed and will provide all staff, other equipment, materials, tools, and other supplies necessary to service customer accounts, including all janitorial services called for in each customer contract. In order to protect Coverall's Marks, all services will be performed in a good and workmanlike manner, satisfactorily to the customer account for which services are performed and in accordance with Coverall performance standards. Coverall may, at any time, inspect any premises serviced by Franchisee to assure that the quality of the services rendered is in accordance with Coverall standards. If Franchisee desires to cease servicing a customer account, Franchisee must give Coverall ten (10) days' written notice before ceasing service; in such event any remaining guarantee on the account shall be deemed to have been fulfilled, and Coverall shall have no obligation to replace the account.

C.    Protection of the Goodwill of the System. Coverall, the Coverall System and Marks, and Coverall's Franchisees benefit from Coverall's goodwill, which arises out of Coverall's reputation in the market place. In order to protect Coverall and its Franchisees from the harm that arises from Franchisee activities that diminish Coverall's goodwill and Marks, Franchisee agrees that Coverall has the right to discontinue Franchisee's services to any customer upon the occurrence of any of the following:

(1)    Franchisee fails to perform its obligations to the customer's satisfaction; or,

(2)    The customer has made an oral or written complaint to Coverall; or,

(3)    Coverall or the customer has given Franchisee written notice of Franchisee's failure to perform and five (5) days after delivery of the notice either the customer or Coverall is not satisfied that Franchisee has performed; or

(4)    Franchisee receives three (3) written notices of failure to perform within a period of sixty (60) consecutive days, regardless of whether the Franchisee cured the deficiencies; or

(5)    Coverall receives a request from a customer to terminate its contract; or,

(6)    Coverall receives a request from a customer to replace the Franchisee; or

(7)    Franchisee services any customer other than as a Franchisee of Coverall; or

(8)    Franchisee fails to service a customer on any two (2) occasions within a period of sixty (60) days; or



specifications relating thereto and the means and manner of offering and selling same; and, all other components, specifications, standards, requirements and duties imposed by Coverall.

Franchisee shall not at any time copy, duplicate, record or otherwise reproduce any of the foregoing confidential information or material, in whole or in part, or otherwise make same available to any third party except as authorized herein. Upon the expiration or other termination of this Agreement, Franchisee shall return to Coverall all such confidential information including all materials, books, records, software and manuals deemed to be confidential which are in Franchisee's possession, custody, or control.

Franchisee and its employees who attend any or all of Coverall's initial training programs shall divulge only such confidential information as may be necessary, and then only to those full time and/or part time employees, agents, or independent contractors as must have access to it, in order to conduct the operation of the franchise business, and Franchisee shall take those precautions as shall be necessary to ensure that its employees retain the information in confidence.

If Franchisee is a proprietorship or partnership, Franchisee shall cause the proprietor or the partner, or other beneficial owner to execute Coverall's current Confidentiality/Non-Competition Agreement within ten (10) days of the execution of this Agreement or, in the case of an individual who subsequently assumes the status of proprietor, partner, or beneficial owner, within ten (10) days thereafter submit all executed Agreements to Coverall. If Franchisee is a corporation, Franchisee shall cause each officer, director, and shareholder to execute Coverall's current Confidentiality/Non-Competition Agreement within ten (10) days of the execution of this Agreement or, in the case of an individual who subsequently assumes the status of officer, director, or shareholder shall within ten (10) days thereafter submit all executed Agreements to Coverall. Franchisee, whether a sole proprietorship, partnership, or corporation, will cause each of its employees upon ten (10) days of the execution of this Agreement, or upon ten (10) days of hire of any employee, whichever last occurs, to execute a Coverall Confidentiality/Non-Competition Agreement.

13.    FRANCHISEE IS AN INDEPENDENT CONTRACTOR. Franchisee is and shall remain at all times a completely independent contractor in business for itself, and shall have no right or interest in or authority over Coverall or any of Coverall's property or business. Neither Franchisee, nor Franchisee's employees, are employees of Coverall. Neither Coverall nor Franchisee is the principal, agent, employer, employee, partner, officer, director, or owner of the other. Franchisee shall always hold itself out as an independent contractor in its dealings and communications with the public. Franchisee further agrees that it is not authorized to use the Marks or Substitute Marks in any capacity other than as provided in this Agreement, nor to sign on behalf of Coverall any checks, drafts, leases, bonds, mortgages, documents, bills, contracts, bills of sale or any other instruments in writing. Franchisee shall be free to conduct its business as it may deem best in providing services to the customer accounts, independently of the supervision, management, and control of Coverall, but Franchisee agrees to abide by all of the terms of this Agreement and all federal, state and local laws, OSHA requirements, and regulations of all government agencies having jurisdiction over the customer's premises or the activities conducted by Franchisee and all industry standards. Franchisee shall be responsible for all personal property, use, and other taxes assessed by governmental agencies. Franchisee shall be responsible for personal self-employment, income, and other taxes required to be withheld and hereby assumes full responsibility for payment of the employer's portion of any social security and other taxes required to be withheld for all of Franchisee's employees. Franchisee shall also pay and/or withhold taxes and premiums for unemployment and worker's compensation insurance for itself and all of its employees, as required by law. Franchisee shall provide Coverall, upon demand, proof of payment of all taxes due and compliance with all laws. Franchisee shall be responsible for all employment decisions and functions of its franchise business, including without limitation, those related to hiring, firing, training, wage and hour requirements, record keeping, supervision, and discipline of employees and order and sequence of work.

