# PYLE, ROME, LICHTEN, EHRENBERG & LISS-RIORDAN, P.C.
Attorneys at Law
18 Tremont Street, Suite 500
Boston, MA 02108

Telephone (617) 367-7200
Fax (617) 367-4820

Warren H. Pyle
David B. Rome
Harold L. Lichten*
Betsy Ehrenberg
Shannon Liss-Riordan**
Terence E. Coles
Katherine D. Shea

Nicole Horberg Decter**
Rebecca G. Pontikes
Alfred Gordon
Leah M. Barrault
Stephen Young

*Also admitted in Maine
**Also admitted in New York

Tod A. Cochran
Of COUNSEL

November 4, 2005

**VIA HAND DELIVERY**
The Honorable William G. Young
Chief Judge, United States District Court
District of Massachusetts
One Courthouse Way
Boston, MA 02210

RE:  Alvarenga v. Coverall North America, et al, No. 05-11819 (JLT)

   Coverall North America, Inc. v. Padilha, No. 05-11867 (MLW)

   Coverall North America, Inc. v. Lisboa, No. 05-11868

   Coverall North America, Inc. v. Canestraro, No. 05-11869

   Coverall North America, Inc. v. Martins, No. 05-11870

   Coverall North America, Inc. v. Pereira, No. 05-11871

   Coverall North America, Inc. v. Furtado, No. 05-11872

   Coverall North America, Inc. v. De Carvalho, No. 05-11873

   Coverall North America, Inc. v. Sodre, No. 05-11874

   Machado et al. v. Coverall North America, Inc., No. 05-11884

Dear Chief Judge Young:

In Michael Vhay's letter to you earlier this week regarding the above-referenced cases, he does not deny that the Machado case that I filed as a class action against Coverall is related to the Alvarenga case. A comparison of the complaints clearly demonstrates that the cases meet the definition of relatedness under Local Rule

**PYLE, ROME, LICHTEN, EHRENBERG & LISS-RIORDAN, P.C.**

40.1(G), as they involve almost identical claims and involve substantially the same questions of fact and law. The Machado case should therefore be assigned to the same judge as the Alvarenga case (regardless of whether or not that case is still pending in this court).

Attorney Vhay defends his failure to note the Alvarenga case as a related case to the eight complaints filed by Coverall against my clients by disputing that these cases were related to the Alvarenga case at the time they were filed. However, they are clearly based upon the same facts as that case and indeed contain the same claim that Coverall planned to use as a defense in Alvarenga. Indeed, Coverall filed these petitions to compel arbitration on September 15, 2005, and two weeks later, on September 30, 2005, filed in the Alvarenga case a motion seeking to stay the case pending arbitration (attached here as Exhibit A), thus seeking the same relief—compelled arbitration—that it has sought in the eight cases filed against my clients. Thus, the eight cases are related to the Alvarenga case in that they too involve the same claims or defenses and involve substantially the same questions of fact of law. In addition, since a determination has already been made that these eight cases filed by Coverall are related to the Machado class action, and they have been consolidated, the reassignment of the Machado case should affect all these consolidated cases.

Thank you for your attention to this matter.

Sincerely,

Shannon Liss-Riordan

cc: The Honorable Mark L. Wolf
The Honorable Joseph L. Tauro
Michael Vhay, Esq.
Jennifer Huggins, Esq.
Melissa Allison, Esq.

74

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **RHINA ALVARENGA**,<br><br>                     Plaintiff,<br><br>v.<br><br>**COVERALL OF NORTH AMERICA, d/b/a Coverall Cleaning Concepts and Coverall of Boston, and SUNRISE SENIOR LIVING, INC., d/b/a and Sunrise of Arlington**,<br><br>                     Defendants. | Case No. 05-11819 JLT |

**COVERALL NORTH AMERICA, INC.'S
MOTION TO STAY PROCEEDINGS PENDING ARBITRATION
AND TO EXTEND TIME TO RESPOND TO THE AMENDED COMPLAINT**

Defendant Coverall North America, Inc., d/b/a Coverall Cleaning Concepts and Coverall of Boston ("Coverall"), by its attorneys, moves (i) pursuant to § 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, to stay all proceedings against Coverall pending arbitration of the plaintiff's claims; and (ii) pursuant to Rule 6(b), Fed.R.Civ.P., to extend Coverall's time to answer, move or otherwise plead in response to plaintiff's Amended Complaint (should this Court not stay all proceedings against Coverall) until the Court resolves Coverall's Motion to Stay Proceedings.