14.    INSURANCE. Franchisee shall be responsible for and shall indemnify and hold Coverall harmless for all losses, damages to property, or injuries to persons arising out of or connected with the performance or non-performance of Franchisee's business and services to customers, including any claimed damages for breach of security and claims or demands for damages resulting therefrom of whatever nature. Franchisee will obtain janitorial bonding in an amount not less than $100,000. Franchisee further agrees to maintain comprehensive liability insurance covering



Initial   Initial

The plans are subject to change, modification, and/or cancellation. Future changes in premiums, coverages, etc. will be set forth in the Policy and Procedure Manual.

15.    INDEMNIFICATION. Franchisee shall be solely responsible for the services and results of services performed by Franchisee and its employees, and shall indemnify and hold harmless Coverall and its affiliates, and directors, officers and employees of each, and all other Coverall franchisees from all expenses, fines, suits, proceedings, claims, losses, damages, liabilities or actions of any kind or nature (including, but not limited to, costs and attorneys' fees) arising out of or in any way connected with Franchisee's operations. Franchisee further agrees that if Coverall is made a party to a lawsuit or other legal action in connection with the activities of Franchisee, then Coverall may tender the defense and/or prosecution of the case to the Franchisee who shall be responsible for diligently pursuing the case or action at Franchisee's expense, or Coverall may hire counsel directly to protect its interests and bill Franchisee for all costs and attorneys' fees incurred, and Franchisee shall promptly reimburse Coverall costs and expenses incurred. The obligations of Franchisee pursuant to this Paragraph shall survive the expiration or termination of this Agreement.

16.    ASSIGNMENT.

A.    Coverall's Right to Assign the Franchise Agreement. Coverall may, without the consent of the Franchisee, assign this Agreement, or Coverall's rights and duties under this Agreement, to any other entity or third party, whether affiliated with or independent of Coverall. Coverall may also assign to any other entity or third party, whether affiliated with or independent of Coverall, any promissory note or other negotiable instrument of Franchisee which is payable to Coverall, either in conjunction with or independent of this Agreement. Coverall's rights under this Agreement shall inure to the benefit of any assignee or legal successor to Coverall. Specifically, and without limitation to the foregoing, Franchisee expressly affirms and agrees that Coverall may sell its assets, its Marks, or its System outright to a third party; may engage in a private placement or public offering; may merge, acquire other corporations, or be acquired by another corporation; may undertake a refinancing, recapitalization, leveraged buyout or other economic or financial restructuring; and, with regard to any or all of the above sales, assignments, and dispositions, Franchisee expressly and specifically waives any claims, demands, or damages arising from or related to the loss of the Marks and/or the loss of association with or identification with the Mark "Coverall" arising out of Coverall's exercise of any rights granted Coverall by this Paragraph 16A.

B.    Franchisee's Right to Assign the Franchise Agreement.

(1)    An assignment is defined as a voluntary or involuntary, direct or indirect, assignment, transfer, sale, gift, or other disposition by the Franchisee or any of its owners of any interest in this Agreement, the ownership of the Franchisee entity, or the franchise business, which assignment includes, without limitation: (i) assignment of ownership of stock or partnership interest; (ii) merger or consolidation or issuance of securities representing an ownership interest in the Franchisee entity; (iii) assignment in a divorce, insolvency, partnership, or corporate dissolution proceeding or otherwise by operation of law; and (iv) assignment in the event of death of the Franchisee or an owner of Franchisee, by will, declaration of or transfer in trust, or under the laws of intestate succession.

(2)    Franchisee may, with the written consent of Coverall obtained after thirty (30) days prior written notice to Coverall, which consent will not be unreasonably withheld, assign this Agreement to a person ("the assignee") meeting the qualifications then established by Coverall for granting new franchises, provided: (i) Franchisee provides Coverall a copy of any written agreements relating to the proposed assignment or transfer, and any additional information which Coverall may require in order to determine whether it will grant its consent to the proposed assignment or transfer; (ii) the assignee enters into the franchise agreement then used by Coverall for granting new franchises; (iii) Coverall shall assess Franchisee a transfer fee of $1,500; (iv) Franchisee pays to Coverall all amounts due by Franchisee to Coverall; (v) Franchisee executes confidentiality and non-competition agreements in assignee's favor and in Coverall's favor with terms and conditions the same as the non-competition covenant in Paragraphs 12 and 19 of this Agreement; (vi) the assignee shall have the ability to immediately be in compliance with all laws, regulations and ordinances governing commercial janitorial cleaning; and (vii) Franchisee executes a general release, in a form satisfactory to Coverall, of any and all claims against Coverall and its affiliates and their officers, directors, employees, and agents; and (viii) the shareholders or partners of any corporate or partnership assignee



possession or control, even temporarily, of any trustee in bankruptcy or appointed receiver or the making of a general assignment for the benefit of creditors.

        D.      Franchisee's attempt to assign this Agreement or the franchise business, or any right or obligation hereunder, without first securing Coverall's written consent, upon thirty (30) days' written notice to Coverall.

        E.      Franchisee's voluntarily abandoning the franchise business.

        F.      Franchisee's having been charged with a work-related crime or any other crime that substantially impairs the goodwill associated with the Marks and System.

        G.      Franchisee's failure on two or more occasions to comply with one or more of the provisions of this Agreement or any other agreement between Coverall and Franchisee.

        H.      Franchisee's breach of Paragraph 19 of this Agreement.

        I.      Franchisee's engaging in conduct that reflects materially and adversely upon the operation and reputation of Coverall's or Franchisee's businesses or the Marks or the System.

        J.      Franchisee's monthly revenues are below $150 for two consecutive months or for each of any three months in a six-month period.