In support of this motion, Coverall states as follows:

1. This action arises out of a written Franchise Agreement between Coverall, a franchisor of commercial janitorial cleaning businesses, and plaintiff Rhina Alvarenga. Pursuant to the Franchise Agreement, Coverall offered, and Ms. Alvarenga accepted, a limited license to operate a Coverall franchise in Massachusetts.

2.  In the Franchise Agreement, Ms. Alvarenga and Coverall agreed that they would submit all disputes arising out of or relating to the Franchise Agreement, the validity of that agreement or the parties' relationship to arbitration before the American Arbitration Association. Notwithstanding that agreement, Ms. Alvarenga sued Coverall in Middlesex Superior Court (an action later removed to this Court by Coverall's co-defendant, Sunrise Senior Living, Inc.), raising numerous claims involving the Franchise Agreement and the parties' business relationship.

3.  Where, as here, "there is an agreement to arbitrate, the FAA reflects a strong, well-established, and widely recognized federal policy in favor of arbitration." *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 29 F.3d 727, 730 (1st Cir.), *aff'd*, 515 U.S. 528 (1995). Consistent with this policy, § 3 of the FAA provides :

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties, stay the trial of the action until such arbitration has been had in accordance with the terms of the Agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

4.  The issues raised in Ms. Alvarenga's Amended Complaint are subject to arbitration under the parties' written Franchise Agreement. Even if Ms. Alvarenga disputed the scope of the parties' agreement, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62, 115 S. Ct. 1212, 1218 n.8 (1995) (quoting *Moses H. Cone Memorial Hosp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983)). A dispute that is even arguably subject to an arbitration agreement should be

arbitrated "unless it can be said with **positive assurance** that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *AT&T Technologies v. Communication Workers*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419 (1986) (emphasis added). Coverall thus is entitled under § 3 of the FAA to a stay of this action, and should be given leave under Rule 6(b) not to answer or otherwise plead in response to Ms. Alvarenga's Amended Complaint (if this Court should not stay these proceedings against Coverall) until after this Court has ruled on Coverall's motion for a stay.

FOR THESE REASONS, as well as those set forth in the accompanying memorandum of law, Coverall asks this court to:

A. Stay all proceedings against Coverall North America, Inc. ("Coverall") in this matter pending completion of arbitration before the American Arbitration Association of all of Rhina Alvarenga's claims against Coverall;

B. Grant Coverall leave not to answer or otherwise plead in response to Ms. Alvarenga's Amended Complaint (should this Court decide not to stay these proceedings against Coverall) until seven (7) days after this Court has ruled on Coverall's motion for a stay; and

C. Grant such other and further relief as is just and appropriate.

### REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Coverall North America, Inc. requests oral argument on its Motion to Stay Proceedings Pending Arbitration and to Extend Time to Respond to Amended Complaint.

~BOST1:391840.v1    3

**LOCAL RULE 7.1(A)(2) CERTIFICATE**

The undersigned certifies that he has conferred with counsel for plaintiff Rhina Alvarenga and co-defendant Sunrise Senior Living, Inc. in a good-faith attempt to resolve or narrow the issues presented by Coverall North America, Inc.'s Motion to Stay Proceedings Pending Arbitration and to Extend Time to Respond to Amended Complaint.

        COVERALL NORTH AMERICA, INC.. d/b/a Coverall Cleaning Concepts and Coverall of Boston,

        By its attorneys,

        __/s/ Michael D. Vhay_____
        Michael D. Vhay (BBO No. 566444)
        Traci S. Feit (BBO No. 660688)
        DLA PIPER RUDNICK GRAY CARY US LLP
        One International Place, 21st Floor
        Boston, MA  02110-2600
        (617) 406-6000 (telephone)
        (617) 406-6100 (fax)

Dated: September 30, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**RHINA ALVARENGA**,

                     Plaintiff,

     v.