        K.      A material misrepresentation in Franchisee's application to become a franchisee.

        L.      At any time more than: (i) nine (9) months after the death or incapacity of Franchisee, or the appointment of a conservator or guardian for the person or estate of Franchisee, if Franchisee is an individual; or (ii) nine (9) months after the death or incapacity of any of the general partners, or the appointment of a conservator or guardian for the person or estate of any of the general partners, if Franchisee is a partnership; provided, however, that this Agreement shall not terminate if within nine (9) months this Agreement or the general partner's interest is assigned in accordance with the provisions of Paragraph 16.

If the termination results from default as defined in subparagraphs A, D, H, or L of this Paragraph 17, termination may occur upon the expiration of ten (10) days following written notice of default, or as otherwise provided by law, if by then the Franchisee has failed to cure the default. If termination results from default as defined in subparagraphs B, C, E, F, G, I, J, or K, of this Paragraph 17, termination may occur immediately, without notice or opportunity to cure, unless otherwise provided by law.

    18.    PROCEDURES AFTER TERMINATION. Upon expiration, termination, or assignment of this Agreement for any reason, Franchisee shall cease to be a Coverall Franchisee and shall do all of the following acts and things, each of which shall survive the termination of this Agreement and shall remain an ongoing obligation of Franchisee:

        A.      Immediately pay to Coverall all monies due to the date of termination, and cease doing business in accordance with the provisions of Paragraph 19. Any amounts due Coverall at or after Franchisee's termination may be offset against any amounts collected by Coverall on Franchisee's behalf.

        B.      Immediately and permanently discontinue the use of all Coverall Marks, or any other name or designation indicating or tending to indicate that Franchisee is or ever was an authorized Coverall franchisee. Furthermore, Franchisee shall not promote or advertise the fact that Franchisee was formerly a franchisee or affiliate of the Coverall organization.

        C.      Promptly surrender to Coverall all stationery, letterheads, forms, manuals, printed matter, films, books, cassettes, videotapes, and advertising containing Coverall Marks, including, but not limited to, the proprietary mark "Coverall," or any similar names or marks or designation indicating or tending to indicate that

© 2003 Coverall North America, Inc.



Initial    Initial

Statistical Areas in which Franchisee's Coverall Regional office conducts business, or within a 100-mile radius of that Coverall Regional office, whichever distance is greater. Franchisee will not, during the time period and in the geographic area covered by this Paragraph 19B, interfere or attempt to interfere with previously existing Coverall cleaning customers by diverting or attempting to divert from Coverall any cleaning accounts which were being serviced by Coverall franchisees or subcontractors during the year preceding the date on which Franchisee left the Coverall system.

      C.     Persons Bound By Covenants Not To Compete. Any person or entity having any legal or beneficial relationship to or interest in or traceable to, down, or through Franchisee is bound by the provisions of these covenants. Such persons shall include, but shall not be limited to, Franchisee's family members.

      D.     Court Modification of Agreement. The Franchisee agrees that this form of Agreement is prepared for use in many jurisdictions with differing public policies and that such public policies change. Accordingly, the Franchisee agrees that the prevailing non-competition restrictions set forth above may be modified by a Court to the extent necessary to make the non-competition agreements valid and enforceable against Franchisee.

      E.  -  Enforcement of Covenants Not to Compete. The covenants not to compete may be enforced by Coverall, its successors and assigns.

### 20.   INFORMAL DISPUTE RESOLUTION.

      A.     Mediation. Except as is otherwise provided in Paragraph 20B, if a dispute arises out of or relates to this Agreement, or to the relationship of the parties, and if the dispute cannot be resolved or settled through negotiation, the parties agree that prior to the filing of any arbitration or other legal action consistent with the provisions of this Agreement, they will attempt, in good faith, to settle the dispute by non-binding mediation administered pursuant to the Commercial Mediation Rules of the American Arbitration Association, or as otherwise agreed upon by the parties. The mediation shall take place in the Area in which Franchisee conducts its business (as defined in Paragraph 3), and shall be administered by a neutral mediator agreed upon by the parties. In the event the parties are unable to agree upon a mediator within 15 days of the date on which either party requests mediation of a matter, the mediator shall be provided by the American Arbitration Association. The costs of the mediation shall be shared equally by the parties.

      B.     Notwithstanding anything to the contrary in Paragraph 20A, if Franchisee's Coverall Franchise Agreement has expired or been terminated, or if Franchisee has abandoned or failed to operate the Franchise for more than 30 days, Coverall shall not be required to avail itself of non-binding mediation in matters dealing with (i) the collection, by Coverall, of royalties or management fees claimed to be owing to Coverall by Franchisee; or (ii) the collection, by Coverall, of amounts claimed to be owing to Coverall by Franchisee under any promissory notes, equipment purchases, or lines of credit.

### 21.   ADDITIONAL REMEDIES FOR BREACH.

      A.     Arbitration. Except as otherwise provided in Paragraphs 21A(14) and 21B, all controversies, disputes or claims between Coverall, its officers, directors, agents and/or employees (in their respective capacities) and Franchisee (and Franchisee's owners, officers, directors and/or any guarantors of this Agreement) arising out of or related to the relationship of the parties, this Agreement, any related agreement between the parties, and/or any specification, standard or operating procedure of Coverall, including those set forth in the Coverall Policy and Procedure Manual, which controversies, disputes or claims are not resolved in accordance with Paragraph 20, shall be submitted promptly for arbitration.

      (1)    Arbitration shall be subject to the Federal Arbitration Act and, except as otherwise provided in this Agreement or agreed upon by the parties, the then current Rules of the American Arbitration Association for Commercial Arbitration.