**COVERALL OF NORTH AMERICA, d/b/a
Coverall Cleaning Concepts and Coverall of
Boston, and SUNRISE SENIOR LIVING,
INC., d/b/a Sunrise of Arlington**,

                     Defendants.

Case No. 05-11819 JLT

**MEMORANDUM OF LAW IN SUPPORT OF COVERALL NORTH AMERICA, INC.'S
MOTION TO STAY PROCEEDINGS PENDING ARBITRATION
AND TO EXTEND TIME TO RESPOND TO THE COMPLAINT**

       Defendant Coverall North America, Inc., d/b/a Coverall Cleaning Concepts and Coverall of Boston ("Coverall"), by its attorneys, respectfully submits this Memorandum of Law in Support of its Motion (i) pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, to Stay Proceedings Pending Arbitration; and (ii) pursuant to Rule 6(b), Fed.R.Civ.P., to extend Coverall's time to answer, move or otherwise plead in response to plaintiff's Amended Complaint until the Court resolves Coverall's Motion to Stay Proceedings.

**PRELIMINARY STATEMENT**

       This action arises out of a written Franchise Agreement entered into by and between Coverall, a franchisor of commercial janitorial cleaning businesses, and plaintiff Rhina Alvarenga. Pursuant to the Franchise Agreement, Coverall offered, and plaintiff accepted, a limited license to operate a Coverall franchise in Massachusetts. Now claiming that Coverall made certain misrepresentations in connection with plaintiff's execution of the Franchise Agreement and, further, that she was not properly compensated for some of the services she

claims to have performed pursuant to that agreement, plaintiff commenced an action in the Superior Court of the Commonwealth of Massachusetts, Middlesex County. That action, entitled *Rhina Alvarenga v. Coverall of North America d/b/a Coverall Cleaning Concepts and Coverall of Boston, Sunrise Senior Living, Inc. d/b/a Sunrise of Arlington,* Civil Action No. MICV2005-01782-A, was removed to this Court on or about September 9, 2005.

The merits (or lack thereof) of plaintiff's claims aside, plaintiff and Coverall agreed, in entering into the Franchise Agreement, that they would submit all disputes arising out of or relating to the Franchise Agreement, the validity of that agreement or the parties' relationship, to arbitration before the American Arbitration Association. Since, as shown below, plaintiff's claims fall well within the ambit of the parties' arbitration agreement, § 3 of the FAA requires that this action be stayed pending arbitration.

## RELEVANT BACKGROUND FACTS

**A.    The Parties**

Coverall is a Delaware corporation with its principal place of business in Boca Raton, Florida. Coverall is engaged in the business of granting franchises to qualified persons to operate commercial janitorial cleaning businesses, and to use Coverall's trade names and marks, as well as Coverall's operating system (the "Coverall® System"), in connection therewith. Coverall franchisees are provided with, among other things, training, equipment, billing and collection services, and a quality control program. Coverall also provides its franchisees customer accounts to clean. Under the Coverall System, Coverall enters into contracts with customers for cleaning services, and delegates the performance of the services under the contracts to its franchisees.

Plaintiff is a former Coverall franchisee. On June 5, 2003, plaintiff entered into a written Janitorial Franchise Agreement with Coverall pursuant to which Coverall offered, and plaintiff accepted, a limited license to operate a Coverall franchise.[1] (A true and correct copy of the Franchise Agreement is annexed hereto as Exhibit A.) One of the customers that plaintiff serviced as a Coverall franchisee was Defendant Sunrise Senior Living, Inc. d/b/a Sunrise of Arlington ("Sunrise"). In or around October of 2003, Plaintiff was discharged by Sunrise's Regional Director because she repeatedly failed to provide satisfactory services.[2] Plaintiff subsequently abandoned her Coverall franchise.