(i) the collection, by Coverall, of royalties or management fees claimed to be owing to Coverall by Franchisee; or (ii) the collection, by Coverall, of amounts claimed to be owing to Coverall by Franchisee under any promissory notes, equipment purchases, or lines of credit.

B.    Injunction and Specific Performance.    Notwithstanding anything in Paragraphs 20 and 21 to the contrary, Coverall shall be entitled to apply directly to a court of competent jurisdiction for the entry of preliminary and permanent injunctions and orders of specific performance enforcing the provisions of this Agreement or any other related agreement pertaining to Franchisee's use of the Marks; the obligations of Franchisee regarding confidentially or non-competition; any assignments or attempted assignments of this Agreement by Franchisee; any matter relating to the ownership of the Franchise, and/or any other matter for which Coverall would have no adequate remedy at law. If Coverall secures any injunction or order of specific performance, Franchisee agrees to pay Coverall an amount equal to the costs incurred by Coverall in obtaining relief, including, without limitation, attorney's fees, litigation costs and expenses, as well as any damages incurred by Coverall as a result of Franchisee's actions.

C.    Attorneys' Fees.    Should either Party incur attorney's fees in order to enforce the terms and conditions of this Agreement, including post-term covenants, whether or not an arbitration proceeding is instituted, the prevailing party shall be entitled to reimbursement by the other party of all litigation costs, including attorneys' fees.

D.    Survival.    The parties agree that the provisions of this Paragraph 21 shall continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement.

22.    TIME TO ASSERT CLAIMS.    Any and all claims and actions arising out of or relating to this Agreement, the relationship of Franchisee and Coverall, or Franchisee's operation of its business, brought by any Party hereto against the other, shall be commenced within two years from the occurrence of the facts giving rise to such claim or action, or such claim or action shall be barred.

23.    GOVERNING LAW.    This Agreement shall be interpreted and governed by the laws of the state in which the Franchise granted herein is located.

24.    ENTIRE AGREEMENT.    This is the full agreement of the parties. Any matter which is not actually written down and included in this document is not a term of this Agreement. To avoid any later misunderstanding about the exact terms of the Agreement, each Party affirms, by signing this Agreement, that it has not relied on any comment, promise, or representation not actually included in this Agreement. By signing this Agreement, the parties mutually agree that no evidence shall be admitted in any proceeding as to the existence of any term or promise claimed to be a part of the Agreement unless that term is explicitly stated within the Agreement. *DO NOT SIGN THIS AGREEMENT IF YOU ARE RELYING UPON ANY REPRESENTATION OR PROMISE NOT STATED IN THIS AGREEMENT.*

25.    AMENDMENT.    This Agreement may not be modified, altered, or amended except in writing executed by all of the Parties.

26.    WAIVERS.    Waiver by Coverall of any one or more defaults shall not operate as a waiver of successive or other defaults and all of Coverall's rights shall continue notwithstanding any such waiver or waivers.

27.    FORCE MAJEURE.    No party shall be liable for any loss or damage due to any delay in the performance of the terms (except for the payment of money) by reason of strikes, lockouts, and other labor troubles, fires, riots, wars, acts of terrorism, embargoes and civil commotion, or acts of God. Any such delay shall extend performance only so long as such event is in progress.

28.    SEVERABILITY.    If any term, provision, covenant, or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

29.    NOTICES.    Any notices to be given by either Party to the other may be effected in writing either by

© 2003 Coverall North America, Inc.

Initial    Initial

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the day and year written above (see Page 1 of this Agreement).

(If Franchisee is a partnership, this Agreement must be signed by each partner. If Franchisee is a corporation, this Agreement must be signed by a duly authorized officer.)

THIS AGREEMENT SHALL NOT BE VALID UNLESS SIGNED BY (i) FRANCHISEE; (ii) AN AUTHORIZED REPRESENTATIVE OF COVERALL'S REGIONAL OFFICE; AND (iii) A CORPORATE OFFICER AT COVERALL'S CORPORATE OFFICE.

FRANCHISEE: _____ *Bhina Alvaren gr*_____
(Print name of sole proprietor, partnership, or corporation.)

By: _____ *Rhinn alunnnyn*_____    _5/29/03_
                                        Date Signed

By: _____
                                        Date Signed

By: _____
                                        Date Signed

COVERALL NORTH AMERICA, INC.

By: _____    _5/29/03_
                                        Date Signed

Title: _Regional Direcfon_

COVERALL OF BOSTON

ACCEPTED ON THIS _5th_ DAY OF _June_ , _2003_ .
(EFFECTIVE DATE OF AGREEMENT)

COVERALL NORTH AMERICA, INC.

By: _____ , Vice President





# PALMER & DODGE LLP

111 HUNTINGTON AVENUE AT PRUDENTIAL CENTER
BOSTON, MA 02199-7613

MELISSA C. ALLISON
DIRECT DIAL: 617.239.0522
DIRECT FAX: 617.227.4420
mallison@palmerdodge.com

August 8, 2005



**By Hand Delivery**

Clerk of the Court
Edward J. Sullivan Courthouse
Middlesex Superior Court
40 Thorndike Street
Cambridge, MA 02141

Re:   *Alvarenga* v. *Coverall Cleaning Concepts et al.*
      Civil Action No. MICV2005-01782-A

Dear Sir/Madam:

Please find enclosed an Amended Complaint for filing in the above referenced action. Copies of the original and amended Complaint and the summons will be served on each defendant pursuant to Mass. R. Civ. P. 4. Please do not hesitate to contact me if you have any questions.