### B. The Parties' Arbitration Agreement

In entering into the Franchise Agreement, Coverall and plaintiff explicitly agreed that they would submit all disputes arising out of or relating to the Franchise Agreement, the validity of that agreement or the parties' relationship to arbitration before the American Arbitration Association. Paragraph 21 of the Franchise Agreement thus provides, in pertinent part:

> [A]ll controversies, disputes, or claims between Coverall, its officers, directors, agents and/or employees (in their respective capacities) and Franchisee (and Franchisee's owners, officers, directors and/or any guarantors of this Agreement) arising out of or related to the relationship of the parties, this Agreement, any related agreement between the parties, and/or any specification, standard or

---

[1] Plaintiff alleges that she first saw the Franchise Agreement on May 29, 2003, the date on which she signed the agreement. (Amended Complaint ¶11.) That is simply untrue. In accordance with the requirements of the Federal Trade Commission's Franchise Rule, 16 C.F.R. §436, plaintiff was given a copy of Coverall's Uniform Franchise Offering Circular on May 7, 2003 – twenty days before she signed the Franchise Agreement. The Franchise Agreement that plaintiff signed was one of the exhibits to the Offering Circular.

[2] Coverall recently learned that plaintiff (apparently unhappy with the compensation she was receiving from Sunrise) improperly and deceptively attempted to convince many of Sunrise's elderly residents to pay her directly for the services she was already contractually required to perform.

> operating procedure of Coverall, including those set forth in the Coverall Policy and Procedure Manual . . . shall be submitted promptly for arbitration.
>
> Arbitration shall be subject to the Federal Arbitration Act and, except as otherwise provided in this Agreement or agreed upon by the parties, the then current Rules of the American Arbitration Association for Commercial Arbitration.
>
> The arbitration shall take place in the Area in which the Franchisee conducts its business, and shall be administered by the office of the American Arbitration Association or as mutually agreed by the parties.

(*See* Exhibit A, § 21, pp. 20-21.)

**C.    Plaintiff's Complaint**

Notwithstanding the parties' agreement to arbitrate their disputes, on or about May 24, 2005, plaintiff filed a Complaint against Coverall and Sunrise in the Superior Court of the Commonwealth of Massachusetts. An amended complaint was filed on August 8, 2005. That action, entitled *Rhina Alvarenga v. Coverall of North America d/b/a Coverall Cleaning Concepts and Coverall of Boston, Sunrise Senior Living, Inc. d/b/a Sunrise of Arlington,* Civil Action No. MICV2005-01782-A, was removed to this Court on or about September 9, 2005.

Plaintiff's Amended Complaint alleges, in substance, that Coverall fraudulently induced her to enter into the Franchise Agreement by misrepresenting (1) the nature and profitability of the accounts she would receive, (2) the services Coverall would provide under the Franchise Agreement, and (3) the manner in which services she was to provide would be negotiated and billed. (Amended Complaint ¶14.) Plaintiff also contends that she was not properly compensated for the services she claims to have performed (*id*. at ¶¶17-35) and, further, that Coverall refused her demand for "restitution" and "wages" to which she claims she is entitled. (*Id*. at ¶36.) Based on these allegations, plaintiff's Amended Complaint purports to assert claims for fraud (Count I), violation of Massachusetts General Laws c.93A (Counts II and III),

rescission (Count IV), breach of contract (Count V), breach of fiduciary duty (Count VI), breach of the implied covenant of good faith (Count VII), violation of various inapplicable wage acts (Counts XIII-X) and for "services rendered" (Count VI).

## ARGUMENT

### This Action Should Be Stayed Pending Arbitration

**I.     The FAA Mandates That All Arbitrable Claims Be Submitted To Arbitration**

The principles underlying the policies favoring arbitration agreements are well-established in this Circuit.  Where, as here, "there is an agreement to arbitrate, the FAA reflects a strong, well-established, and widely recognized federal policy in favor of arbitration." *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 29 F.3d 727, 730 (1st Cir.), *aff'd*, 515 U.S. 528 (1995); *accord KKW Enterprises, Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 49 (1st Cir. 1999); *Painewebber Inc. v. Elahi*, 87 F.3d 589, 593 (1st Cir. 1996) ("[T]he FAA "'is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.'") (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983)). Indeed, "[t]he 'primary purpose' of the FAA is to ensure 'that private agreements to arbitrate are enforced according to their terms.'" *Elahi*, 87 F.3d at 593 (quoting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479, 109 S. Ct. 1248, 1256 (1989)); *accord Moses H. Cone Memorial Hosp.*, 460 U.S. at 24 (the FAA expresses Congress' intent "to mandate enforcement of all covered arbitration agreements").[3]