Sincerely,

Melissa Allison

Melissa C. Allison

MAS-20041213                          **Commonwealth of Massachusetts**                    09/09/2005
holllave                                  **MIDDLESEX SUPERIOR COURT**                      09:18 AM
                                                **Case Summary**
                                                 **Civil Docket**

# MICV2005-01782
## Alvarenga v Coverall Of North America Inc. d/b/a et al

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 05/24/2005 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 09/08/2005 | **Session** | A - Cv A (12A Cambridge) | | |
| **Origin** | 1 | **Case Type** | A01 - Services, labor, materials | | |
| **Lead Case** | | **Track** | F | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 08/22/2005 | **Answer** | 10/21/2005 | **Rule12/19/20** | 10/21/2005 |
| **Rule 15** | 10/21/2005 | **Discovery** | 03/20/2006 | **Rule 56** | 04/19/2006 |
| **Final PTC** | 05/19/2006 | **Disposition** | 07/18/2006 | **Jury Trial** | Yes |

---

**Plaintiff**
Rhina Alvarenga
Active 05/24/2005

**Private Counsel 642252**
Jennifer Lynne Huggins
Greater Boston Legal Services
197 Friend St
Boston, MA 02114
Phone: 617-603-1810
Active 05/24/2005 Notify

**Private Counsel 657470**
Melissa Allison
Palmer & Dodge
111 Huntington Avenue
The Prudential Center 29th floor
Boston, MA 02199-7613
Phone: 617-239-0100
Fax: 617-227-4420
Active 08/22/2005 Notify

**Defendant**
Coverall Of North America Inc. d/b/a
Coverall Cleaning Concepts & Coverall of Boston
Served: 08/09/2005
Served (answr pending) 08/09/2005

**Defendant**
Sunrise Senior Living, Inc. d/b/a Sunrise of Arlington
7902 West Park Drive
Mc Lean, VA 22102
Served: 08/11/2005
Answered: 08/31/2005
Answered 08/31/2005

**Private Counsel 634883**
Joseph M Desmond
Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210-1181
Phone: 617-439-7500
Fax: 617-439-7590
Active 09/01/2005 Notify

**Commonwealth of Massachusetts**
MIDDLESEX SUPERIOR COURT
Case Summary
Civil Docket

## MICV2005-01782
## Alvarenga v Coverall Of North America Inc. d/b/a et al

**Defendant**
Coverall Cleaning Concepts
3111 Camino Del Rio
San Diego, CA 92108
Inactive 08/19/2005

**Defendant**
Coverall Of North America
3111 Camino Del Rio
San Diego, CA 92108
Inactive 08/19/2005

**Defendant**
Coverall Of Boston
3111 Camino Del Rio
San Diego, CA 92108
Inactive 08/19/2005

**Defendant**
Joseph J.  Falbo
105 Central Street
Suite 110
Boston, MA 02108
Inactive 08/19/2005

**Defendant**
Greg  Liminelli
105 Central Street
Suite 110
Stoneham, MA 02180
Inactive 08/19/2005

**Defendant**
Sunrise Of Arlington
1395 Massachusetts Avenue
Arlington, MA 02476
Inactive 08/19/2005

MAS-20041213
holllave

**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT**
**Case Summary**
**Civil Docket**

09/09/2005
09:18 AM

## MICV2005-01782
## Alvarenga v Coverall Of North America Inc. d/b/a et al

**Defendant**
Patricia Blackburn
1395 Massachusetts Avenue
Arlington, MA 02476
Inactive 08/19/2005

| Date | Paper | Text |
|------|-------|------|
| 05/24/2005 | 1.0 | Complaint & civil action cover sheet filed |
| 05/24/2005 | | Origin 1, Type A01, Track F. |
| 08/08/2005 | 3.0 | Amended complaint making defts Coverall Cleaning Concepts, Coverall |
| | | Of North America, Coverall Of Boston, Joseph J. Falbo, Greg |
| | | Liminelli, Sunrise Of Arlington, & Patricia Blackburn (Inactive) & |
| | | adding Coverall Of North America Inc. d/b/a Coverall Cleaning |
| | | Concepts & Coverall of Boston as the correct party deft |
| 08/09/2005 | 2.0 | Plaintiff Rhina Alvarenga's MOTION for appointment of special process |
| | | server Butler & Witten. Motion ALLOWED. (Connolly, J.) |
| 08/17/2005 | 4.0 | SERVICE RETURNED: Sunrise Senior Living, Inc.(Defendant) 8/11/05, in |
| | | hd at 101 Federal St., Boston, MA 02110 |
| 08/17/2005 | 5.0 | Affidavit of compliance by Melissa Allison with proof of service of |
| | | complaint re: Coverall Of North America Inc. d/b/a Coverall Cleaning |
| | | Concepts and Coverall of Boston, 8/9/05 by Cert Mail, Receipt |
| | | attached, accepted by Norman Leon, DLA Piper Rudnick Gray Cary US, |
| | | 203 North LaSalle St, Chicago, IL 60601 |
| 08/31/2005 | 6.0 | ANSWER: Sunrise Senior Living, Inc. d/b/a Sunrise of |
| | | Arlington(Defendant) |
| 09/08/2005 | 7.0 | Case REMOVED this date to US District Court of Massachusetts by the |
| | | Defendants. |
| 09/08/2005 | | ABOVE ACTION THIS DAY REMOVED TO US DISTRICT COURT. |



# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                          Superior Court
                                        Civil Action No.  MICV2005-01782-A

Rhina Alvarenga,
                    Plaintiff,

        v.

Coverall of North America d/b/a Coverall
Cleaning Concepts and Coverall of Boston,
Sunrise Senior Living, Inc. d/b/a Sunrise of
Arlington,
                    Defendants.