---

[3]     The arbitration agreement at issue in this case clearly falls within the scope of the FAA. The FAA applies whenever there is an agreement to arbitrate contained in "a contract evidencing a transaction involving commerce."  9 U.S.C. § 2; *see also Allied-Bruce Terminix Cos. v.*

*(footnote continued to next page)*

One of the primary vehicles for the enforcement of arbitration agreements is § 3 of the FAA. That section provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties, stay the trial of the action until such arbitration has been had in accordance with the terms of the Agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. In other words, absent proof that the party seeking to invoke arbitration is "in default in proceeding with . . . arbitration" – which is not at issue here – a party is entitled to a stay under § 3 if the court is satisfied that the issue in the pending action "is referable to arbitration under [the parties' agreement]." *See also KKW Enterprises, Inc.*, 184 F.3d at 50 (under § 3 of the FAA, if a suit is brought "on an issue referable to arbitration under a written

---

*(footnote continued from previous page)*
*Dobson*, 513 U.S. 265, 273-74, 115 S. Ct. 834, 841 (1995). The term "commerce" is to be broadly construed. *Prima Paint Corp. v. Flood & Conklin Mfg. Corp.*, 388 U.S. 395, 401-02, 87 S. Ct. 1801 (1967). In fact, the Supreme Court has held that the FAA extends to the full reach of the Commerce Clause. *See Allied-Bruce Terminix*, 513 U.S. at 273-74, 115 S. Ct. at 841. As noted above, the Franchise Agreement was entered into between plaintiff, a Massachusetts resident, and Coverall, a Delaware corporation with its principal place of business in Florida. Since the Franchise Agreement calls for a continuous stream of products and funds to be exchanged between these diverse parties, the agreement plainly evidences "commerce" among the several states for purposes of the FAA. *See KKW Enterprises, Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 49 (1st Cir. 1999) (franchise agreements between Massachusetts franchisee and Illinois franchisor "implicate interstate commerce, thus subjecting them to the reach of the FAA"); *Ommani v. Doctors Assoc., Inc.*, 789 F.2d 298, 299 (5th Cir. 1986) (fraud claims between Connecticut franchisor and Texas franchisee evidence commerce within the meaning of the FAA); *Creson v. Quickprint of America, Inc.*, 558 F. Supp. 984, 986 (D. Mo. 1983). Furthermore, Coverall and plaintiff agreed, in Section 21 of the Franchise Agreement, that "[a]rbitration shall be subject to the Federal Arbitration Act."

arbitration agreement, the court shall stay a matter until the arbitration "has been had in accordance with the Agreement").[4]

## II. The Arbitration Clause In The Franchise Agreement Encompasses Each Of Plaintiff's Claims

The issues raised in plaintiff's Amended Complaint are clearly subject to arbitration under the parties' written Franchise Agreement. "[W]hether an issue is to be decided by [an] arbitrator is a matter of the parties' contractual intent." *Elahi*, 87 F.3d at 593. However, "[t]he court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 3353 (1985) (quoting *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24, 103 S. Ct. at 941); see also *Lee v. Chica*, 983 F.2d 883, 886 (8th Cir.) ("[a]rbitrability of contracts evidencing interstate commerce is governed by federal substantive law rather than state law"), *cert. denied*, 510 U.S. 906 (1993). That body of law "'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62, 115 S. Ct. 1212, 1218 n.8 (1995) (quoting *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25, 103 S. Ct. at 941). In fact, as the United States Supreme Court has repeatedly made clear, doubts regarding

---

[4] Whether plaintiff's claims against Sunrise are subject to arbitration has no bearing on this determination. "[T]he preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered [requiring] rigorous enforcement of agreements to arbitrate even though [the result is] piecemeal litigation." *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 51 n. 7 (1st Cir. 1986) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S. Ct. 1238, 1242-43 (1985)).

arbitrability should be resolved in favor of arbitration "unless it can be said with **positive assurance** that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *AT&T Technologies v. Communication Workers*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419 (1986) (emphasis added); *accord Mitsubishi Motors Corp.*, 473 U.S. at 626, 105 S. Ct. at 3354 ("as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability"); *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24, 103 S. Ct. at 941 ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"); *Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life Ins. Co.*, 774 F.2d 524, 528 (1st Cir. 1985).