## PLAINTIFF'S MOTION
## TO APPOINT SPECIAL PROCESS SERVER

Pursuant to Mass R. Civ. P. 4(c), plaintiff Rhina Alvarenga moves that this Court appoint

Butler & Witten of 1895 Centre Street, Boston, Massachusetts, as special process server for

service of process on defendant Sunrise Senior Living, Inc. d/b/a Sunrise of Arlington.  In

support of this motion, plaintiff states that Butler & Witten are constables authorized to serve

civil process within the Commonwealth of Massachusetts.  The appointment of a special process

server in this matter will be cost and time-effective.

*August 9, 2005*

*Connolly, J. MOTION*

*Anne M. Cherubini*

*Asst. Clerk*

*Deputy*

Respectfully submitted,

*W Lilime Allen*

Jennifer L. Huggins (BBO #642252)
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114
617.603.1810

Daryl J. Lapp (BBO #554980)
Melissa C. Allison (BBO #657470)
PALMER & DODGE LLP
111 Huntington Avenue at Prudential Center
Boston, MA 02199-7613
617.239.0100

Dated: August 9, 2005



# PALMER & DODGE LLP

111 HUNTINGTON AVENUE AT PRUDENTIAL CENTER
BOSTON, MA 02199-7613

MELISSA C. ALLISON
DIRECT DIAL: 617.239.0522
DIRECT FAX: 617.227.4420
mallison@palmerdodge.com

August 9, 2005



**By Hand Delivery**

Clerk of the Court
Edward J. Sullivan Courthouse
Middlesex Superior Court
40 Thorndike Street
Cambridge, MA 02141

Re:     *Alvarenga* v. *Coverall Cleaning Concepts et al.*
        Civil Action No. MICV2005-01782-A

Dear Sir/Madam:

Please find enclosed Plaintiff Rhina Alvarenga's Motion to Appoint a Special Process Server.
Please do not hesitate to contact me if you have any questions.

Sincerely,

Melissa C. Allison

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS



MIDDLESEX ................ , ss
[seal]

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.

05-1782

Rhina Alvarenga
.............................................. , Plaintiff(s)

v.

Coverall of North America and
Sunrise Senior Living
Services, Inc. ................. , Defendant(s)

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

AUG 17 2005

Edward J. Sullivan
CLERK

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon .. Melissa Allison .....................................

.............................................. plaintiff's attorney, whose address is Palmer & Dodge LLP .........

111 Huntington Avenue, Boston, MA 02199 ......., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at 40 Thorndike Street

Cambridge, MA 02141 ............................. either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

**Barbara J. Rouse**

Witness, ~~Suzanne V. DelVecchio~~, Esquire, at ...................................................................................

the ......... 9th ......................................... day of ..... August ...............................................

...................., in the year of our Lord ...... 2005 ........................... .

Edward J. Sullivan
**Clerk**

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
   for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

# Commonwealth of Massachusetts
## Superior Court Department Middlesex County
**Civil Action No. 05-1782**

I hereby certify and return that today, August 11, 2005, at 1:40 PM, I served a true and attested copy of the within Summons together with a copy of the Amended Complaint; Original Complaint; and Tracking Order in this action, upon the within named **Sunrise Senior Living Services, Inc.**, by giving in hand to Gail Brown Agent in Charge, authorized to accept service. The said service was effected upon Sunrise Senior Living Services, Inc., c/o their Registered Agent: CT Corporation Systems, 101 Federal St., Boston, MA 02110.

Signed under the pains and penalties of perjury today, August 11, 2005.

**Joseph P. Butler Jr.,** Special Process Server
& Disinterested Person over Age 18.

Service & Travel:$45.00

> **Date of Service:**
> **August 11, 2005**

**Butler and Witten**
Boston, MA
(617) 325-6455



# PALMER & DODGE LLP

111 HUNTINGTON AVENUE AT PRUDENTIAL CENTER
BOSTON, MA 02199-7613

MELISSA C. ALLISON
DIRECT DIAL: 617.239.0522
DIRECT FAX: 617.227.4420
mallison@palmerdodge.com

August 17, 2005

**By Hand Delivery**

Clerk of the Court
Edward J. Sullivan Courthouse
Middlesex Superior Court
40 Thorndike Street
Cambridge, MA 02141



Re:     *Alvarenga* v. *Coverall Cleaning Concepts et al.*
        Civil Action No. MICV2005-01782-A

Dear Sir/Madam:

Enclosed please find affidavits of service of process for filing in the above referenced action. Please do not hesitate to contact me if you have any questions.

Sincerely,

Melissa C. Allison

*Enclosures*
cc: Daryl J. Lapp (w/out enclosures)

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

Superior Court
Civil Action No.  MICV2005-01782-A

Rhina Alvarenga,

Plaintiff,

v.

Coverall of North America d/b/a Coverall
Cleaning Concepts and Coverall of Boston,
Sunrise Senior Living, Inc. d/b/a Sunrise of
Arlington,

Defendants.



## **AFFIDAVIT OF SERVICE**

I, Melissa C. Allison, attorney for Plaintiff, Rhina Alvarenga, in the above matter, verify

that service of the Summons together with copies of the Complaint, the Amended Complaint and

the Tracking Order in this action was made by certified mail, return receipt requested, upon

Norman M. Leon, counsel for defendant Coverall of North America d/b/a Coverall Cleaning

Concepts and Coverall of Boston, who was authorized to accept service of process on behalf of

the defendant.

The return mail receipt is attached hereto.

Subscribed and sworn to under the pains and penalties of perjury this 17th day of August,

2005.