This mandate applies with even greater force where, as in this case, the arbitration clause is broad. *See Cleveland Wrecking Co. v. Iron Workers Local Union 40*, 947 F. Supp. 745, 748 (S.D.N.Y. 1996) (characterizing a clause which dictated submission to arbitration of "[a]ny claim or controversy arising out of or relating to th[e] agreement" as the "paradigm of a broad clause"), *aff'd*, 136 F.3d 884 (2nd Cir. 1997); *AT&T Technologies*, 475 U.S. at 650, 106 S. Ct. at 1419. "If the arbitration clause is broad, the Court 'must find that the parties bargained to have any dispute that arguably falls within the scope of that clause settled through arbitration absent compelling proof to the contrary.'" *Cleveland Wrecking Co.*, 947 F. Supp. at 748 (quoting *Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 886 (2nd Cir. 1982)); *accord United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 585, 80 S. Ct. 1347, 1354 (1960) (only the "most forceful evidence" is sufficient to prevent a dispute from being submitted to arbitration).

Applying these standards, there can be no doubt that plaintiff's claims fall within the scope of the arbitration clause in the Franchise Agreement and, accordingly, that Coverall is

entitled to a stay of this action pending arbitration. The Franchise Agreement contains a broadly worded arbitration clause, requiring the submission to arbitration of "all controversies, disputes or claims between Coverall . . . and Franchisee [plaintiff] . . . arising out of or related to the relationship of the parties, this Agreement, any related agreement between the parties, and/or any specification, standard or operating procedure of Coverall . . . ." Each of plaintiff's claims – which seek damages for Coverall's purported fraud, compensation for services allegedly provided pursuant to the Franchise Agreement, and rescission of that agreement – plainly arises out of and relates to the Franchise Agreement or the validity of that agreement. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406, 87 S. Ct. 1801, 1807 (1967) (language requiring arbitration of "[a]ny controversy or claim arising out of or relating to th[e] Agreement, or the breach thereof" was "easily broad enough to encompass" plaintiff's claim for fraudulent inducement and rescission). They are, as a result, arbitrable.

### III. Coverall Is Entitled To A Stay Of This Action Under Section 3 Of The FAA

As demonstrated above, all of the issues raised in the plaintiff's Amended Complaint are referable to arbitration. Coverall is, as a result, entitled to a stay of this action pending arbitration. *See* 9 U.S.C. § 3; *Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 142 (7th Cir. 1978) (court must grant motion to stay when issue is referable to arbitration and party applying for stay is not in default); *Lippus v. Dahlgren Mfg. Co.*, 644 F. Supp. 1473, 1478 (E.D.N.Y. 1986).

### Coverall's Time To Respond To The Complaint Should Be Extended Until The Court Addresses Coverall's Motion To Stay Proceedings

If this Court grants Coverall's motion to stay proceedings pending arbitration, this matter will proceed in arbitration. Accordingly, the Court's ruling may obviate the need for Coverall to file an answer or, more likely, a motion to dismiss. For that reason, and to avoid the possible

waste of this Court's and the parties' resources, Coverall respectfully requests, pursuant to Rule 6(b) of the Federal Rules of Civil Procedure, that the Court extend Coverall's time to answer, move or otherwise plead in response to the Complaint until the Court has had an opportunity to address Coverall's motion to stay proceedings pending arbitration.

## CONCLUSION

For the foregoing reasons, Coverall's motion (i) pursuant to Section 3 of the Federal Arbitration Act, to stay this action pending arbitration, and (ii) pursuant to Rule 6 of the Federal Rules of Civil Procedure to extend Coverall's time to respond to plaintiff's Amended Complaint, should be granted.

                                        COVERALL NORTH AMERICA, INC.. d/b/a Coverall Cleaning Concepts and Coverall of Boston,

                                        By its attorneys,

                                        _____/s/ Michael D. Vhay_____
                                        Michael D. Vhay (BBO No. 566444)
                                        Traci S. Feit (BBO No. 660688)
                                        DLA PIPER RUDNICK GRAY CARY US LLP
                                        One International Place, 21st Floor
                                        Boston, MA  02110-2600
                                        (617) 406-6000 (telephone)
                                        (617) 406-6100 (fax)

Dated: September 30, 2005