RHINA ALVARENGA
By her attorneys,

*Jennifer L. Allison*

Jennifer L. Huggins (BBO #642252)
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114
617.603.1810

Daryl J. Lapp (BBO #554980)
Melissa C. Allison (BBO #657470)
PALMER & DODGE LLP
111 Huntington Avenue at Prudential Center
Boston, MA 02199-7613
617.239.0100

Dated: August 17, 2005

2

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

SUPERIOR COURT
C.A. NO.: 05-1782

RHINA ALVARENGA,                                   )
          Plaintiff                              )

v.                                                 )

COVERALL OF NORTH AMERICA;                         )
D/B/A COVERALL CLEANING                            )
CONCEPTS, COVERALL OF BOSTON,                      )
SUNRISE SENIOR LIVING, INC.                        )
D/B/A SUNRISE OF ARLINGTON                         )
          Defendants                             )

## ANSWER OF DEFENDANT, SUNRISE SENIOR LIVING, INC. TO PLAINTIFF'S AMENDED COMPLAINT

### Introduction

The defendant is without knowledge concerning the first unnumbered paragraphs under the heading introduction.

### Jurisdiction and Venue

1.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

2.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

### Parties

3.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

4.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

5.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

### Statement of Facts

6.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

1157820v1

7.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

8.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

9.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

10.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

11.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

12.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

13.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

14.    The allegations of this paragraph are not addressed to this defendant. To the extent that an answer is required, the allegations are denied.

15.    The allegations of this paragraph are not addressed to this defendant. To the extent that an answer is required, the allegations are denied.

16.    The allegations of this paragraph are not addressed to this defendant. To the extent that an answer is required, the allegations are denied.

17.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

18.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

19.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

20.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

21.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

22.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

1157820v1

23.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

24.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

25.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

26.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

27.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

28.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

29.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

30.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

31.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

32.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

33.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

34.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

35.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

36.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

37.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

38.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

39.     The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

40.     The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

41.     The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

42.     The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

43.     The defendant incorporates its responses to the preceding paragraphs.

44.     The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

45.     The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

46.     The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

47.     The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

48.     The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

49.     The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

50.     The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

51.     The defendant incorporates its responses to the preceding paragraphs.

52.     The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

53.     The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

54.     The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

55.     The allegations of this paragraph are not addressed to the defendant answering herein, and no response is required. To the extent a response is required, the allegations are denied.

4

56.    The allegations of this paragraph are not addressed to the defendant answering herein, and no response is required. To the extent a response is required, the allegations are denied.

57.    The allegations of this paragraph are not addressed to the defendant answering herein, and no response is required. To the extent a response is required, the allegations are denied.

58.    The allegations of this paragraph are not addressed to the defendant answering herein, and no response is required. To the extent a response is required, the allegations are denied.

59.    The allegations of this paragraph are not addressed to the defendant answering herein, and no response is required. To the extent a response is required, the allegations are denied.

## COUNT III

60.    The defendant incorporates its responses to the preceding paragraphs.

61.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

62.    The allegations of this paragraph are denied.

63.    The allegations of this paragraph are denied.

64.    The allegations of this paragraph are denied.

65.    The allegations of this paragraph are denied.

66.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

67.    The allegations of this paragraph are denied.

68.    The allegations of this paragraph are denied.

69.    The defendant incorporates the responses of the preceding paragraphs as if stated herein.

70.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

71.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

72.    The allegations of this paragraph are not addressed to this defendant.

73.    The defendant incorporates the responses of the preceding paragraphs as if stated herein.

74.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

5

75.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

76.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

77.    The defendant incorporates the responses of the preceding paragraphs as if stated herein.

78.    The allegations of this paragraph are not addressed to this defendant. To the extent a response is required, the allegations are denied.

79.    The allegations of this paragraph are not addressed to this defendant. To the extent a response is required, the allegations are denied.

80.    The allegations of this paragraph are not addressed to this defendant. To the extent a response is required, the allegations are denied.

81.    The defendant incorporates the responses of the preceding paragraphs as if stated herein.

82.    The allegations of this paragraph are not addressed to this defendant. To the extent a response is required, the allegations are denied.

83.    The allegations of this paragraph are not addressed to this defendant. To the extent a response is required, the allegations are denied.

84.    The allegations of this paragraph are not addressed to this defendant. To the extent a response is required, the allegations are denied.

85.    The defendant incorporates the responses of the preceding paragraphs as if stated herein.

86.    The allegations of this paragraph are denied.

87.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

88.    The allegations of this paragraph are denied.

89.    The allegations of this paragraph are denied.

90.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

91.    The allegations of this paragraph are denied.

92.    The allegations of this paragraph are denied.

93.    The defendant incorporates the responses of the preceding paragraphs as if stated herein.

94.    The allegations of this paragraph are denied.

6

95.     The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

96.     The allegations of this paragraph are denied.

97.     The allegations of this paragraph are denied.

98.     The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

99.     The allegations of this paragraph are denied.

100.    The allegations of this paragraph are denied.

101.    The defendant incorporates the responses of the preceding paragraphs as if stated herein.

102.    The allegations of this paragraph are denied.

103.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

104.    The allegations of this paragraph are denied.

105.    The defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and calls upon the plaintiff to prove same.

106.    The allegations of this paragraph are denied.

107.    The allegations of this paragraph are denied.

108.    The allegations of this paragraph are denied.

109.    The defendant incorporates the responses of the preceding paragraphs as if stated herein.

110.    The allegations of this paragraph are denied.

111.    The allegations of this paragraph are denied.

112.    The allegations of this paragraph are denied.

        The defendant denies that the plaintiff is entitled to the relief sought in the Prayers for Relief.

## JURY DEMAND

The defendant demands a trial by jury as to all issues properly triable by jury.

1157820v1

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

By way of affirmative defense, the defendant says that the plaintiff's complaint should be dismissed pursuant to 12(b)(6) for failure to state a claim upon which relief can be granted.

### Second Affirmative Defense

By way of affirmative defense, the defendant says that the Complaint misnames the defendant.

### Third Affirmative Defense

By way of affirmative defense, the defendant says that service of process was insufficient.

### Fourth Affirmative Defense

By way of affirmative defense, the defendant says that the Complaint should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

### Fifth Affirmative Defense

By way of affirmative defense, the defendant says that the Complaint should be dismissed pursuant to Rule 12(b)(3) for improper venue.

### Sixth Affirmative Defense

By way of affirmative defense, the defendant says that the Complaint should be dismissed pursuant to Rule 12(b)(4) for insufficiency of process.

### Seventh Affirmative Defense

By way of affirmative defense, the defendant says that the Complaint should be dismissed pursuant to Rule 12(b)(5) for the insufficiency of service of process.

### Eighth Affirmative Defense

By way of affirmative defense, the defendant says that the action is barred by the applicable statute of limitations.

### Ninth Affirmative Defense

By way of affirmative defense, the defendant says that the plaintiff has failed to commence this action within the time afforded by the pertinent statutes of the Commonwealth of Massachusetts and therefore cannot maintain this action.

## Tenth Affirmative Defense

By way of affirmative defense, the defendant says that the plaintiff cannot recover for the reason that she failed to give notice of the damages allegedly suffered by her to the defendant and to the Attorney General as required by M.G.L. c. 149, §149-50 as required by the statutes of the Commonwealth of Massachusetts.

## Eleventh Affirmative Defense

By way of affirmative defense, the Court lacks personal jurisdiction over the defendant.

## Twelfth Affirmative Defense

By way of affirmative defense, the defendant says that if the plaintiff suffered injuries or damage, as alleged, such injuries or damage were caused by someone for whose conduct the defendant was not and is not legally responsible.

## Thirteenth Affirmative Defense

The Defendant says that the negligence of the Plaintiff was greater than the alleged negligence of the Defendant and that such negligence of the Plaintiff contributed to her alleged injury and, therefore, the Plaintiff is barred from recovery under M.G.L. c. 231, section 85.

## Fourteenth Affirmative Defense

By way of affirmative defense, the defendant states that if the plaintiff and/or the plaintiff's decedent suffered injuries or damage, as alleged, such injuries or damage were caused by the superceding intervening conduct of a third party for whom the defendant is not legally responsible.

## Fifteenth Affirmative Defense

By way of affirmative defense, the defendant says that the plaintiff's complaint alleging fraud must be dismissed pursuant to Mass. R. Civ. P. 9(b), for failure to plead fraud with sufficient specificity.

## Sixteenth Affirmative Defense

By way of affirmative defense, the defendant says that the plaintiff's complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted insofar as the plaintiff claims relief pursuant to M.G.L. C. 93A.

9

1157820v1

### Seventh Affirmative Defense

By way of affirmative defense, the defendant says that the plaintiff has failed to comply with the notice requirements of M.G.L. C. 93A, §9, wherefore the plaintiff is barred from recovery.

### Eighteenth Affirmative Defense

By way of affirmative defense, the defendant says that the plaintiff is not entitled to any recovery under G.L. c. 93A for the reason that the transactions and actions set out in the plaintiff's Complaint are permitted under laws as administered by regulatory board or office acting under statutory authority of the Commonwealth of Massachusetts.

### Nineteenth Affirmative Defense

By way of affirmative defense, the defendant says the acts complained of did not occur primarily or substantially in Massachusetts.

### Twentieth Affirmative Defense

By way of affirmative defense, the defendant says the plaintiff did not serve a proper demand for relief pursuant to G.L. c. 93A, and therefore recovery is barred.

### Twenty-First Affirmative Defense

By way of affirmative defense, the third party defendant says that the plaintiff breached the terms and conditions of the agreement or contract alleged in the plaintiff's Complaint, and that, therefore, the plaintiff cannot recover.

### Twenty-Second Affirmative Defense

By way of affirmative defense, the third party defendant says that the contract or agreement alleged in the plaintiff's Complaint was terminated, and that, therefore, the plaintiff cannot recover.

### Twenty-Third Affirmative Defense

By way of affirmative defense, the third party defendant says that at the time of the alleged accident, the plaintiff was guilty of a violation of law which contributed to the alleged accident.

10

THE DEFENDANT,
SUNRISE SENIOR LIVING, INC.
By its attorneys,

**MORRISON MAHONEY LLP**

Joseph M. Desmond, BBO #634883
250 Summer Street
Boston, MA 02210
(617) 439-7500

Date: 8-31-05

## CERTIFICATE OF SERVICE

I, Joseph M. Desmond, do hereby certify that I have this day served the foregoing **ANSWER OF DEFENDANT, SUNRISE SENIOR LIVING, INC. TO PLAINTIFF'S AMENDED COMPLAINT** to all counsel of record in this action by mailing the same, postage prepaid to:

Jennifer L. Huggins, Esq.
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114
(617) 603-1810
BBO #642252

Daryl J. Lapp, Esq. – BBO #554980
Melissa C. Allison, Esq. – BBO #657470
Palmer & Dodge, LLP
111 Huntington Avenue at Prudential Center
Boston, MA 02199-7613
(617) 239-0100

Date: 8-31-05                    Attorney: _____

11